# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DR. ORIEN L. TULP, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 2:18-cv-05540-WB |
| | ) | |
| v. | ) | Hon. Wendy Beetlestone |
| | ) | |
| EDUCATIONAL COMMISSION FOR | ) | |
| FOREIGN MEDICAL GRADUATES and | ) | |
| DR. WILLIAM W. PINSKY, | ) | |
| | ) | |
| Defendants. | | |

## DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR A PRELIMINARY AND/OR PERMANENT INJUNCTION

January 10, 2019

Elisa P. McEnroe, PA Bar No. 206143
Matthew D. Klayman, PA Bar No. 319105
MORGAN, LEWIS & BOCKIUS LLP
1701 Market Street
Philadelphia, PA  19103-2921
Telephone:      +1.215.963.5917
Facsimile:      +1.215.963.5001
elisa.mcenroe@morganlewis.com
matthew.klayman@morganlewis.com

*Attorneys for the Educational Commission for Foreign Medical Graduates and Dr. William W. Pinsky*

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION .................................................................................................. 1

II.  BACKGROUND .................................................................................................. 2

    A.   The Educational Commission for Foreign Medical Graduates ............................. 2

    B.   The Process for Enforcing ECFMG's Policies and Protecting the Public ............ 3

    C.   Dr. Tulp Provides False Information to ECFMG During Its Investigation of USAT's Unauthorized Locations in the United States ...................................... 4

    D.   ECFMG Modifies Its Sponsor Note for USAT in the World Directory of Medical Schools ................................................................................................ 9

    E.   Allegations of Irregular Behavior Against Dr. Tulp Are Deemed Founded ......... 9

    F.   Dr. Tulp Sues ECFMG and Moves for Injunctive Relief .................................... 11

III. LEGAL STANDARD ......................................................................................... 11

IV.  ARGUMENT ...................................................................................................... 12

    A.   Dr. Tulp Cannot Satisfy the "Gateway Factors" for Injunctive Relief ............... 12

        1.   Dr. Tulp cannot demonstrate likelihood of success on the merits .......... 13

            a.   Dr. Tulp's tortious interference claims are meritless .................. 13

            b.   Dr. Tulp's due process claims are meritless ............................... 16

            c.   Dr. Tulp's fraudulent and negligent misrepresentation claims are meritless .................................................................... 21

            d.   Dr. Tulp's abuse of process claims are meritless ....................... 23

        2.   Dr. Tulp will not suffer irreparable harm absent injunctive relief .......... 24

    B.   The Remaining Factors—and the Factors Overall—Weigh Against Injunctive Relief ................................................................................................ 27

        1.   The injunctive relief sought is not in the public interest ......................... 27

        2.   The balance of harms weighs against injunctive relief ........................... 28

V.   CONCLUSION ................................................................................................... 29

i

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*ACLU v. Black Horse Pike Reg'l Bd. of Educ.*,
   84 F.3d 1471 (3d Cir. 1996) (en banc)......................................................................12

*Bd. of Regents of State Colls. v. Roth*,
   408 U.S. 564 (1972)......................................................................................................19

*Biliski v. Red Clay Consol. School Dist. Bd. of Educ.*,
   574 F.3d 214 (3d Cir. 2009)........................................................................................20

*BP Envtl. Servs., Inc. v. Republic Servs., Inc.*,
   946 F. Supp. 2d 402 (E.D. Pa. 2013) ....................................................................13, 14

*Brown v. Fed'n of State Med. Bds.*,
   No. 82-7398, 1985 WL 1659 (N.D. Ill. May 31, 1985)...........................................18

*eBay Inc. v. MercExchange, L.L.C.*,
   547 U.S. 388 (2006)......................................................................................................12

*ECRI v. McGraw Hill*,
   809 F.2d 223 (3d Cir. 1987)........................................................................................24

*Elias v. ECFMG*,
   No. C-82-08, 2010 WL 4340640 (N.J. Super. Ct. Nov. 4, 2010) ...............17, 18, 19

*Elrod v. Burns*,
   427 U.S. 347 (1976)......................................................................................................29

*Fla. Coastal Sch. of Law, Inc. v. Am. Bar Ass'n*,
   No. 3:18-cv-00621-BJD-JBT, ECF No. 39 (M.D. Fla. July 9, 2018)....................26

*Gibbs v. Ernst*,
   647 A.2d 882 (Pa. 1994) ..............................................................................................21

*Glenn v. Point Park College*,
   272 A.2d 895 (Pa. 1971) ..............................................................................................14

*Gongloff Contracting, L.L.C. v. L. Robert Kimball & Assocs., Architects and
   Eng'rs, Inc.*,
   119 A.3d 1070 (Pa. Super. 2015)...........................................................................21, 22

*Gonzaga Univ. v. Doe*,
   536 U.S. 2731 (2002)....................................................................................................16

*Guttenberg v. Emergy*,
   26 F. Supp. 3d 88, 103 (D.D.C. 2014) .................................................................26

*Instant Air Freight Co. v. C.F. Air Freight, Inc.*,
   882 F.2d 797 (3d Cir. 1989).................................................................24, 25

*Joyce v. Erie Ins. Exchange*,
   74 A.3d 157 (Pa. Super. 2013).................................................................22

*Klemow v. Time Inc.*,
   352 A.2d 12 (Pa. 1976) .................................................................22

*Lanin v. Borough of Tenafly*,
   515 F. App'x 114 (3d Cir. 2013) .................................................................24

*LeDonne v. Kessler*,
   389 A.2d 1123 (Pa. Super. 1978).................................................................22

*Lerner v. Lerner*,
   954 A.2d 1229 (Pa. Super. 2008).................................................................23

*Liss & Marion, P.C. v. Recordex Acquisition Corp.*,
   983 A.2d 652 (Pa. 2009) .................................................................22

*Mass. Sch. of Law at Andover, Inc. v. ABA*,
   937 F. Supp. 435 (E.D. Pa. 1996) .................................................................29

*Matthews v. Eldridge*,
   424 U.S. 319 (1976).................................................................19, 20

*Mazurek v. Armstrong*,
   520 U.S. 968 (1997).................................................................11

*McKeesport Hosp. v. Accreditation Council for Graduate Med. Educ.*,
   24 F.3d 519 (3d Cir. 1994).................................................................17, 18

*Milione v. Hahnemann Univ.*,
   No. 89-6761, 1992 WL 57670 (E.D. Pa. Mar. 18, 1992) .................................................................14

*Nicholas v. Pa. State Univ.*,
   227 F.3d 133 (3d Cir. 2000).................................................................16

*NutraSweet Co. v. Vit–Mar Enters., Inc.*,
   176 F.3d 151 (3d Cir. 1999).................................................................12

*Opoku v. ECFMG*,
   574 F. App'x 197 (3d Cir. 2014) .................................................................16, 17

*Opticians Ass'n of Am. v. Indep. Opticians of Am.*,
    920 F.2d 187 (3d Cir. 1990)........................................................................................11

*Pallante v. Those Certain Underwriters at Lloyd's, London*,
    311 F. Supp. 3d 692, 695 ........................................................................................24

*Phila. Wireless Tech. Inst. v. Accrediting Comm'n of Career Sch. & Colls. of
Tech.*,
    No. Civ. A. 098-2843, 1998 WL 744101 (E.D. Pa. Oct. 23, 1998)........................................28

*Phillips v. Selig*,
    959 A.2d 420 (Pa. Super. 2008)..............................................................................15

*Punnett v. Carter*,
    621 F.2d 578 (3d Cir. 1980)....................................................................................11

*Reilly v. City of Harrisburg*,
    858 F.3d 173 (3d Cir. 2017)....................................................................................12

*Rendell-Baker v. Kohn*,
    457 U.S. 830 (1982)..............................................................................................16

*Staudinger v. ECFMG*,
    No. 92-8071, 1993 WL 138954 (S.D.N.Y. Apr. 28, 1993) ...............................................17, 18

*Thomas M. Cooley Law Sch. v. Am. Bar Ass'n*,
    No. 17-13708, 2017 WL 6342629 (E.D. Mich. Dec. 12, 2017) ...........................................26, 28

*Thomas v. NBME-Nat'l Bd. of Medical Examin'rs*,
    No. 13-3946, 2015 WL 667077 (E.D. Pa. Feb. 13, 2015) .................................................17

*Walnut St. Assocs., Inc. v. Brokerage Concepts, Inc.*,
    20 A.3d 468 (Pa. 2011)......................................................................................15, 16

*Winter v. Nat. Res. Def. Council, Inc.*,
    555 U.S. 7 (2008)..............................................................................................11, 27

*Zavaletta v. Am. Bar Ass'n*,
    721 F. Supp. 96 (E.D. Va. 1989) ...............................................................................29

**Statutes**

Federal Education Records Protection Act ("FERPA"), 20 U.S.C.§ 1232g.................................16

**Other Authorities**

Restatement (Second) of Torts § 772, cmt. b...............................................................16

## I.      <u>INTRODUCTION</u>

Through this lawsuit and his Motion for a Preliminary and/or Permanent Injunction, Plaintiff Dr. Orien L. Tulp asks this Court to force the Educational Commission for Foreign Medical Graduates ("ECFMG")—a private non-profit organization that certifies whether ***international*** medical graduates ("IMGs") have met minimum requirements to be eligible for residency programs in the United States—to recognize the University of Science, Arts and Technology ("USAT") as a legitimate foreign medical school, despite ECFMG's findings that USAT provided medical education at unauthorized satellite locations in the United States and that Dr. Tulp lied to ECFMG about those locations.  Notably absent from Dr. Tulp's filings is any evidence that ECFMG's well-documented findings are incorrect.  ECFMG has repeatedly asked for any such evidence and has never received it.

Rather than prove ECFMG wrong, in a misguided attempt to avoid the consequences of his own misconduct, Dr. Tulp asks this Court to ignore the overwhelming evidence supporting ECFMG's findings and the legitimate public health considerations motivating ECFMG's decisions.  Dr. Tulp also seeks to trample on ECFMG's right to truthfully report its findings and decisions with respect to USAT's operations and Dr. Tulp's untruths.

As is detailed in greater length below, Dr. Tulp's claims and arguments fail both as a matter of fact and law, and Dr. Tulp's motion for injunctive relief should be denied.  As a matter of fact, Dr. Tulp blatantly and repeatedly mischaracterizes the record.  He misconstrues what ECFMG has (or has not) done and includes plain falsehoods without any evidentiary support.  As a matter of law, Dr. Tulp fails to meet the heavy burden upon him to secure an injunction, which at this point, would be a mandatory injunction forcing ECFMG to upend the status quo rather than preserve it.

ECFMG and Dr. Pinsky will be moving to dismiss all of Dr. Tulp's claims in the near

future and, in the meantime, ask this Court to deny Plaintiff's Motion in its entirety.

## II.   BACKGROUND

### A.   The Educational Commission for Foreign Medical Graduates

ECFMG is a private non-profit organization that promotes quality health care for the

public by certifying physicians who received their basic medical degree from an international

medical school (known as international medical graduates or "IMGs") for entry into U.S.

graduate medical education. *See About ECFMG: Statement of Values, Mission, and Purposes*,

ECFMG, https://www.ecfmg.org/about/statement-of-values.html (last visited Jan. 10, 2019)

(attached as Ex. 1). An "international medical school" is "an education facility located in a

country ***outside of the United States and Canada*** with its primary campuses and main operations

***located in that country***." ECFMG Medical School Policy (attached as Ex. 2) (emphases added).

ECFMG's responsibilities include (among other things): (i) certifying the readiness of IMGs for

entry into graduate medical education and health care systems in the United States through an

evaluation of their qualifications, (ii) providing complete, timely, and accessible information to

IMGs regarding entry into graduate medical education in the United States, and (iii) verifying

credentials and providing other services to health care professionals worldwide. *Id.*

To verify an applicant's credentials as part of the ECFMG certification process, ECFMG

collects documentation, including records relating to an applicant's attendance at a recognized

foreign medical school. *See* ECFMG, *2019 Information Booklet* 5–7 (last updated Sept. 13,

2018), https://www.ecfmg.org/2019ib/2019ib.pdf (attached as Ex. 3). Once an applicant's record

is verified and complete and the applicant passes certain required substantive exams, ECFMG

issues the applicant a certificate. *Id.* This certificate signals to directors of accredited residency

and fellowship programs—and to the people of the United States—that an IMG seeking

admission to a U.S. graduate medical program has met certain minimum standards of eligibility.

Dr. William W. Pinsky is the President and CEO of ECFMG.

**B.      The Process for Enforcing ECFMG's Policies and Protecting the Public**

In fulfilling its responsibilities, ECFMG upholds a high standard of professional integrity and therefore has a well-developed system for investigating allegations of conduct subversive to ECFMG's processes (so-called "irregular behavior"), determining if the allegations are well-founded, and taking appropriate action if the investigation so warrants.  *See* Ex. 3 at 24–28 ("Irregular Behavior: Policies and Procedures Regarding Irregular Behavior").

ECFMG defines "irregular behavior" as "all actions or attempted actions on the part of applicants . . . or any other person that would or could subvert the examination, certification or other processes, programs, or services of ECFMG."  *Id.* at 24.  Examples of irregular behavior include, but are not limited to, failing to comply with an ECFMG policy, procedure and/or rule, or providing false information to ECFMG.  *Id.*  In ECFMG's Information Booklet, which is publicly available online,[1] ECFMG provides "Representative Examples of Irregular Behavior." *Id.* at 27–28.  Each representative example involves the provision of false information to ECFMG.  *Id.*

Once ECFMG becomes aware of possible irregular behavior, ECFMG investigates the situation.  *Id.* at 25–27.  Depending on the specific circumstances of the possible irregular behavior, that investigation can involve the gathering of additional information.  *Id.*  According to ECFMG's policies and procedures, "[i]f ECFMG staff finds that there exists a reasonable basis to conclude that an individual may have engaged in irregular behavior, the matter will be referred to the Medical Education Credentials Committee [(the "Credentials Committee")]."  *Id.*

---

[1] https://www.ecfmg.org/2019ib/index.html

at 25.

Before each meeting of the Credentials Committee (a sub-Committee of ECFMG's Board of Trustees), its members have a chance to review the relevant documentation for the individuals whose alleged irregular behavior will be the subject of the meeting.  *Id.* at 26.  Each individual involved in a review of irregular behavior allegations—including the individual whose alleged irregular behavior will be the subject of the meeting—is "advised in writing of the nature of the alleged irregular behavior and [is] provided with a copy of the *Policies and Procedures Regarding Irregular Behavior*" and a copy of the documents provided to the Credentials Committee.  *Id.* at 25–26.  The individual alleged to have engaged in irregular behavior is also given "an opportunity to provide written explanation and to present other relevant information" and "may also request the opportunity to appear personally before the Medical Education Credentials Committee" to testify under oath with representation by counsel, if desired.  *Id.*

Once the Credentials Committee has reviewed the evidence, it then confers and decides whether the allegation of irregular behavior is founded.  *Id.* at 26.  If the Credentials Committee determines that the allegation of irregular behavior is founded, it decides what action is appropriate, and ECFMG notifies the subject of the hearing as to whether the Credentials Committee has found irregular behavior, any action taken by the Credentials Committee, and the procedure for appealing the Credential Committee's determination to ECFMG's Review Committee for Appeals (another sub-committee of the ECFMG Board of Trustees made up of members independent of the Credentials Committee).  *Id.* at 26–27.

### C.    Dr. Tulp Provides False Information to ECFMG During Its Investigation of USAT's Unauthorized Locations in the United States.

ECFMG suspected in mid-2017 (and confirmed in 2018) that USAT, a medical school with its primary campus and main operations supposedly in Montserrat, was in fact operating a

campus and providing medical education in Miami, Florida without authorization from the U.S. Department of Education and/or the Florida Department of Education.  Per the ECFMG Medical School Policy, in order for students and graduates of USAT to have eligibility to apply for ECFMG Certification, if USAT has a branch campus outside Montserrat, ECFMG "may require confirmation from the appropriate government authority" in the country where USAT's branch campus is located that "the branch campus is authorized to operate as a medical school in the branch campus country" and that USAT "awards degrees that meet the medical education eligibility requirements for licensure to practice medicine in the branch campus country."  Ex. 2. ECFMG has never received evidence demonstrating that USAT can meet those requirements with respect to its Miami campus.

On August 21, 2018, ECFMG advised Dr. Tulp of the allegations that USAT was operating a campus in Miami and that ECFMG had no documentation from the proper U.S.-based authorities authorizing such a campus.  *See* Letter from S. Mealey to Dr. O. Tulp (Aug. 21, 2018) (attached as Ex. 4).  Consistent with its Medical School Policy, ECFMG requested that USAT "provide documentation from the United States Department of Education and/or the Florida Department of Education confirming that USAT's Miami branch campus is authorized to operate as a medical school in the United States."  *Id.*  ECFMG requested information covering "the whole time period that the USAT Miami branch campus has been in operation."  *Id.*

Later that day, Dr. Tulp responded to ECFMG via email:

This is incorrect information.  The Miami location is an information and testing site only, where a pre-usmle examination [an NBME] may be administered, and an Orientation for new students is conducted prior to their traveling to the Caribbean.. It is NOT a campus. Our ONLY Campus is located in Olveston, Montserrat, British West Indies.

Actually, recall that Montserrat is a volcanic Island, and the license issued to USAT in September, 2003 DOES actually permit the establishment of off-campus lecture and administrative sites as needed.  USAT has students on island on a year round basis in its

origination.

Email from Dr. O. Tulp to S. Mealy & C. Konyk (Aug. 21, 2018) (attached as Ex. 5).

In the days and weeks that followed, ECFMG received additional information that USAT was operating satellite campuses not only in Miami, but also in Tampa, Florida, and Dallas, Texas.  *See* Email to S. Mealey (Aug. 22, 2018) (attached as Ex. 6).  USAT never provided documentation for those locations either.  Instead, in an email dated August 22, 2018, Dr. Tulp directed recipients to "NOT use the phrase 'CAMPUS' WHEN REFERRING TO THE US SITES, as that implies approval from the US Dept of Education or the State Dept of Education which isn't possible or likely as an Interntional [sic] Medical School."  *Id.*

ECFMG also learned that in 2012, the Caribbean Accreditation Authority for Education in Medicine and other Health Professions ("CAAM-HP") declined to accredit USAT because USAT "had not provided sufficient evidence to indicate that teaching activities were actually taking place in Montserrat."  *University of Science, Arts & Technology (USAT), Montserrat: Not Accredited*, CAAM-HP (attached as Ex. 7).

In light of the additional information confirming USAT's unauthorized campuses in the United States, ECFMG sent another letter to Dr. Tulp on September 14, 2018, advising Dr. Tulp that ECFMG was continuing its review of the matter to "ensure that information regarding international medical schools and their students provided to ECFMG complies with ECFMG policies and requirements."  Letter from K. Corrado to Dr. O. Tulp (Sept. 14, 2018) (attached as Ex. 8).  As part of the ongoing review, ECFMG informed Dr. Tulp that it had "reached out to students and graduates of USAT in order to collect information from them regarding their attendance at USAT" and that "USAT students and graduates seeking services related to ECFMG Certification . . . must complete and submit an affidavit attesting to the accuracy of the

medical school information provided to ECFMG." *Id.*  ECFMG provided the affidavit only to those USAT students and graduates who had reached out to ECFMG to engage in the ECFMG Certification process.  *See* Compl. Ex. D ("Effective immediately, as a USAT student or graduate seeking a service or services related to ECFMG Certification . . . you must complete the attached affidavit . . . .").  The affidavit asked the USAT students and graduates to certify under penalty of perjury and under penalty of a finding of irregular behavior under applicable ECFMG rules and regulations (1) their dates of attendance at USAT, and (2) the location where they took their basic science courses.  *Id.*  Ultimately, more than 300 students submitted affidavits to ECFMG indicating that they took classes in the United States, and not a single student indicated that he or she took all of his or her basic science courses in Montserrat.  *See* Decl. of K. Corrado ¶ 4 (attached as Ex. 9).  And in a letter to ECFMG dated September 15, 2018, Dr. Tulp's counsel stated that USAT conducted classes "in locations other than Montserrat for 15 years," thereby confirming that the information provided by Dr. Tulp to ECFMG—*i.e.*, that USAT's classes took place only in Montserrat—was false.  *See* Letter from T. Swate to K. Corrado (Sept. 15, 2018) (attached as Ex. 10).

In addition to the affidavits and the admission by Dr. Tulp's counsel, ECFMG received a copy of the 2018 USAT Lecture Conference Schedule, attached as Ex. 11, showing lectures occurring in Florida and Texas, with graduation to occur in Miami, Florida.  There were no lectures scheduled for Montserrat.  The schedule also made numerous references to an "Anatomy Lab," which USAT's website confirms took place in Miami, Florida, where students dissect "pre-certified fresh cadavers."  *See Tuition, Fees and Financing*, USAT, http://usat.edu/new-students/tuitions/ (last visited Jan. 10, 2019) (attached as Ex. 12).  According to the USAT website, "All medical students must attend at least one comprehensive dissection lab prior to the

start of clinical training modules [and a]natomy majors must attend at least 5 labs during their first year of study." *Id.* Videos on USAT's YouTube channel not only show USAT students dissecting human cadavers "in Miami,"[2] but also feature Dr. Tulp referring to USAT's "Miami campus,"[3] USAT's "other campuses,"[4] and USAT's "satellite campuses."[5] In one video, Dr. Tulp called Miami "one of the satellite locations for the USAT"[6]; in another, Dr. Tulp described USAT as having "one of the largest M.D. and bridge programs ***in the United States***, if not the world."[7]

During the investigation into USAT's branch campuses in the United States, ECFMG also discovered that Dr. Tulp had provided false information to ECFMG regarding the attendance dates of some USAT students in connection with their United States Medical Licensing Examination ("USMLE") applications. As a result, ECFMG sent another affidavit to USAT students and graduates participating in the ECFMG Certification process, asking them to certify that they were not offered "advanced standing" or exempted from taking required courses at USAT based on credits earned outside of USAT, and that all of their USAT credits were earned through program offerings at USAT. *See* Email from MECCSupport (Oct. 15, 2018) (attached as Ex. 13).

---

[2] *See USAT Anatomy Lab 7 2015*, YOUTUBE (July 7, 2015), at 0:25, https://www.youtube.com/watch?v=0iWvHDNOH0c (last visited Jan. 10, 2019).

[3] *Prof. Orien Tulp President of USAT and Prof. George Einstein*, YOUTUBE (May 31, 2014), at 3:14, https://www.youtube.com/watch?v=f8RZR5rP_w8 (last visited Jan. 10, 2019).

[4] *Id.*

[5] *Id.* at 7:52.

[6] *USAT Aug 2014 v3*, YOUTUBE (Aug. 23, 2014), at 7:15, https://www.youtube.com/watch?v=r5bam7Ku2AY (last visited Jan. 10, 2019).

[7] *Id.* at 2:28.

**D.   ECFMG Modifies Its Sponsor Note for USAT in the World Directory of Medical Schools**

On October 18, 2018, as ECFMG continued to receive additional information confirming that USAT was operating campuses in the United States without disclosing those campuses to ECFMG and without proof of authority from the U.S. Department of Education and/or the Florida Department of Education, ECFMG announced its decision that students and graduates of USAT would no longer be eligible for ECFMG Certification or to register for USMLE examinations as a step toward ECFMG Certification effective as of January 1, 2019. *See* Compl. Ex. B. This decision was based on ECFMG's concern that USAT was not, in fact, an international medical school and had not complied with the ECFMG Medical School Policy, thereby rendering ECFMG unable to certify USAT graduates as ***international*** medical school graduates. This information was published in October 2018 as a Sponsor Note in the World Directory of Medical Schools. *See* Compl. Ex. B.

**E.   Allegations of Irregular Behavior Against Dr. Tulp Are Deemed Founded**

On October 18, 2018, ECFMG sent a letter to Dr. Tulp advising him of an allegation that he individually and in his capacity as an official at USAT engaged in irregular behavior by providing false information to ECFMG. *See* Compl. Ex. F. The letter advised Dr. Tulp that the Credentials Committee would hold a hearing to address the allegations of irregular behavior on November 28, 2018. *Id.* Before the hearing, Dr. Tulp and his counsel were sent the file that was to be reviewed by the Credentials Committee. *See* Compl. Ex. E. At his counsel's request, Dr. Tulp was given special permission to have two lawyers join him at the hearing (as opposed to one). *See* Email from K. Corrado to T. Swate (Nov. 14, 2018) (attached as Ex. 14).

At the hearing, Dr. Tulp's counsel asserted without any basis that ECFMG lacks the authority to find that Dr. Tulp engaged in irregular behavior as that term is defined in ECFMG's

policies and procedures.  *See* Tr. of Dr. Tulp Irregular Behavior Hrg. at 11:17–12:4, 13:20–15:16

(attached as Ex. 15).  Dr. Tulp's attorney also argued without any evidentiary support that

ECFMG's actions against USAT and Dr. Tulp were intended to ruin USAT.  *Id.* at 14:13–21.

Dr. Tulp refused to testify or offer any evidence to rebut the evidence compiled by ECFMG and

presented to Dr. Tulp and the Credentials Committee prior to the hearing.  *Id.* at 17:1–2, 20:9–

13, 19:15–17, 23:19–1, 31:20–6.  Notably, at one point, when asked by ECFMG's counsel

whether USAT provided basic science education in the United States, Dr. Tulp's counsel

responded, "Well, yes, it did," while Dr. Tulp shook his head "no," only for Dr. Tulp's counsel

to ultimately argue that there was "no campus in the United States" and that the term "campus"

was vague.  *Id.* at 19:23–8, 20:16–17, 21:15–17.  The hearing was adjourned shortly thereafter,

with Dr. Tulp having failed to provide any evidence explaining or clarifying why the evidence

previously gathered by ECFMG and disclosed to Dr. Tulp did not warrant a finding of irregular

behavior.

By letter dated December 14, 2018, ECFMG notified Dr. Tulp that the Credentials

Committee had completed its review and determined that Dr. Tulp had engaged in irregular

behavior.  *See* Compl. Ex. A.  As a result, ECFMG decided it would "not accept any documents

signed/certified by [Dr. Tulp] for ECFMG on behalf of USAT, or any other medical school, for a

minimum of five years from today; thereafter, the prohibition shall end only upon a petition to

ECFMG conclusively demonstrating to the satisfaction of the ECFMG Committee a familiarity

with, and willingness to adhere to, ECFMG policies."  *Id.*  This does not prevent Dr. Tulp from

operating a medical school in Montserrat or otherwise serve as a professor of medicine; any

medical school where Dr. Tulp is employed could have another employee serve as the authorized

official to sign documents for ECFMG.  Rather, the limited practical effect of the irregular

behavior finding is that ECFMG will not accept representations or certifications ***by Dr. Tulp*** as valid in connection with the ECFMG Certification process.

### F.       Dr. Tulp Sues ECFMG and Moves for Injunctive Relief

Rather than avail himself of ECFMG's procedure for appealing the Credential Committee's determination (which he has not done), on December 24, 2018, Dr. Tulp filed suit against ECFMG and Dr. Pinsky, alleging various tort claims and violations of due process.  Dr. Tulp then filed a Motion for Preliminary and/or Permanent Injunction on January 2, 2019, and served it on Defendants on January 4, 2019.  Dr. Tulp's Motion includes no evidence and relies entirely on the allegations in his unverified Complaint.

## III.   <u>LEGAL STANDARD</u>

"[A] preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, ***by a clear showing***, carries the burden of persuasion."  *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (emphasis in original) (quoting 11A Wright & Miller, Fed. Prac. & Proc. § 2948 (3d ed. Apr. 2016)).  Furthermore, "when the preliminary injunction is directed not merely at preserving the status quo but, as in this case, at providing mandatory relief, the burden on the moving party is particularly heavy."  *Punnett v. Carter*, 621 F.2d 578, 582 (3d Cir. 1980).

"A plaintiff seeking a preliminary injunction must establish that [(1)] he is likely to succeed on the merits, [(2)] that he is likely to suffer irreparable harm in the absence of preliminary relief, [(3)] that the balance of equities tips in his favor, and [(4)] that an injunction is in the public interest."  *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).  The movant bears the burden of showing that these four factors weigh in favor of granting the injunction.  *See Opticians Ass'n of Am. v. Indep. Opticians of Am.*, 920 F.2d 187, 192 (3d Cir. 1990).  The movant must initially "meet the threshold for the first two . . . factors," and only if

those "gateway factors" are met should the Court then consider the remaining two factors and determine "in its sound discretion if all four factors, taken together, balance in favor of granting the requested preliminary relief." *Reilly v. City of Harrisburg*, 858 F.3d 173, 179 (3d Cir. 2017). The "failure to establish any element . . . renders a preliminary injunction inappropriate." *NutraSweet Co. v. Vit–Mar Enters., Inc.*, 176 F.3d 151, 153 (3d Cir. 1999).

In contrast to the preliminary injunction standard requiring a showing of ***likelihood*** of success on the merits, a plaintiff is entitled to permanent injunctive relief only if he establishes ***actual*** success on the merits. *ACLU v. Black Horse Pike Reg'l Bd. of Educ.*, 84 F.3d 1471, 1477 & n.3 (3d Cir. 1996) (en banc). In addition, "[a] plaintiff must demonstrate that: (1) it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006).

## IV.   ARGUMENT

### A.   Dr. Tulp Cannot Satisfy the "Gateway Factors" for Injunctive Relief.

Dr. Tulp is not entitled to injunctive relief because he cannot make the requisite "threshold" showings that (1) there is "a reasonable probability of eventual success in the litigation," and (2) he "will be irreparably injured . . . if relief is not granted." *Reilly*, 858 F.3d at 176. For the reasons set forth below, Dr. Tulp's claims are meritless, and there is no risk that Dr. Tulp would suffer irreparable harm absent injunctive relief. Under Third Circuit precedent, this Court should not even proceed to balance the four factors for equitable relief—let alone grant such relief—unless those two "gateway thresholds are met." *Id.* at 178. Dr. Tulp's failure to meet those threshold requirements is sufficient grounds to deny Dr. Tulp's Motion in its entirety.

1.      **Dr. Tulp cannot demonstrate likelihood of success on the merits.**

a.      **Dr. Tulp's tortious interference claims are meritless.**

To prove tortious interference with an existing or prospective contract, a plaintiff must establish "(1) the existence of a contractual relationship or prospective contractual relationship between the plaintiff and another party; (2) an intent on the part of the defendant to harm the plaintiff by interfering with that contractual relationship or preventing the relationship from occurring; (3) the absence of privilege or justification on the part of the defendant; and (4) the occasioning of actual damage as a result of defendant's conduct." *BP Envtl. Servs., Inc. v. Republic Servs., Inc.*, 946 F. Supp. 2d 402, 407 (E.D. Pa. 2013) (citing *Phillips v. Selig*, 959 A.2d 420, 428–29 (Pa. Super. 2008)).  For the reasons explained below, ECFMG's conduct is not tortious, and Dr. Tulp has not and cannot demonstrate a likelihood of success on the merits of his tortious interference claim.

*First*, there is no evidence of any existing or prospective contractual relationships between Dr. Tulp—the plaintiff in this lawsuit—and USAT students.  Because Dr. Tulp is the plaintiff in this lawsuit, he can only bring a claim for tortious interference based on a contract to which he is (or expects to be) a party. *BP Envtl. Servs.*, 946 F. Supp. 2d at 412 ("To satisfy this first element, a plaintiff must show that it is reasonably probable that, but for the wrongful acts of the defendant, ***the plaintiff*** would have had a contractual relationship with a third party" (emphasis added)).  Though the Complaint includes a conclusory allegation suggesting that Dr. Tulp has contractual relationships with USAT students, *see* Compl. ¶ 22, Dr. Tulp has presented no evidence identifying any USAT students with whom he has contracted, and has not attached to his Complaint or to his Motion any such contracts or evidence proving the existence or likelihood of such contracts.  Nor has he presented evidence of harm to Dr. Tulp resulting from ECFMG's decision to enforce its policies.

**Second**, Dr. Tulp has not and cannot prove that ECFMG's actions were specifically intended to harm Dr. Tulp by interfering with his contractual relationships.  As a matter of law, there can be no tortious interference with contractual relationships when a defendant lacks the specific intent to harm the plaintiff.  *See Glenn v. Point Park College*, 272 A.2d 895, 899 (Pa. 1971) (ruling that plaintiffs failed to state a claim for intentional interference because there was "no allegation that the defendant acted for the specific purpose of causing harm to the plaintiffs"); *BP Envtl. Servs.*, 946 F. Supp. at 410–11 (granting summary judgment for defendant on tortious interference claim for lack of evidence of "specific intent to harm" plaintiff).  Here, Dr. Tulp has come forward with **_no evidence_** that ECFMG's actions were specifically intended to harm Dr. Tulp.  Rather, ECFMG has given Dr. Tulp numerous opportunities to correct or clarify his misrepresentations and/or prove his (and USAT's) compliance with ECFMG's policies, and Dr. Tulp (and USAT) have failed to do so.

By contrast, ECFMG has come forward with evidence that its actions were intended to safeguard the ECFMG Certification process.  ECFMG is responsible for certifying that IMGs have met minimum requirements to participate in post-graduate medical education (where they treat patients under supervision) in the United States.  To fulfil its important mission and promote public health, ECFMG works diligently to verify the accuracy of IMG credentials, and it is critically important for ECFMG to enforce its policies so that the information provided to ECFMG is accurate and reliable.  Dr. Tulp provided false information to ECFMG about USAT and its students.  That ECFMG imposed a limited sanction on Dr. Tulp to guard against his misrepresentations **_to ECFMG_** and ensure that his lack of candor would not disrupt the ECFMG Certification process going forward is clearly not intended to harm Dr. Tulp or interfere with any supposed contractual relationships that he has or may have with USAT students.  *See Milione v.*

*Hahnemann Univ.*, No. 89-6761, 1992 WL 57670, at *3 (E.D. Pa. Mar. 18, 1992) ("A bad recommendation or a failure to give a good recommendation which is based on an honest opinion does not establish an intention to harm the plaintiff by interfering with a contract.") Similarly, that ECFMG will no longer certify USAT students as eligible IMGs because it appears USAT is not a *bona fide* international medical school is clearly intended to ensure that ECFMG fulfils its responsibilities to certify only ***international*** medical graduates.  *See* Ex. 2.

   ***Third***, Dr. Tulp cannot prove the "absence of privilege or justification," *i.e.*, that ECFMG's actions "were improper under the circumstances presented."  *Phillips*, 959 A.2d at 429.  In determining whether alleged interference was "improper or not," consideration is given to numerous factors, including "(a) the nature of the actor's conduct, (b) the actor's motive, (c) the interests of the other with which the actor's conduct interferes, (d) the interests sought to be advanced by the actor, (e) the social interests in protecting the freedom of action of the actor and the contractual interests of the other, (f) the proximity or remoteness of the actor's conduct to the interference and (g) the relations between the parties."  *Walnut St. Assocs., Inc. v. Brokerage Concepts, Inc.*, 20 A.3d 468, 476 (Pa. 2011).  Taken together, these factors demonstrate that ECFMG's actions were not improper.  ECFMG imposed a limited prohibition on Dr. Tulp pursuant to its policies for the purpose of safeguarding the ECFMG Certification process against misrepresentations by Dr. Tulp and ensuring that ECFMG does not improperly certify non-international medical graduates.  Further, ECFMG has not prevented Dr. Tulp from continuing to teach medicine at USAT (or any other institution) and has not even prevented pre-2019 USAT graduates from seeking ECFMG Certification.

   As for the ECFMG Sponsor Note about USAT and the affidavits sent to USAT students and graduates, "[t]here is of course no liability for interference with a contract . . . on the part of

one who merely gives truthful information to another."  Restatement (Second) of Torts § 772, cmt. b.  Indeed, "courts in a majority of states"—including Pennsylvania—"have held that an action for tortious interference may not be based on truthful statements."  *Walnut St. Assocs.*, 20 A.3d at 479 & n.13.  Because the Sponsor Note and the affidavits contain only ***truthful*** information (*e.g.*, that beginning on January 1, 2019, USAT students and graduates will not be eligible for ECFMG Certification), they cannot constitute tortious interference.  *Id.*[8]

### b.      Dr. Tulp's due process claims are meritless.

In Counts Two and Four of the Complaint, Dr. Tulp identifies a list of alleged procedural deficiencies in how ECFMG conducted Dr. Tulp's irregular behavior hearing and alleges that ECFMG violated Dr. Tulp's and USAT students' due process rights.[9]  *See* Compl. ¶¶ 35, 36, 41, 58.  Dr. Tulp is not likely to succeed on his due process claims for three reasons.

*First*, ECFMG is not a state actor, and the due process requirements of the Fourteenth Amendment apply only to state actors.  *Rendell-Baker v. Kohn*, 457 U.S. 830, 837 (1982).  The Third Circuit, Courts in this District, and other Courts have previously held that ***ECFMG is not a state actor*** and that its functions ***do not constitute state action***.  *See, e.g.*, *Opoku v. ECFMG*, 574 F. App'x 197, 201 (3d Cir. 2014) ("Grese and ECFMG, a private not-for-profit organization, are

---

[8] Dr. Tulp also alleges in conclusory fashion that ECFMG is liable for violating the Federal Education Records Protection Act ("FERPA"), 20 U.S.C. § 1232g.  This baseless allegation fails for a number of reasons, including that the U.S. Supreme Court has held that private parties like Dr. Tulp may not sue to enforce that statute.  *See Gonzaga Univ. v. Doe*, 536 U.S. 273, 29091 (2002).

[9] Dr. Tulp refers in passing, without any explanation, to an alleged violation of "substantive due process."  Compl. ¶ 58.  He has not identified how ECFMG's actions implicate a fundamental right subject to this protection.  *See Nicholas v. Pa. State Univ.*, 227 F.3d 133, 140 (3d Cir. 2000) ("Whether a certain property interest [is worthy of protection under the substantive due process clause] . . .  depends on whether that interest is 'fundamental' under the United States Constitution.")  Absent a fundamental right, "the governmental action is entirely outside the ambit of substantive process and will be upheld so long as the state satisfies the requirements of procedural due process."  *Id.* at 142.

16

private parties and not state actors."); *Thomas v. NBME-Nat'l Bd. of Medical Examin'rs*, No. 13-3946, 2015 WL 667077, at *4 (E.D. Pa. Feb. 13, 2015) ("Because neither ECFMG nor NBME is a state actor, Plaintiff cannot prevail on this claim."); *Elias v. ECFMG*, No. C-82-08, 2010 WL 4340640, at *1 (N.J. Super. Ct. Nov. 4, 2010) (finding insufficient evidence "to establish that the ECFMG is a state actor"); *Staudinger v. ECFMG*, No. 92-8071, 1993 WL 138954 (S.D.N.Y. Apr. 28, 1993) (dismissing § 1983 claims because ECFMG is not a state actor and does not act under the color of state law).

Consistent with this overwhelming weight of authority, the record here confirms that ECFMG's action cannot be viewed as state action because it is not "fairly attributable" to the state. *McKeesport Hosp. v. Accreditation Council for Graduate Med. Educ.*, 24 F.3d 519, 524 (3d Cir. 1994). The U.S. Supreme Court has identified only three possible ways for private action to be attributable to the state and therefore constitute state action: (1) "if the private party acted with the help of or in concert with state officials," (2) "when the private party has been 'delegated a power traditionally exclusively reserved to the State,'" or (3) "if 'there is a sufficiently close nexus between the state and the challenged action of the [private] entity so that the action of the latter may be fairly treated as the state itself.'" *Id.* (internal citations omitted).

ECFMG's actions do not meet any of these tests. ECFMG did not act or conspire with a state actor to carry out its actions. *See Opoku*, 74 F. App'x at 201 ("Liability would only attach if a private party conspired with a state actor" and vague allegations of conspiracy between ECFMG and a state actor are not sufficient). Nor were ECFMG's actions delegations of "a power traditionally exclusively reserved to the State." *McKeesport Hosp.*, 24 F.3d 519 at 525. Rather, its actions were limited sanctions tied to ECFMG's role in assessing the qualifications of IMGs and certifying their readiness to enter the U.S. graduate medical education system, which

is not a power exclusive to the state.  *See Staudinger*, 1993 WL 138954, at *4*; see also*

*McKeesport Hosp.*, 24 F.3d at 525 ("The evaluation and accreditation of medical education in

this country is neither a traditional nor an exclusive state action.").  And despite Dr. Tulp's

contention that there is a sufficiently close nexus between ECFMG's actions and state medical

boards to establish state action, this is not the case.  "ECFMG is not a subdivision of or affiliated

with any governmental entity, its Board of Trustees receives no funding from any governmental

entity . . . and it sets its own standards for an [IMG]'s eligibility to take the United States

Medical Licensing Examination (USMLE)."  *Elias*, 2010 WL 4340640, at *1*; see McKeesport*

*Hosp.*, 24 F.3d at 525 ("The ACGME is self-governed and financed, and its standards are

independently set; the state Board simply recognizes and relies upon its expertise.").  That state

medical boards rely on ECFMG Certifications does not render ECFMG a state actor.  *See Brown*

*v. Fed'n of State Med. Bds.*, No. 82-7398, 1985 WL 1659, at *5 (N.D. Ill. May 31, 1985)

(holding that ECFMG is "not [a] state agenc[y]" and "do[es] not participate in a state activity"

because "[t]he actual state actors here are the state licensing boards, which have complete control

over whether or not to use the defendants' tests, and if so, how to use these tests" and "[t]he state

boards are at most [ECFMG's] consumers").[10]

---

[10] Dr. Tulp's suggestion that ECFMG is "estopped from denying that it is a government or quasi-governmental entity, *inter alia*, because no disclaimer that it was a private entity to that effect [sic] was placed on the affidavits sent to thousands of USAT students" is baseless.  Compl. ¶¶ 37–38.  ECFMG sent affidavits only to those USAT students and graduates who were "seeking a service or services related to ECFMG Certification."  Compl. Ex. D.  Such students are familiar with the role ECFMG certification plays for IMGs seeking to enter U.S. graduate medical education and have had prior access to ECFMG's resources, including ECFMG's own website that clearly states ECFMG is a "[p]rivate, nonprofit organization."  *About ECFMG: ECFMG Fast Facts*, ECFMG, https://www.ecfmg.org/about/index.html (last visited Jan. 10, 2019).

*Second*, even if ECFMG's actions constituted state actions, which they do not, Dr. Tulp's due process claims also fail because he has not identified a sufficient liberty or property interest of which he has been deprived. *See Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 569 (1972) ("The requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property."). ECFMG's decision not to accept documents signed by Dr. Tulp, especially given Dr. Tulp's history of falsehoods, does not implicate any liberty or property concerns which would trigger due process protections. Nor do USAT students have any property right to ECFMG Certification. *See Elias*, 2010 WL 4340640, at *3 (applicant for ECFMG certification did not have a right to a medical license as "a protected right in a professional license comes into existence only after a license has been obtained").

*Third*, even if ECFMG actions were state actions and did implicate interests protected by the Fourteenth Amendment—again, they do not—Dr. Tulp would still not succeed on his due process claims because he was afforded due process. "[D]ue process is flexible and calls for such procedural protections as the particular situation demands." *Matthews v. Eldridge*, 424 U.S. 319, 334 (1976) (internal citations omitted). "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Id.* at 333.

Dr. Tulp and USAT both received prior notification of the allegations against them. *See* Compl. Ex. F (Dr. Tulp); Ex. 4 (USAT); Ex. 7 (USAT). Dr. Tulp and USAT were both invited to submit whatever explanation or evidence they thought were necessary to address ECFMG's concerns regarding the irregularities concerning USAT's operations in the United States and Dr. Tulp's misrepresentations regarding same. *See id.* Dr. Tulp also received numerous letters explaining ECFMG's process for investigating and evaluating allegations of irregular behavior

and was provided with copies of ECFMG's policies and procedures and was sent (and also given at the hearing) a copy of the materials to be reviewed by the Credentials Committee in assessing the allegations against him.  *See* Ex. 15 at 7:13–24; 9:9–10:4.  This constitutes ample notice of the accusations made against him and how they would be resolved.  *See, e.g.*, *Biliski v. Red Clay Consol. School Dist. Bd. of Educ.*, 574 F.3d 214, 221–22 (3d Cir. 2009) (holding that a discharged employee was given "constitutionally sufficient notice of the reasons" his dismissal was sought when he was provided with multiple disciplinary memos which described the bad conduct and what body would decide whether dismissal was appropriate).

Moreover, Dr. Tulp had an opportunity to appear personally before the Credentials Committee with two attorneys of his choosing.  *See* Compl. Exs. A, E, & F; Ex. 15 at 8:8–15; *see also Matthews*, 424 U.S. at 334, 344–346 (explaining that some form of hearing with safeguards such as the opportunity to submit documentation, access to the file under review, and ability to be represented are safeguards which speak to whether adequate procedures were in place).  To the extent that Dr. Tulp argues that his hearing was inadequate because it was terminated without witnesses being called, the Credentials Committee repeatedly invited Dr. Tulp to speak or offer evidence, but he refused to do so (at the direction of his counsel).  Ex. 15 at 4:9-11; 6:18-22; 20:5–12; 22:19–24.  And even if Dr. Tulp had not been given a hearing, there is no constitutional right to present oral responses at a formal hearing.  *See Biliski*, 574 at 222 ("There is no inexorable requirement that oral testimony must be heard in every administrative proceeding in which it is tendered." (quoting *Fed. Deposit Ins. Corp. v. Mallen*, 486 U.S. 230, 247–48 (1988))).

For these multiple and compounding reasons, Dr. Tulp's due process claims are not likely to succeed, and injunctive relief as to these claims is unwarranted.

### c.      Dr. Tulp's fraudulent and negligent misrepresentation claims are meritless.

To prevail on a claim for fraudulent misrepresentation, Dr. Tulp must demonstrate: "(1) a representation; (2) which is material to the transaction at hand; (3) made falsely, with knowledge of its falsity or recklessness as to whether it is true or false; (4) with the intent of misleading another into relying on it; (5) justifiable reliance on the misrepresentation; and (6) the resulting injury was proximately caused by the reliance."  *Gibbs v. Ernst*, 647 A.2d 882, 889 (Pa. 1994) (internal citations omitted).  To prevail on a negligent misrepresentation claim, he must prove "(1) a misrepresentation of a material fact; (2) made under circumstances in which the misrepresented ought to have known its falsity; (3) with an intent to induce another to act on it; and (4) which results in injury to a party acting in justifiable reliance on the misrepresentation." *Gongloff Contracting, L.L.C. v. L. Robert Kimball & Assocs., Architects and Eng'rs, Inc.*, 119 A.3d 1070, 1076 (Pa. Super. 2015).

In Count 3 of the Complaint, Dr. Tulp alleges that ECFMG is liable for fraudulent or negligent misrepresentation because it supposedly (a) misrepresented itself as a government agency, and (b) placed misleading information about USAT in the World Directory of Medical Schools.  These allegations are false and the misrepresentations claims fail as a matter of law for three reasons.

*First*, Dr. Tulp has not even alleged actionable misrepresentations, let alone produced evidence of them.  None of the documents attached to the Complaint or the Motion reflect any representation by ECFMG that it is a government agency.  Nor was there false information included in the Sponsor Note published in the World Directory of Medical Schools.  The Sponsor Note said only that as of January 1, 2019, USAT students and graduates would not be eligible for ECFMG Certification, and that some USAT students and graduates would be subject

to enhanced procedures in order to be eligible for ECFMG Certification related services.  *See* Compl. Ex. B.  Those statements are 100% correct.

*Second*, Dr. Tulp cannot show that ECFMG "failed to make a reasonable investigation of the truth of [its] words," *Gongloff Contracting*, 119 A.3d at 1076.  To the contrary, the record shows that ECFMG was meticulous and careful in its investigations and evaluations of USAT and Dr. Tulp.

*Third*, "[t]he successful maintenance of a cause of action for fraud includes, *inter alia*, a showing that **the plaintiff** acted in reliance **on the defendant's misrepresentations**."  *Klemow v. Time Inc.*, 352 A.2d 12, 16 n.17 (Pa. 1976) (emphasis added); *see Liss & Marion, P.C. v. Recordex Acquisition Corp.*, 983 A.2d 652, 665 (Pa. 2009) (same).  Accordingly, Dr. Tulp's misrepresentation claims fail for lack of any evidence that (a) the alleged misrepresentations were made knowingly or with the intent to mislead **Dr. Tulp**, or (b) **Dr. Tulp** relied on ECFMG's misrepresentations to his detriment.  Even on a generous reading of the Complaint, the only reliance on alleged misrepresentations that is potentially alluded to is that of **USAT students or prospective students**, which is insufficient as a matter of law for **Dr. Tulp** to state a misrepresentation claim.  *See Joyce v. Erie Ins. Exchange*, 74 A.3d 157, 167 (Pa. Super. 2013) (dismissing misrepresentation claim for failure to "allege that the recipient of the misrepresentation was the individual or entity damaged as a proximate result of reasonable reliance upon the misrepresentation").  And even if Dr. Tulp could claim that he relied on any alleged misrepresentations, which he does not, his claims would still fail because such reliance could not possibly be reasonable or justifiable.  *See, e.g.*, *LeDonne v. Kessler*, 389 A.2d 1123, 1129–30 (Pa. Super. 1978) (ruling that a plaintiff's reliance on a representation cannot be justifiable if the plaintiff had personal knowledge that the representation was false).

**d.      Dr. Tulp's abuse of process claims are meritless.**

"To establish a claim for abuse of process it must be shown that the defendant (1) used a legal process against the plaintiff, (2) primarily to accomplish a purpose for which the process was not designed, and (3) harm has been caused to the plaintiff." *Lerner v. Lerner*, 954 A.2d 1229, 1238 (Pa. Super. 2008) (quoting *Shiner v. Moriarty*, 706 A.2d 1228, 1236 (Pa. Super. 1998)).  Dr. Tulp cannot satisfy any of these elements.

Dr. Tulp has not even alleged (let alone proven) that ECFMG used any legal process against him.  At most, Dr. Tulp mischaracterizes the blank affidavits sent to USAT students as part of their application for ECFMG Certification—necessitated only because Dr. Tulp provided false information to ECFMG and refused to address ECFMG's concerns about USAT's unauthorized campuses in the United States—as "tantamount to a 'subpoena duces tecum' without first having a legal proceeding."  Compl. ¶ 25.  But the affidavits and accompanying instructions made clear that this was a requirement adopted by ECFMG to ensure that USAT students would attest to having satisfied ECFMG's requirements, notwithstanding refusals by USAT and Dr. Tulp to provide information confirming that fact.  *See* Compl. Ex. D.  Requesting that an applicant complete a notarized form as part of an application is not the use of legal process.

There is also no evidence in the record whatsoever of harm to Dr. Tulp or USAT that was caused by the mere provision of blank affidavits with instructions to complete them as part of the ECFMG Certification process.  Nor can Dr. Tulp demonstrate that ECFMG sent blank affidavits to USAT students and graduates "primarily" to accomplish a purpose for which they were not intended.  Indeed, the affidavits were specifically designed to elicit information from USAT students and graduates to confirm their attendance at medical courses in Montserrat.

*        *        *

Because all of Dr. Tulp's claims fail as a matter of fact and a matter of law, he has not demonstrated a likelihood of success on the merits and no equitable relief should issue.

### 2.        Dr. Tulp will not suffer irreparable harm absent injunctive relief.

Failure to demonstrate irreparable harm necessitates the denial of injunctive relief.  *See Instant Air Freight Co. v. C.F. Air Freight, Inc.*, 882 F.2d 797, 801 (3d Cir. 1989).  To make a showing of irreparable harm, the potential for harm must be immediate and cannot be redressed by a legal or equitable remedy after a trial.  *Id.*  Put another way, the requisite feared injury or harm must not be merely serious or substantial, but rather must be of a peculiar nature so that compensation in money cannot atone for it.  *ECRI v. McGraw Hill*, 809 F.2d 223, 226 (3d Cir. 1987).  It is the plaintiff's burden to make a "clear showing of immediate irreparable injury."  *Id.*

As a threshold matter, Dr. Tulp has presented no evidence whatsoever of irreparable injury.  This alone is grounds for denying injunctive relief.  *See Pallante v. Those Certain Underwriters at Lloyd's, London*, 311 F. Supp. 3d 692, 695 n.3 (E.D. Pa. 2018) (denying preliminary injunction where movant "filed no relevant affidavit or verified pleading showing immediate and irreparable injury, loss, or damage").

Additionally, Dr. Tulp's unsupported contention that he faces immediate irreparable injury is called into question by his delay in seeking injunctive relief.  *See Lanin v. Borough of Tenafly*, 515 F. App'x 114, 118 (3d Cir. 2013) (quoting *Citibank, N.A. v. Citytrust*, 756 F.2d 273, 275 (2d Cir. 1985) ("Delay in seeking enforcement of those rights . . . tends to indicate at least a reduced need for such drastic, speedy action.").  As early as October 18, 2018, Dr. Tulp—and the general public—knew of ECFMG's decision not to certify USAT students and graduates beginning January 1, 2019.  *See* Compl. Ex. B.  Despite this, Dr. Tulp waited until ***after*** ECFMG's decision about USAT took effect (on January 1) to file his Motion (on January 2).  Dr. Tulp has given no justification for his unreasonable delay in seeking injunctive relief, which

confirms that his claims of irreparable harm ring hollow.

Even if Dr. Tulp had not delayed seeking relief, the types of harm allegedly suffered by Dr. Tulp and USAT are not irreparable as a matter of law.  Dr. Tulp's suggestion that ECFMG's decision will result in the "immediate closing of USAT College of Medicine," Compl. ¶ 29, does not warrant injunctive relief for several reasons.  For starters, there is no evidence that USAT is "closing," let alone that it is closing because of ECFMG's decision.  To the contrary, the only limitation imposed by ECFMG as a result of USAT's refusal to provide documentation confirming its authorization to operate campuses in the United States is that beginning on January 1, 2019, USAT students and graduates will not be eligible for ECFMG Certification. USAT is free to continue operating as a medical school in Montserrat and graduating physicians. USAT is also "still entirely free and always has been free to secure other business," including by leveraging the numerous other credentials it purports to have on its website and/or to operate as a medical school for Montserrat.  *See About Us*, USAT, http://usat.edu/aboutus/ (last visited Jan. 10, 2019) (attached as Ex. 16) (claiming numerous accreditations); *see also Instant Air Freight*, 882 F.2d at 802.  Because there must be a "clear factual record apart from general statements to the effect that [USAT] will no longer exist" as a result of ECFMG's actions to support a finding of irreparable harm, *id.* at 803, any alleged injuries can be redressed by monetary relief and without the extraordinary remedy of injunctive relief.

Dr. Tulp also suggests that he would be irreparably harmed absent injunctive relief by virtue of his "removal . . . as a medical educator under the cloud of an indefinite sentence of 'irregular behavior' for a duration of not less than 5 years."  Compl. ¶ 29.  Again, this argument fails as a matter of fact and law.  The decision to deny ECFMG Certification to USAT students and graduates beginning January 1, 2019 will not cause the "removal of Dr. Tulp as a medical

educator." Notwithstanding ECFMG's actions, Dr. Tulp remains free to teach medicine, and ECFMG has no say over whether Dr. Tulp continues to teach medicine at USAT in Montserrat or elsewhere. Additionally, as a matter of law, any injury to Dr. Tulp's reputation is not irreparable and would not be avoided through injunctive relief. ECFMG's finding of irregular behavior has already been made public, at the very least through Dr. Tulp having filed this lawsuit without filing under seal. Dr. Tulp "is free to try to mitigate any reputational injury" as he sees fit, but it does not rise to the level of irreparable harm. *Thomas M. Cooley Law Sch. v. Am. Bar Ass'n*, No. 17-13708, 2017 WL 6342629, at *4 (E.D. Mich. Dec. 12, 2017); *Fla. Coastal Sch. of Law, Inc. v. Am. Bar Ass'n*, No. 3:18-cv-00621-BJD-JBT, ECF No. 39, at 14 (M.D. Fla. July 9, 2018) (removal of information that "is already published and available to the public and has been for nearly two months . . . will not undo whatever harm [movant] claims has already occurred"); *Guttenberg v. Emerg*, 26 F. Supp. 3d 88, 103 (D.D.C. 2014) ("As for injury to reputation, that chicken has already flown the coop. . . . Any adverse effects on [movant's] professional life . . . can be redressed through monetary compensation—if he is entitled to any— and hence that harm is by definition not irreparable.").

Moreover, the relief sought—releasing the test scores of post-2019 USAT students and graduates[11] and removing the Sponsor Note from the World Directory of Medical Schools, *see* ECF No. 3-1—would not avoid any purported irreparable harm because it would not change ECFMG's view that USAT students and graduates are not eligible for ECFMG Certification. To the contrary, the relief sought would cause irreparable harm **_to ECFMG_** by restraining its First Amendment right to make public its findings and decisions regarding USAT and Dr. Tulp. *See*

---

[11] ECFMG is **_not_** withholding the test scores of otherwise eligible pre-2019 USAT students and graduates.

*infra*.

**B.     The Remaining Factors—and the Factors Overall—Weigh *Against* Injunctive Relief.**

Even if Dr. Tulp could establish the "gateway factors" of likelihood of success on the merits and irreparable harm absent injunctive relief, which he cannot, the Motion should be denied because the remaining two factors—the public interest and the balance of harms—weigh decisively against injunctive relief.  Accordingly, the totality of the four factors considered by the Court for injunctive relief overwhelmingly disfavor injunctive relief.

**1.     The injunctive relief sought is not in the public interest.**

A key element considered in determining whether to grant an injunction is whether it would be in the public interest.  *See, e.g.*, *Winter*, 555 U.S. at 24 ("In exercising their sound discretion, courts of equity should pay particular regard for the public consequences in employing the extraordinary remedy of injunction.").  Here, it would be contrary to the public interest for this Court to mandate that ECFMG continue to treat USAT as a *bona fide* international medical school that complies with ECFMG's policies given that: (1) ECFMG has determined there is good cause to believe USAT is violating ECFMG's policies; and (2) USAT and Dr. Tulp have failed to present any evidence to alleviate ECFMG's concerns.  ECFMG endeavors to protect the health of the public through application of its policies and procedures, and an end-run around them would be adverse to the public interest.

Moreover, temporarily restoring the privileges of Dr. Tulp and/or USAT with respect to the ECFMG Certification process or modifying the ECFMG Sponsor Note in the World Directory of Medical Schools as currently presented would harm the public interest because prospective students might enroll in USAT under the mistaken belief that it would enable them to secure ECFMG Certification when it may be determined at the end of the litigation that

ECFMG is not obligated to certify students from USAT.  *Phila. Wireless Tech. Inst. v. Accrediting Comm'n of Career Sch. & Colls. of Tech.*, No. Civ. A. 098-2843, 1998 WL 744101, at *8 (E.D. Pa. Oct. 23, 1998); *see also Thomas M. Cooley Law Sch.*, 2017 WL 6342629, at *4. And compelling ECFMG to certify students from USAT when the record shows USAT is ***not*** a *bona fide* international medical school risks throwing ECFMG's certification process into disarray to the extent USAT is "allowed to pretend it is an entity worthy" of certification when it is not.  *Phila. Wireless Tech. Inst.*, 1998 WL 744101, at *8.

## 2.    The balance of harms weighs against injunctive relief.

The balance of harms weighs against injunctive relief.  As to Dr. Tulp, ECFMG only restricted his authority to sign documents to be relied upon by ECFMG in connection with ECFMG's Certification process.  This does not interfere with his ability to earn a living, teach medicine, or work at a medical school.  As to USAT (which is not even a party in this case), ECFMG's decision that beginning January 1, 2019, USAT students and graduates would no longer be eligible for ECFMG Certification does not interfere with USAT's ability to train medical students in Montserrat (where it is supposedly a medical school) or to help its students enter post-graduate programs in countries that do not rely on ECFMG Certification.

By contrast, ECFMG would suffer ***substantial*** harm if it were forced to accept Dr. Tulp's signature on documents notwithstanding his record of falsehoods and to release the test scores of USAT students and graduates notwithstanding ECFMG's serious concern that USAT is not a *bona fide* international medical school.  Numerous courts have held that orders interfering with a certification process like that of ECFMG poses a serious risk of harm to the certifying body and weighs against injunctive relief.  *See, e.g.*, *Thomas M. Cooley Law Sch.*, 2017 WL 6342629 (refusing to grant injunction interfering with the ABA's decision to sanction a law school because doing so would harm the ABA by preventing it from executing its duties).

28

Moreover, preventing ECFMG from publicly disclosing its decisions with respect to Dr. Tulp and USAT would effectively restrict ECFMG's First Amendment right to free speech, which is a serious harm that in itself would constitute irreparable injury and weighs heavily against an injunction. *See Elrod v. Burns*, 427 U.S. 347, 373 (1976) (burdening First Amendment rights "for even minimal periods of time, unquestionably constitutes irreparable injury"). ECFMG has a First Amendment right to communicate its views about USAT to licensing bodies and prospective students, *see Mass. Sch. of Law at Andover, Inc. v. ABA*, 937 F. Supp. 435, 443-44 (E.D. Pa. 1996); *Zavaletta v. Am. Bar Ass'n*, 721 F. Supp. 96, 98 (E.D. Va. 1989), and the supposedly threatened interests of Dr. Tulp and USAT are not more fundamental than ECFMG's First Amendment rights.

## V.   <u>CONCLUSION</u>

For the foregoing reasons, Defendants ECFMG and Dr. Pinsky respectfully request that the Court deny Plaintiff's Motion for a Preliminary and/or Permanent Injunction.

Respectfully submitted,

Dated: January 10, 2019

*/s/ Elisa P. McEnroe*
Elisa P. McEnroe, PA Bar No. 206143
Matthew D. Klayman, PA Bar No. 319105
MORGAN, LEWIS & BOCKIUS LLP
1701 Market Street
Philadelphia, PA  19103-2921
Telephone:     +1.215.963.5917
Facsimile:     +1.215.963.5001
elisa.mcenroe@morganlewis.com
matthew.klayman@morganlewis.com

*Attorneys for the Educational Commission for Foreign Medical Graduates and Dr. William W. Pinsky*

29

## <u>CERTIFICATE OF SERVICE</u>

I do hereby certify that on this date, I caused true and correct copies of the foregoing

document to be served via electronic filing upon the following counsel of record via the ECF

system and/or e-mail:

TOMMY SWATE
403 WILD PLUM
HOUSTON, TX 77013

WILLIAM C. REIL
1515 MARKET ST SUITE 1200
PHILADELPHIA, PA 19102
215-564-1635
Fax: 215-564-4292
Email: billreillaw@gmail.com

*Attorneys for Plaintiff*

DATED:  January 10, 2019                            */s/ Elisa P. McEnroe*
                                                                   Elisa P. McEnroe