# **EXHIBIT 15**

November 28, 2018

1       MEETING OF THE ECFMG MEDICAL

      EDUCATION CREDENTIALS COMMITTEE

2

              - - -

3

4  RE:  ORIEN L. TULP, USAT

5            - - -

6        NOVEMBER 28, 2018

7          - - -

8     Hearing taken pursuant to notice,

9  was held at RITTENHOUSE HOTEL, 210 West

10  Rittenhouse Square, Philadelphia,

11  Pennsylvania, commencing at 10:00 a.m.,

12  on the above date, before LISA MARIE

13  CAPALDO, RPR, a Registered Professional

14  Reporter and Notary Public in and for the

15  Commonwealth of Pennsylvania.

16

17

18

19

20

       GOLKOW LITIGATION SERVICES

21   877.370.3377 ph | 917.591.5672 fax

         Deps@golkow.com

22

23

24

```
 1   APPEARANCES:
 2   ECFMG STAFF
 3   Mr. William W. Pinsky
     Mr. Dennis M. Donohue
 4   Ms. Kara Corrado
     Ms. Lisa L. Cover
 5   Ms. Svetlana Gridneva
     Mr. Scott Mealey
 6   Ms. Rosemary Carlin
 7
     ECFMG Board Members
 8
     Dr. Maryellen Gusic
 9   Dr. Ronald R. Blanck
     Dr. Barbara Barzansky
10   Dr. Peter Buckley
     Dr. Andrew Filak
11   Dr. Ram Krishna
     Dr. Dotun Ogunyemi
12   Dr. James Pelegano
13
14
15
16
17
18
19
20
21
22
23
24
```

November 28, 2018

1                    —   —   —

2                 I N D E X

3                    —   —   —

4

5     Statement of:

6              ORIEN L. TULP, USAT

7

8         By Mr. Swate

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

November 28, 2018

1                    -   -   -

2                 PROCEEDING

3                    -   -   -

4    O R I E N  T U L P, Sworn.

5                    -   -   -

6              DR. GUSIC:  We will begin by

7         asking the committee members and

8         the staff to introduce themselves.

9         We will swear in Dr. Tulp and then

10        if there are any opening

11        statements.

12              MS. McENROE:  Elisa McEnroe,

13        outside counsel for ECFMG.

14              MS. KATZ:  I'm Francis Katz.

15        I'm the general counsel at ECFMG.

16              DR. CRAIG:  Steve Craig,

17        board member.

18              DR. OGUNYEMI:  Dr. Ogunyemi,

19        ECFMG board member.

20              DR. BUCKLEY: Peter Buckley,

21        I'm also an ECFMG board member.

22              DR. PELEGANO:  Jim Pelegano,

23        ECFMG board member.

24              DR. KRISHNA:  Dr. Krishna,

1     board member.

2              DR. FILIK:  Andy Filik,

3     ECFMG board member.

4              DR. PINSKY:  Bill Pinsky,

5     President and CEO of ECFMG.

6              DR. GUSIC:  Maryellen Gusic,

7     board member and chair of this

8     committee.

9              DR. BLANCK:  Ronald Blanck,

10    chair and board member of this

11    committee.

12             DR. BARZANSKY:  Barbara

13    Barzansky, ECFMG board member.

14             MS. CORRADO:  Kara Corrado,

15    ECFMG staff.

16             MS. COVER:  Lisa Cover,

17    ECFMG staff.

18             MR. DONOHUE:  Dennis

19    Donohue, ECFMG staff.

20             MS. GRIDNEVA:  Svetlana

21    Gridneva, ECFMG staff.

22             MS. CARLIN:  Rosemary

23    Carlin, ECFMG staff.

24             MS. CORRADO:  Just briefly,

1        I'm just going to iterate the

2        allegations for the committee.

3        The allegation is that Dr. Orien

4        Tulp, professor and president of

5        USAT engaged in irregular behavior

6        in connection with providing false

7        information to ECFMG, specifically

8        that Dr. Tulp provided false

9        information to ECFMG regarding

10       USTAT's United States branch

11       campuses and certifying to the

12       attendance dates of several USTAT

13       students and graduates when ECFMG

14       has information that these

15       students were not attending USTAT

16       during some of the time periods to

17       which Dr. Tulp certified.

18            Dr. Tulp is here today along

19       with his attorneys to address

20       these allegations and to answer

21       any questions that the committee

22       may have.

23            DR. GUSIC:  Opening

24       statements.

November 28, 2018

1          MR. SWATE:  Thank you.  I

2     asked the name of the officer

3     outside the door, and he refused

4     to give me his name.  Could you

5     tell me who the officer outside

6     the door is?

7          MS. McENROE:  It's a

8     security officer we've brought in

9     for our own protection in case we

10    need it throughout our day's

11    proceedings.  He's an off-duty

12    Philadelphia police officer.

13         MR. SWATE:  First, I would

14    like to ask for the -- I've asked

15    and I've asked and I've asked for

16    the packet that was presented to

17    the committee members.  I would

18    like a copy of the packet, the

19    information that was submitted to

20    the committee members so that I

21    will know what was considered by

22    the committee before we came here

23    today because you're considering

24    information that I may or may not

November 28, 2018

1      know about.  And that's

2      fundamentally unfair to my client,

3      for my client to have to defend

4      against potential information that

5      we don't have.

6              First, I would ask for a

7      copy of that.

8              MS. McENROE:  There's

9      actually a black binder right in

10     front of you.  We also have

11     provided that on more than one

12     occasion prior to this proceeding,

13     which is our usual practice even

14     without you asking.  That's what

15     we do.

16             MR. SWATE:  Where is the

17     letter that you sent to the

18     committee members addressing this?

19             MS. McENROE:  The materials

20     presented to the committee

21     regarding this circumstance with

22     Dr. Tulp's charges of irregular

23     behavior are presented in that

24     binder to you.

November 28, 2018

1           MR. SWATE:  I'm asking you

2       for the letter you sent to the

3       committee members.

4           MS. McENROE:  I don't know

5       what you're talking about.

6           MR. SWATE:  You didn't send

7       them a letter explaining what this

8       was?

9           MS. McENROE:  We sent those

10      materials.

11          MR. SWATE:  What about the

12      letter that went with the

13      materials?

14          MS. McENROE:  Those are the

15      materials including any

16      correspondence with it.

17          MR. SWATE:  All the

18      correspondence would be included

19      with this material?

20          MS. McENROE:  Correct.

21          MR. SWATE:  I'm sorry.

22      Where is the correspondence that

23      you sent to the committee?

24          MS. McENROE:  This is the

November 28, 2018

 1          same material that you were

 2          provided.  November 14th you got

 3          it by e-mail, and November 15th

 4          you got it by Federal Express.

 5               MR. SWATE:  I'm asking for

 6          the letters that you sent to these

 7          committee members.  You just

 8          didn't send this out to the

 9          committee members just blindly.

10               MS. McENROE:  Unfortunate

11          for them, potentially there's a

12          lot of materials they have to

13          review, and they carefully review

14          the materials presented to them as

15          presented to you.  We get an

16          electronic copy, myself included

17          which you were provided by e-mail

18          on November 14th.

19               MR. SWATE:  So you're

20          telling me that you did not send

21          them a letter explaining this

22          material and explaining the

23          allegation to the committee

24          members.

November 28, 2018

1          MS. McENROE:  That material

2     is as presented to the committee.

3          MR. SWATE:  You're not

4     answering my question.

5          MS. McENROE:  I'm not here

6     to answer your questions, sir.

7     We're here for your client to

8     explain to us the charges of

9     irregular behavior against him.

10          If you have an opening

11     statement you would like to make,

12     we're interested in hearing it.

13     Our committee has questions for

14     your client, and then we will

15     consider the charges of irregular

16     behavior.

17          MR. SWATE:  This committee

18     has no jurisdiction over Dr. Tulp.

19     We showed up today as it stands

20     for negotiation.  You all have no

21     legal jurisdiction to determine

22     anything.

23          So accordingly, please be

24     advised that we're not waiving

1            because we're here any

2            jurisdictional issues that may be

3            addressed at another forum at

4            another day.

5                 Since the ECFMG has made the

6            allegation, it should have the

7            sole and exclusive burden of

8            proof.  So who is presenting the

9            evidence against Dr. Tulp?

10                This is not the U.S.

11           Congress where you can make blind

12           allegations and attempt to have

13           the person prove they are not

14           guilty.  And that's what's

15           occurring here today, just blatant

16           accusations and then assuming he's

17           guilty.  And you have him come

18           here for 20 minutes to explain why

19           he's not guilty.

20                You have a duty of

21           presenting your evidence, credible

22           evidence before Dr. Tulp has to

23           answer anything.  It's your

24           burden.

November 28, 2018

 1           Now, you claim you are

 2      basing this on the preponderance

 3      of evidence.  What evidence are

 4      you presenting here today that Dr.

 5      Tulp violated anything?  None.

 6           Also, there appears to be a

 7      co-mingling of the prosecutorial

 8      and jury functions.  You are both

 9      making the claims and acting as

10      judge and jury.

11           We have asked for discovery

12      of documents, especially any

13      letters or correspondence that

14      have been sent to the committee

15      members.  The claim that you just

16      sent the committee members this

17      without any explanation doesn't

18      meet any kind of test of

19      credibility.

20           The ECFMG is either acting

21      as quasi government entity or

22      acting under a contract basis.

23      Now, you claim that you are a

24      private nonprofit entity.  So the

November 28, 2018

1   only reason that you could be

2   interacting with Dr. Tulp is on

3   the basis of contract.  Where is

4   the contract?

5       Dr. Tulp's doesn't have a

6   contract with you all.  So you

7   have no right to tortuously

8   interfere with his business

9   practices or tortuously interfere

10  with his students.

11      ECFMG has printed and

12  published derogatory information

13  about USAT.  Whether it's true or

14  not true, at least the target of

15  those accusations should have had

16  the opportunity to address those

17  accusations before you go out and

18  attempt to ruin the school, which

19  is what you have done causing

20  probably millions of dollars worth

21  of damages.

22      If you're not a quasi

23  government entity, everybody in

24  this room is going to be liable

November 28, 2018

1        for whatever damages we can prove.

2        You've already prejudged the case

3        by taking action against USAT by

4        refusing to release documents of

5        their students.  Totally have

6        refused to release documents of

7        students the students are entitled

8        to have released.

9              Again, repeating myself,

10       you're either a quasi government

11       agency or you are a private

12       agency.  A private agency you got

13       to have a contract.  Quasi

14       government agency you got to have

15       at least an assemblance of due

16       process which there's none here.

17             I asked for the rules and

18       regulations and the protocols for

19       these meetings.  Apparently, there

20       is none other than what's in the

21       eyes of the beholders of the

22       people who run the ECFMG.

23             What's the protocol?  I

24       asked for the agenda.  I got a

November 28, 2018

1    brief statement to show up at

2    8:45.  And here we are at

3    ten o'clock, total disrespectful

4    to my client and myself to have us

5    show up at 8:45 and then be

6    ten o'clock before you have us

7    come in and address you.

8         So we have not received the

9    rules and regulations for the

10   hearing nor have we seen any right

11   that you have other than

12   essentially blackmailing the

13   students and telling the students,

14   well, if you don't send in these

15   forms, we're going to hold your

16   records hostage, which has

17   resulted in students either being

18   accepted for residency and not

19   being able to continue with the

20   residency or not being able to be

21   interviewed for the residency.

22        That is our opening

23   statement.  If you have any

24   questions, you can address them to

November 28, 2018

1        me.  Dr. Tulp will not be

2        answering any questions.

3              MS. McENROE:  Mr. Swate, do

4        you have any substantive response

5        or statement with respect to the

6        charges of irregular behavior

7        against your client?

8              We've heard your procedural

9        concerns.  And just for the

10       purposes of the record, we

11       disagree across the board with

12       your allegations and your

13       statements about the state of

14       affairs.  I think for everybody's

15       time I'm not going to go through

16       them and enumerate each and every

17       single one of them.

18              If and when we ever ended up

19       dealing with these issues in the

20       court of law, we would deal with

21       them then and we feel very

22       confident --

23              MR. SWATE:  I can assure you

24       we're going to end up in federal

November 28, 2018

```
 1              court.
 2                   MS. McENROE:  I let you
 3              speak.  Can you let me speak?
 4                   MR. SWATE:  I'm sorry.
 5                   MS. McENROE:  Do you have
 6              any statement with regard to the
 7              actual substantive allegations of
 8              irregular behavior?
 9                   MR. SWATE:  We can go
10              through this page by page.
11                   MS. McENROE:  I don't mean
12              to go through it page by page.
13              Are you here today saying that --
14              is it Dr. Tulp?  I would say Tulp
15              with an L.
16                   DR. TULP:  It's Tulp.
17                   MS. McENROE:  Are you saying
18              that Dr. Tulp did not provide
19              incorrect information to ECFMG
20              with regard to branch campuses in
21              the United States?
22                   MR. SWATE:  Show me your
23              evidence that he did.
24                   MS. McENROE:  We have e-mail
```

November 28, 2018

1    correspondence from him in all

2    caps saying that there were not

3    campuses in the United States.

4    And we have significant evidence

5    to the contrary.  We were

6    wondering if --

7        MR. SWATE:  What's your

8    definition of campus?

9        MS. McENROE:  Maybe that's

10   something you can illuminate for

11   us about what your client's view

12   is of a campus, whether there was

13   education taking place in the

14   United States for USTAT.

15       MR. SWATE:  The burden of

16   proof is not on Dr. Tulp.  The

17   burden of proof is on the ECFMG.

18       Now, Dr. Tulp is not going

19   to address a nebulous definition

20   of campuses.  You show me your

21   written definition of campuses and

22   we'll address that.

23       MS. McENROE:  Did USTAT

24   provide any student with any

1      medical school basic science

2      education in the United States?

3           MR. SWATE:  Well, yes, it

4      did.

5           MS. McENROE:  He's shaking

6      his head, no, and you just said,

7      yes.  So maybe you should let your

8      client speak to respond.

9           MR. SWATE:  Dr. Tulp is not

10     going to be talking today.  The

11     next time you hear him talk is

12     going to be in federal court.

13          MS. McENROE:  So, yes, there

14     was education in the United

15     States?

16          MR. SWATE:  There was no

17     campus in the United States.

18          MS. McENROE:  So my question

19     was, was there any education for

20     basic medical sciences provided in

21     the United States?

22          MR. SWATE:  What do you mean

23     by education?

24          MS. McENROE:  Were there any

November 28, 2018

1      live lectures provided in the

2      United States for USAT?

3              MR. SWATE:  My

4      understanding is the lectures were

5      for some extent was prepared by

6      the Internet, that type of thing.

7              MS. McENROE:  That was not

8      responsive to my question.  My

9      question was --

10             MR. SWATE:  You're not

11     cross-examining me, Counsel.

12             MS. McENROE:  Well, I'm

13     asking you questions and trying to

14     be more specific --

15             MR. SWATE:  We can't answer

16     the questions because you haven't

17     defined what campus is.  You

18     haven't defined what the

19     regulations for having an off-site

20     campus where you allowed other

21     schools to have off-site campuses,

22     but you attacked USTAT for some

23     reason.

24             Now, you cannot disagree

November 28, 2018

1          that you have allowed other

2          schools to have off-site campuses

3          due to natural problems.  You've

4          been told what the natural

5          problems were.

6                    MS. McENROE:  That was not

7          my question.  My question was,

8          were there any live lectures

9          provided to students of USTAT or

10         basic medical sciences in the

11         United States?

12                   MR. SWATE:  I'm not a

13         witness.  So you don't get to

14         cross-examine me.

15                   MS. McENROE:  I may not be

16         able to ask you questions as a

17         witness.  I would normally ask

18         your client.

19                   MR. SWATE:  You're not going

20         to be able to do that because you

21         haven't given me enough

22         information to prepare my client.

23         This star chamber proceedings,

24         he's not going to participate in.

November 28, 2018

1        MS. McENROE:  Despite the
2    four inches of paper --
3        MR. SWATE:  Let's go through
4    each of the --
5        MS. McENROE:  You had some
6    concerns that by not taking you
7    exactly at 8:45 when we asked that
8    you be here for a 9:00 hearing
9    until 10:00 was a waste of time.
10   We apologize if you feel that way.
11   That was not at all the intention.
12   This is a busy committee.  We
13   don't have the time or the man
14   with to sit here and go through
15   every single page that we provided
16   you weeks ago.
17       MR. SWATE:  I'm prepared to
18   go through every page of this.
19       MS. McENROE:  Tell me where
20   in there it proves that your
21   client did not provide any medical
22   school education in the United
23   States.
24       MR. SWATE:  He doesn't have

November 28, 2018

1      the burden of proof.

2              MS. McENROE:  We're just

3      going around in circles.  I don't

4      know that it's going to be much

5      more helpful to try and proceed.

6              MR. SWATE:  I'm willing to

7      go through every page of this.

8              MS. McENROE:  To what end?

9      You're not answering my questions.

10     What are you hoping to get out of

11     every single page of that?

12             If you want to sit here and

13     look for something specific, tell

14     me.  We've all read the materials.

15     We can help direct you.

16             Take a look at Appendix E at

17     the e-mail from your client

18     saying, it is not a campus.  Our

19     only campus is located in

20     Olveston, Montserrat, British West

21     Indies.

22             My questions are trying to

23     understand whether there was

24     medical school education in the

November 28, 2018

1        United States.

2              MR. SWATE:  That's not what

3        -- what you're trying to do is ask

4        that question and then leap frog

5        to make like that's the campus.

6              Give me your definition of

7        what a campus is and then give me

8        the cases in which you've allowed

9        campuses to operate outside of

10       their original address.

11             MS. McENROE:  Perhaps your

12       client, if we would be allowed,

13       could provide us an explanation of

14       what he meant by campus in this

15       e-mail because the committee is

16       interested in hearing that.

17             MR. SWATE:  I would like to

18       know what your definition of

19       campus is.

20             MS. McENROE:  He's the one

21       who used the word here.  I'm

22       interested to know what he means

23       by it.

24             MR. SWATE:  I'm asking you,

November 28, 2018

1      what's your definition of campus?

2      Secondly, what's the exceptions to

3      having an off-site campus?

4           MS. McENROE:  We appreciate

5      you being here today.  We're

6      working on trying to understand

7      the facts and circumstances in

8      this case.  Apparently, we're

9      going to be left with a cold

10     record because your client is

11     refusing to answer any questions.

12          I think at this time it

13     makes sense, unless there's any

14     closing statement you want to

15     make, that we adjourn.

16          MR. SWATE:  ECFMG is

17     adjourning this without us having

18     the ability to go through their

19     efforts.

20          MS. McENROE:  Is there

21     anything in particular you want to

22     go through?  We provided this to

23     you --

24          MR. SWATE:  I want to go

November 28, 2018

1      through the whole thing.

2           MS. McENROE:  Start on page

3      one.  What is it you want to talk

4      to us about it?

5           MR. SWATE:  The matter has

6      been brought to the CIE's

7      attention.  Where is the letter or

8      whatever information was brought

9      to the attention?

10          MS. McENROE:  We're not here

11     to answer questions, sir.  If you

12     have a closing statement or

13     something specific you want to

14     point out to us so we understand

15     the allegations better that are

16     lodged against your client, that

17     would be helpful.

18          That's why we're here today,

19     the due process you're saying that

20     you wanted.  We're here to try to

21     understand what it is that you're

22     trying to do here.

23          And candidly, I appreciate

24     you advocating on behalf of your

November 28, 2018

1     client.  It's not productive here

2     if we can't understand the

3     underlying facts as your client

4     means them and wants ECFMG to

5     understand them.

6          So if this is your position

7     that you're just going to come

8     here and obstruct, then that's

9     just how it's going to be and

10    we're not wasting this committee's

11    time.  They have a busy agenda,

12    and we've got to keep going.

13         MR. SWATE:  It's a waste of

14    the committee's time when you're

15    going to destroy somebody's good

16    name and good reputation without

17    telling them what you're claiming.

18    At least in Texas, before we

19    execute somebody, we at least tell

20    them what the claim is for

21    executing them.

22         You've refused.  You've

23    stone walled me on the procedures.

24    I've asked for written procedures

November 28, 2018

1    for this committee.  Apparently,

2    there's none.  It's whatever you

3    want to make them.

4         MS. McENROE:  Sir, you've

5    gotten the policy and procedures

6    on irregular behavior multiple

7    times.  You'd like to say that the

8    record says what you say it says.

9    It just doesn't.

10        We're trying to follow the

11   best procedure we possibly can,

12   and you and your client are

13   obstructing us in being able to

14   collect the information.  At this

15   point, I don't think that it's

16   productive to continue the

17   proceeding.

18        MR. SWATE:  We're entitled

19   to know what procedure this

20   committee is operating under.  You

21   just can't operate under whatever

22   you want to make it.

23        MS. McENROE:  You've gotten

24   the policies and procedures.

1          MR. SWATE:  No, I haven't.

2     I've gotten --

3          MS. McENROE:  They're

4     available on the Internet.

5          MR. SWATE:  I have received

6     broad statements, you can do

7     whatever you want.

8          MS. McENROE:  The record

9     will reflect --

10          MR. SWATE:  And that's not a

11     written policy and procedure.  And

12     that will not stand up under any

13     theory.

14          MS. McENROE:  We've provided

15     them to you in writing and the

16     link to the URL where they are

17     available publically on the

18     Internet.  I don't think at this

19     point there's anything else that's

20     worth us discussing at this

21     moment.  Thank you.

22          MR. SWATE:  You're

23     terminating --

24          MS. McENROE:  Yes, I'm

November 28, 2018

1        terminating the proceeding.

2             MR. SWATE:  ECFMG is

3        terminating this prior to us

4        presenting our evidence.

5             MS. McENROE:  We asked you

6        to present evidence, and all you

7        did was present legal argument.

8             What's your offer of proof?

9        What would you like to provide?

10            MR. SWATE:  We'll go through

11       every page of this.

12            MS. McENROE:  In particular,

13       what would you like to provide?

14            MR. SWATE:  First, I'd like

15       to know who Ms. Sara Colins is?

16            MS. McENROE:  From the

17       Florida Department of Education?

18            MR. SWATE:  I don't know who

19       this is.

20            MS. McENROE:  So what

21       evidence is that that you are

22       presenting to us?

23            MR. SWATE:  I'm asking your

24       evidence.  You're the one

November 28, 2018

1          presenting the evidence and I'm

2          asking what it is?

3               MS. McENROE:  You're not

4          providing any evidence.  So thank

5          you for coming today, Dr. Tulp.

6          We appreciate it.

7               MR. SWATE:  So you're

8          adjourning the --

9               MS. McENROE:  Yes, I'm

10          adjourning the proceeding.

11                    -  -  -

12               (Whereupon, the hearing

13          concluded at approximately 10:39

14          a.m.)

15                    -  -  -

16

17

18

19

20

21

22

23

24

November 28, 2018

1          C E R T I F I C A T E

2

3               I hereby certify that

4     the witness was duly sworn by me and that

5     the deposition is a true record of the

6     testimony given by the witness.

7

8

9          _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _

           LISA CAPALDO

10          Dated:

11

12    (The foregoing certification of this

13    transcript does not apply to any

14    reproduction of the same by any means,

15    unless under the direct control and/or

16    supervision of the certifying shorthand

17    reporter.)

18

19

20

21

22

23

24