**IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| DR. ORIEN L. TULP, | : | |
| | : | |
| Plaintiff, | : | Case No. 2:18-cv-05540-WB |
| | : | |
| v. | : | |
| | : | |
| EDUCATIONAL COMMISSION FOR | : | |
| FOREIGN MEDICAL GRADUATES, | : | |
| | : | |
| and | : | |
| | : | |
| DR. WILLIAM PINSKY, | : | |
| | : | |
| Defendants | : | |

## <u>ORDER</u>

NOW, on this ____ day of _____, 2019, upon consideration of

Defendants' Motion to Dismiss Plaintiff's Complaint Pursuant to F.R.C.P. 12(b)(6), and

Plaintiff's Response thereto, it is hereby ORDERED and DECREED that Defendants'

Motion to Dismiss Plaintiff's Complaint is DENIED.

By the Court:

_____
Honorable Wendy Beetlestone
United States District Court Judge

LAW OFFICES OF WILLIAM C. REIL
BY: William C. Reil, Esquire
Identification No. 26833
1515 Market Street, Suite 1200
Philadelphia, PA 19102
215-564-1635                                    ATTORNEY FOR PLAINTIFF

| | | |
|---|---|---|
| DR. ORIEN L. TULP, | : | |
| | : | |
| Plaintiff, | : | Case No. 2:18-cv-05540-WB |
| | : | |
| v. | : | |
| | : | |
| EDUCATIONAL COMMISSION FOR | : | |
| FOREIGN MEDICAL GRADUATES, | : | |
| | : | |
| and | : | |
| | : | |
| DR. WILLIAM PINSKY, | : | |
| | : | |
| Defendants | : | |

## **PLAINTIFF'S ANSWER TO DEFENDANTS' MOTION TO DISMISS THE COMPLAINT**

For the reasons set forth in the attached memorandum of law, Plaintiff Dr. Orien

L. Tulp, by his undersigned counsel, moves to deny Defendants' Motion to Dismiss

Plaintiff's Complaint.

Respectfully submitted,

William C. Reil, Esquire
Attorney for Plaintiff
Attorney I.D. No. 26833
1515 Market Street, Suite 1200
Philadelphia, PA 19102
215-564-1635
February 14, 2019
For: Tommy Swate, Esquire

LAW OFFICES OF WILLIAM C. REIL
BY: William C. Reil, Esquire
Identification No. 26833
1515 Market Street, Suite 1200
Philadelphia, PA 19102
215-564-1635                                    ATTORNEY FOR PLAINTIFF

| | | |
|---|---|---|
| DR. ORIEN L. TULP, | : | |
| | : | |
| Plaintiff, | : | Case No. 2:18-cv-05540-WB |
| | : | |
| v. | : | |
| | : | |
| EDUCATIONAL COMMISSION FOR | : | |
| FOREIGN MEDICAL GRADUATES, | : | |
| | : | |
| and | : | |
| | : | |
| DR. WILLIAM PINSKY, | : | |
| | : | |
| Defendants | : | |

## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE COMPLAINT

Plaintiff, Dr. Orien L. Tulp, through his undersigned counsel, submits this Memorandum of Law in Opposition to Defendant's Motion to Dismiss the Complaint, under F.R.C.P. 12(b)(6), and in support thereof, it is averred as follows:

### CASE OVERVIEW

Preliminarily, it should be noted that defendants did not file a motion with numbered averments for plaintiff to answer individually, but filed a Memorandum of Law requesting dismissal of plaintiff's complaint under F.R.C.P. 12(b)(6).

An overview of the case can be found in paragraph 10 of the complaint, titled "Summary", and in paragraphs 11 through 20, titled "General Allegations". They read as follows:

10. In an attempt to close down the USAT and sanction Dr. Tulp, defendant ECFMG has refused to allow students of USAT to take necessary medical

examinations. Defendant ECFMG has effectively closed USAT, by refusing to release scores for students who paid for the examinations. Doctors who graduated from USAT have been unable to commence their residency due to the refusal of the Board to issue an appropriate certification. ECFMG has also sent misleading "affidavits" to many USAT students and threatened many students with "irregular behavior" in order to sanction Dr. Tulp and force closure of the University, which he founded. He is President, CEO, and an equal owner of the University. Thus, ECFMG tortiously interfered with the educational contract between the students of USAT, the University, and Dr. Tulp, denied due process to Dr. Tulp and the students of USAT, and improperly used an "affidavit" [*See* Exhibit D] to coerce information from students. [Pinsky letter, *See* Exhibit A.] In addition, the Board placed information in the World Directory of Medical Schools, prior to any hearing or legal process, advising that it would no longer recognize the test scores of USAT graduates after January 1, 2019. *See* Exhibit B.

11. ECFMG sent to USAT a letter implying that the school would be closed on or about 01/01/19 because the Board would no longer recognize the scores of its students in taking the three-part United States Medical Licensing Examination. This action prohibits applicants from sitting for the USMLE, which is required for unrestricted medical licensure.

12. On 11/21/18, Kara Corrado, J.D., Vice President for Operations of the Board, sent a letter to counsel for USAT indicating two concerns: 1) that USAT's authority to conduct its medical education program amounted to "irregular behavior" because USAT had not been certified by a governmental entity in the United States, and 2) the allegation that USAT was operating medical school campuses in the United States. See Exhibit E. On October 18, 2018, Lisa Cover, a Senior Vice President with ECFMG, wrote a letter to Dr. Tulp advising him of the allegation that he engaged in "irregular behavior". See Exhibit F.

13. USAT has a certification from the government of Montserrat, allowing it to operate temporary venues due to an active volcano on the island. Such certification had been recognized by the Board without incident since 2003. USAT also operates online courses for the majority of its basic sciences course requirements via a specially developed SPOC [small platform online courses, developed by USAT]. A true and correct copy of the certification from Montserrat is attached and incorporated as Exhibit C.

14. Students from USAT have each paid well over $1,000 to the Board to take necessary medical exams, and the Board has refused to release their scores because of alleged misconduct by Dr. Tulp, and an assignment by the Board of "irregular behavior" arising out of an illegal affidavit issued to students of USAT. "Irregular behavior" may be a permanent admonition on a student or physician's official record, and make residency difficult, if not impossible.

15. The Board set up a hearing on 11/28/18 for Dr. Tulp, only, in Philadelphia, at the address in the caption to address so-called "irregular behavior". After a few minutes, with no witnesses called, Board counsel announced that the hearing was terminated. Prior to the hearing, the Board took the position that Dr. Tulp had the burden of proof on the issue of "irregular behavior" for which he had been charged by the Board. The Board set 20 minutes as the duration of the hearing. No testimony was taken or exhibits received in evidence, before Board counsel terminated the hearing. No Transcript of the proceedings has been received. The Board indicated that on 01/01/19 it will issue a finding of "irregular behavior" to Dr. Tulp effectively closing USAT.

16. There was no jurisdiction over, or relationship with, Dr. Tulp to compel him to attend the hearing by the Board, and he made a special appearance while not agreeing to jurisdiction. ECFMG has no jurisdiction over Dr. Tulp, or legal relationship with Dr. Tulp, or the power to enter any sanction against him. The Board has no contractual or statutory authority over Dr. Tulp.

17. The Board would not give Dr. Tulp sufficient discovery to conduct an adequate defense. Also, the Board has never requested any curricula, student records, or any documentation from USAT.

18. The term "irregular behavior" is void for vagueness, since "irregular behavior" is so broad that it essentially amounts to any behavior which the Board does not approve. There is no intelligible standard to ascertain "irregular behavior" with the exception of the fiat by the ECFMG. There is no due process mechanism to effectively challenge a finding of "irregular behavior" which can amount to an indefinite suspension of United States medical licenses by the Board without formal notification of such assignment to the individual concerned.

19. There is no reasonable way to ascertain the standards for "irregular behavior" in the instant case, prior to any adjudication.

20. The Board has effectively closed USAT by not allowing its students and graduates to complete the necessary medical examinations beyond January 1, 2019, and has tortiously interfered with the relationship of the students of USAT and Dr. Tulp, the President of the University.

In the complaint, the first cause of action deals with tortious interference of contract by the ECFMG with regard to Dr. Tulp. The second cause of action is for violation of due process, including fundamental fairness with respect to the rights of Dr. Tulp by the ECFMG. The third cause of action deals with state torts, including fraudulent misrepresentation, abuse of process, and misrepresentation by defendant. It should be

noted that there is a dual basis for jurisdiction here, based on diversity and on violation of

plaintiff's civil rights. The fourth cause of action is titled "plaintiff v. all defendants",

including Dr. Pinsky, and incorporates the prior averments. Instructive is paragraph 58

which reads:

> The actions of the ECFMG on Dr. Tulp and the students of USAT amount to a
> violation of procedural and substantive due process, as follows:
> (a) banning Dr. Tulp without a proper hearing;
> (b) banning Dr. Tulp without an evidentiary basis;
> (c) forcing closure of USAT and causing its students to be dismissed in an
> arbitrary and capricious manner;
> (d) requiring, at a hearing on 11/28/18, that USAT assume the burden of proof
> and allotting 20 minutes for the hearing;
> (e) terminating the hearing on 11/28/18 without receiving any evidence from
> Dr. Tulp;
> (f) finding Dr. Tulp guilty of "irregular behavior" without jurisdiction and
> due process, and effectively forcing closure of USAT College of
> Medicine without legal process, and constructively dismissing the students
> of USAT in violation of the law.

## EVIDENTIARY STANDARD FOR A MOTION TO DISMISS

A court should only dismiss a suit under F.R.C.P. 12(b)(6) if "it appears beyond

doubt that the plaintiff can prove no set of facts in support of his claim which would

entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S.Ct. 99, 102, (1957).

Similarly, "The district court must construe the complaint in a light most favorable to the

plaintiff, accept all the factual allegations as true, and determine whether the plaintiff

undoubtedly can prove no set of facts in support of his claims that would entitle him to

relief. … When an allegation is capable of more than one inference, it must be construed

in the plaintiff's favor. … Hence, a judge may not grant a Rule 12(b)(6) motion based on

a disbelief of a complaint's factual allegations." *Columbia Nat Resources, Inc. v. Tatum*,

58 F.3d 1101, 1109 (6th Cir.1995)."

The *Conley* standard above was replaced by the United States Supreme Court in

the case of *Bell Atlantic Corporation v. Twombly*, 127 S.Ct. 1955, 550 (2007). *Twombly* is somewhat more restrictive, but it still requires that the Court take the well-pled allegations of the complaint as true, along with any reasonable inferences thereof. The Court is required to determine whether the complaint alleges facts which give rise to relief, as opposed to mere speculation.

Plaintiff argues that the complaint is sufficiently specific to apprise defendants of the nature of this lawsuit and enunciates plausible claims sufficient to overcome a motion to dismiss. A plaintiff is not required to plead all the evidence necessary to prove their case in the complaint. *H.M. Bickford Company V. Speigle*, 120 A.2d 167, 384 Pa. 227 (1956). While *Bickford* is a state case, it is averred that federal law, with respect to a motion to dismiss, is substantially the same.

A defendant moving to dismiss under F.R.C.P. 12(b)(6) bears the burden of proving that the plaintiff has failed to state a claim for relief. See F.R.C.P. 12(b)(6); see also, e.g., *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005). To survive a Rule 12(b)(6) motion, the complaint must contain sufficient factual matter, accepted as true, to state a facially plausible claim to relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. *Southeastern Pennsylvania Transportation Authority v. Gilead Sciences, Inc.*, Civil Action 14-6978 (E.D.Pa. 05/04/2015). As such, "[t]he touchstone of the pleading standard is plausability." *Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012).

Dismissal is appropriate only if, accepting as true all the facts alleged in the

complaint, a plaintiff has not pleaded "enough facts to state a claim to relief that is plausible on its face," *Twombly*, 550 U.S. at 570, 127 S.Ct. 1955, meaning enough factual allegations "to raise a reasonable expectation that discovery will reveal evidence of "each necessary element. *Phillips v. County of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Twombly*, 550 U.S. at 556, 127 S.Ct. 1955)." The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937. "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id*. at 679, 129 S.Ct. 1937.

Federal pleading rules call for "a short and plain statement of the claim showing that the pleader is entitled to relief," F.R.C.P. 8(a)(2); they do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted. Supreme Court. *Johnson v. City of Shelby, Mississippi*, 135 S. Ct. 346 (2014).

## PLAUSIBLE CLAIMS AND WELL-PLEADED ALLEGATIONS

Among the plausible claims asserted by the complaint with its exhibits, are the following:

1. A decision was made by the ECFMG to find Dr. Tulp guilty of "irregular behavior", with a mandate that he be barred as a medical educator for at least five years. "Irregular behavior" is a permanent sanction. Importantly, before any hearing occurred with the ECFMG, it already found Dr. Tulp guilty of "irregular behavior". *See* complaint at paragraph 58(a) and Exhibit "A". The exhibit from the WDOMS was published on the Internet at the behest of the ECFMG well before the 11/28/18 hearing. *See* Exhibit "B" to the complaint.

2. Virtually no hearing was given to Dr. Tulp after the ECFMG extended an invitation to him to attend a hearing on 11/28/18. *See* complaint at paragraph 15. This is underscored by the fact that there is no evidence or witnesses cited by defendants that took place at the so-called "hearing". In point of fact, plaintiff alleges that no evidence was introduced at the hearing even though the Board or Credentials Committee was represented by the main defense counsel in this case. Dr. Tulp never addressed the ECFMG Board before the hearing was terminated by defense counsel. The ECFMG charged Dr. Tulp with "irregular behavior" and put the burden of proof on him to show his innocence.

Also, defendants never assert a failure to exhaust administrative remedies on appeal, because there was no evidence of any kind admitted at Dr. Tulp's hearing. There is a factual issue as to what occurred at the hearing, or even if an evidentiary hearing took place. Dr. Tulp was not afforded even the most rudimentary due process, which would apply to ECFMG, whether it be deemed a state actor in this particular instance, or a private actor. ECFMG, by extending an invitation for a hearing to Dr. Tulp, assumed a duty that such a hearing would not be a sham.

3. There was an abuse of process when the ECFMG issued affidavits to hundreds of students at USAT, the university that Dr. Tulp founded and owned half of its assets. *See* complaint at paragraph 10. This so-called "affidavit" (Exhibit "D" to the complaint), concocted by the ECFMG, requested documents, including passports of students, and threatened "irregular behavior" if they did not comply. A reasonable USAT student could believe they had to cooperate with the ECFMG, attempting to pose as a governmental agency, or put their desire for a United States medical license in permanent jeopardy. No

disclaimer that the ECFMG was a private entity was ever communicated to a USAT student or on the WDOMS Internet site.

The abuse of process arises from what is termed an "affidavit" by defendants, but what is actually more akin to a subpoena duces tecum, or a grand jury subpoena. It is averred that this document was designed to portray ECFMG as a governmental body and to undermine Dr. Tulp with the students of his university.

4. Dr. Pinsky wrote in his letter of 12/14/18 that "in 2018, the ECFMG determined that a certain individual of the University of Science, Art, and Technology engaged in "irregular behavior" with providing false information to the ECFMG." Similar postings by the ECFMG in sponsor notes on the WDOMS (Internet) sufficiently identified and defamed plaintiff, even before his alleged due process hearing. *See* complaint Exhibits "A" and "B".

5. The charges of "irregular behavior" against Dr. Tulp exceeded the authority of the ECFMG, and were vague and overbroad. "Irregular behavior", in reality, amounts to any actions by one who opposes the authority of the ECFMG or even does something of which the organization disapproves. "It is ECFMG's usual practice to consider any action or attempted actions by any person that would or could subvert the processes, programs, or services of ECFMG to be *irregular behavior*." See Exhibit "F", letter of Lisa L. Cover, Senior Vice President for Business Development and Operations.

Generally, the complaint must set forth enough information to outline the elements of a claim or to permit inferences to be drawn that these elements exist. *Jenkins v. McKeithen*, 395 U.S. 411, 89 S. Ct. 1843, 23 L. Ed. 2d 404 (1969); *Pennsylvania ex. Rel. Zimmerman v. Pepsico, Inc.*, 836 F. 2d 173, 179 (3d Cir. 1988). The court can

dismiss plaintiff's complaint **"only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations."** *Hishon v. King & Spalding*, 467 U.S. 69 (1984). (emphasis supplied)

**AFFIRMATIVE DEFENSES**

Defendants have asserted a variety of affirmative defenses, such as a privilege to defame, as well as truth as a defense to Dr. Tulp's defamation claim against Dr. Pinsky and ECFMG. These are affirmative defenses, and not the subject of the 12(b)(6) inquiry. In addition, the voluminous exhibits that defendants have attached from the injunction hearing to their motion to dismiss should not be considered.

Under Federal Rules of Civil Procedure, an 8(a) complaint need not anticipate or overcome affirmative defenses. Thus, a complaint does not fail to state a claim simply because it omits facts that would defeat a statute of limitations defense. *See In re Adams Golf, Inc. Sec. Litig.*, 381 F.3d 267, 277 (3d Cir. 2004).

The District Court in *Robinson* erred in considering certain documents attached to defendants' Rule 12(b)(6) motions. Technically, the Federal Rules of Civil Procedure require a defendant to plead an affirmative defense, like a statute of limitations defense, in the answer, not in a motion to dismiss. *See Robinson v. Johnson*, 313 F.3d 128, 134-35 (3d Cir 2002).

"To decide a motion to dismiss, courts generally consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record." *Pension Benefit Guar. Corp. V. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 199); *see also Mayer v. Belichick*, 605 F.3d 223, 230 (3d. Cir. 2010).

**ACTIONS OF ECFMG IMPLICATE DUE PROCESS IN THIS CASE**

Plaintiff argues that the abuse of authority by the ECFMG in this case creates a sufficient nexus with state action to render the organization a state actor.

1. The "affidavit" is an abuse of authority designed to make the ECFMG appear like a governmental agency. *See* Exhibit "D".

2. The ECFMG sponsor notes in the World Directory of Medical Schools were designed for viewing by USAT students, and it already implied that Dr. Tulp was guilty well before his hearing date. It is suggested that the Court may take judicial notice of a matter of public notice that the ECFMG and the WDOMS have the same address: 3624 Market Street.

3. The actions of the ECFMG violate FERPA ("Family Educational Rights and Privacy Act") with respect to its "homemade" affidavit designed to illegally coerce private information from USAT students.

**CIVIL RIGHTS CLAIM**

The ECFMG is liable for plaintiff's injuries under Section 1983, as set forth in plaintiff's complaint, because defendants' employees or agents executed a governmental policy that directly resulted in the deprivation of plaintiff's civil rights. *Monell v. Department of Social Services*, 436 U.S. 658, 98 S. Ct. 2018 (1978). If a city official causes a deprivation of life or liberty upon another because he was following a city policy reflecting the policymakers' deliberate indifference to constitutional rights, then the city is directly liable under Section 1983 for causing a violation of plaintiff's Fourteenth Amendment rights. *Fagan v. City of Vineland*, 22 F.3d at 17 (3d Cir. 1993) Liability may be based on actions of an official with final policy-making authority, which is then

attributed to the municipality, and even a *single action* by the policymaker may be enough to trigger municipal liability. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 106 S. Ct. 1292 (1986).  (emphasis supplied)

It is not required to find that individual defendants violated the rights of plaintiff to find that the government bodies and corporate entities named in plaintiff's complaint had a policy whose implementation violated those civil rights. *Pembaur*, *supra*; *Tennessee v. Guiner*, S. Ct. 1694 (1985); *Simmons v. City of Philadelphia*, 947 F. 2d 1042 (3rd Cir. 1991). In his excellent analysis at p. 28–45 of *Simmons v. Philadelphia*, *supra*, Judge Becker rejects the City's argument that an employee must have primary liability for a constitutional violation. The Supreme Court in both *Pembaur* and *Guiner*, *supra*, considered civil rights liability of the municipality alone, where all individual defendants had been dismissed.

In order to state a valid claim under Section 1983, plaintiff must allege the following: (1) that the conduct complained of was committed by a person acting under the color of state law; and (2) the conduct deprived plaintiff of rights, privileges or immunities secured by the United States Constitution. *Coates v. Jeffers*, 822 F. Supp. 1189 (E.D. Pa. 1993) citing *Parratt v. Taylor*, 451 U.S. 527, 535 101 S. Ct. 1908, 1912, 68 L. Ed.2d 420 (1980).

A deprivation of a property interest without due process of law is a violation of 42 U.S.C. 1983. *Bradshaw v. Pennsylvania State University,* Eastern District, 10-4839. The complaint delineates that plaintiff had a one-half property interest in the university and was its founder.

**ECFMG FUNCTION**

ECFMG is an organization sponsored by state medical organizations, including the federation of state medical boards. Through its process, it gives students what is a license to apply for a residency program. A residency program is a certified program that trains students who have graduated from medical school and who have taken a series of tests known as the United States Medical Licensing Examination. The various state boards have given the power to test and certify international medical graduates as competent to undertake residency training. New Jersey requires a foreign medical graduate to demonstrate to the New Jersey State Board of Medical Examiners that he or she holds a certificate issued by the ECFMG which was granted following the attainment of a passing score on an acceptable examination and verification of his or her credentials by the ECFMG.

ECFMG issues a de facto license (certification) which renders a foreign medical graduate eligible to apply for admission to a residence program in the United States. Without this license, a foreign medical graduate can not apply for a residency program. Without training in a residency program, the foreign medical graduate can not obtain a state medical license.

The actions of the ECFMG should be considered state actions under the circumstances. The ECFMG's procedure in granting, what is the initial license to eventually obtain a full medical license, has a significantly close nexus to the various state medical boards. Without the ECFMG certificate, the gate is closed to obtaining a medical residency. The state medical boards have granted the power to the ECFMG to

screen foreign medical students for licensure. State action is established. *Jackson v. Metro Edison Co*. 419 u.s.345, 351.

The ECFMG has insinuated itself into a position of interdependence with the state medical boards. The ECFMG can not be considered to be purely private. Not only does the ECFMG report to state medical boards, it also reports to the National Physician Data Bank. The ECFMG would not exist if it was not delegated powers by the state medical boards. *Burton v. Wilmington Parkway Authority* 365 U.S. 715, 725 (1961).

Because the ECFMG actions in this case should be treated as state actions, the ECFMG violated both procedural and substantial Fourteenth Amendment procedures and substantive due process rights.

Procedural due process rights were violated because at a minimum, a right to notice of the charges of "irregular behavior" and a right to present evidence to refute the charges is required by the Fourteenth Amendment. Neither notice of charges nor the right to present evidence was allowed by the ECFMG.

State action determination is necessarily a fact-bound inquiry. *McKeesport Hosp. v. Accreditation Council for Graduate Medical Educ.*, 24 F.3d 519 (3d Cir. 05/17/1994). The point is that while ECFMG has often been found to be a private party (in cases mostly involving *pro se* medical students), the facts in this case indicate that ECFMG exceeded its authority and acted as if it were a governmental entity.

When the ECFMG chose to portray itself to USAT students, through threats of "irregular behavior", coercive affidavits, and misuse of social media, as an apparent governmental agency in this case, it abnegated the ability to defend against liability by donning the mantle of a private entity.

## AMENDED COMPLAINT

Plaintiff requests the Court to allow amendment of the complaint, if necessary. If the complaint is insufficient due to a dearth of factual allegations, then there is a strong policy favoring the allowance of an amended complaint. "If a complaint is subject to a Rule 12(b)(6) dismissal, a district court must permit a curative amendment unless such amendment would be inequitable or futile." *Phillips v. County of Allegheny*, 515 F.3d 224, 245 (3d Cir. 2008) (citation omitted). In *Grayson*, The District Court did not follow these principles. Before it dismissed the case, the Court should have--absent inequity or futility of amendment--specifically advised Grayson that he could amend his complaint and given him a chance to do so. Neither inequity nor futility of amendment is present. *Grayson v. Mayview State Hospital*, 3rd Cir. Crt. Of Appeals (2002).

## DEFENDANTS' BRIEF

Defendants cited in the table of authorities, two Third Circuit cases to support that ECFMG is a private party. These are *Opoku* and *Osei*. Both are non-precedential and thus not allowed to be cited. In the instant case, a core issue is whether the ECFMG overstepped its authority, and acted with apparent governmental authority.

## AUTHORITY OF ECFMG OVER DR. TULP

There is no basis to exercise jurisdiction over Dr. Tulp if ECFMG is a private party, as defendants argue. There is no contractual relationship between the parties and defendants claim there is no state action. If that is true, there is no basis to exercise jurisdiction over Dr. Tulp. He is not a medical student, nor did he ever enter into an agreement with the ECFMG. Defendants can not with one hand proclaim that ECFMG has jurisdiction over Dr. Tulp, but with the other hand, assert that it is a private party.

**TORTIOUS INTERFERENCE WITH CONTRACT**

Plaintiff alleges in the first cause of action of the complaint that defendants tortiously interfered with contract. This is more broadly known as intentional interference with contractual relations. Pennsylvania Standard Suggested Jury Instructions, Section 17.280 Civil, in pertinent part states: "One who intentionally induces or otherwise intentionally prevents another from performing a contract with a third person or makes the performance of the contract more expensive is responsible to the other for the loss he or she suffered as a result of the prevention or interference with the contract. The intentional tort of interference with contractual relations has been recognized by the Pennsylvania Supreme Court." *Caskie v. Philadelphia Rapid Transcit Co*., 184 A. 17 (Pa. 1936); *Capecci v. Liberty Corp*., 176 A.2d 664 (Pa. 1962).

The contention in plaintiff's first cause of action involves the efforts by the ECFMG to destroy the medical education career of Dr. Tulp and close his university, USAT. Dr. Tulp had a property interest in USAT, and as stated in the complaint (paragraphs 1 and 10), he was not only the founder, but also had a significant property interest in the university. Dr. Tulp had a contract as the President and CEO with USAT, his university. Furthermore, the students at USAT had implied contracts with the university and Dr. Tulp arising out of their payment of tuition.

It is alleged that the efforts by ECFMG to illegally find that Dr. Tulp committed "irregular behavior", to use a so-called "affidavit" and the threat of "irregular behavior" to bully students into cooperation, as well as the relationship between the World Directory of Medical Schools and the ECFMG, which share a common address, indicate an illegal and duplicitous attempt to interfere with the contract between Dr. Tulp and the

USAT, by destroying the man and his university. *See* complaint exhibits "A", "B", and

"D".

### SUMMARY AND CONCLUSION

The Court should not dismiss the complaint under Rule 12(b)(6), since there are

plausible claims by plaintiff which support viable causes of action.

1. There was no hearing at all and the decision on Dr. Tulp was made before the purported hearing, as indicated in the WDOMS website, Exhibit "D". The hearing was a sham, which was arbitrary and capricious. This is evidenced by the fact that defendants did not claim that plaintiff did not try to exhaust his administrative remedies on appeal to the administrative body, because there was nothing to appeal in the record. The three salient points here are: A decision was made and posted on the WDOMS before the hearing; no evidence was presented at the hearing; and Dr. Tulp was given no opportunity to be heard or to present evidence, as indicated in the transcript.

2. Defendants violated the right to due process, and to a fair hearing even if defendants were private actors. In this particular instance, the ECFMG overstepped its authority and essentially acted as an agent of the state medical boards. The ECFMG has a monopoly, in the sense that no foreign medical student can practice medicine in the U.S. without the ECFMG certifying them. The ECFMG is essentially a kind of gatekeeper. If the ECFMG is seen to be a private actor, it did not even achieve the minimum standard of notice and a hearing. If the ECFMG affords a hearing, then it has assumed a duty to provide a fair hearing. If it indeed has authority to charge Dr. Tulp with "irregular behavior" (a permanent sanction), then the abuse of that authority is a violation of Dr. Tulp's civil rights.

3. There are state tort actions based on diversity of jurisdiction, as well as pendent jurisdiction, including defamation, the abuse of process and misrepresentation. Liability for Dr. Pinsky is indicated because he is the President, CEO, and a policymaker for the organization. Under diversity jurisdiction, the doctrine of respondeat superior applies. The abuse of process claim flows from the misuse of the affidavits, which were essentially used as subpoenas, and appeared to be issued by a state actor.

Dr. Tulp has a property interest in the USAT. The nexus between ECFMG and the

state medical boards makes ECFMG a gatekeeper which has a monopoly on the

admission of any foreign medical student to practice in the United States. If the ECFMG

was a state actor, then there are rights of due process. If ECFMG was a private actor that

extended a hearing, then the hearing may not be a sham. Interestingly, defendants do not

raise failure to exhaust administrative remedies for appeal, because there is no evidence

in the record from which to appeal.

Respectfully submitted,

*William C. Reil*

William C. Reil, Esquire
Attorney for Plaintiff
Attorney I.D. No. 26833
1515 Market Street, Suite 1200
Philadelphia, PA 19102
215-564-1635
February 14, 2019
For: Tommy Swate, Esquire

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the attached document (s) was

served upon all other parties or their counsel of record by:

                Regular First Class Mail

                Facsimile

                Certified Mail

                Hand-Delivered

X            Electronic Filing

X            Email

William C. Reil, Esquire
Attorney for Plaintiff
Attorney I.D. No. 26833
1515 Market Street, Suite 1200
Philadelphia, PA 19102
215-564-1635
February 14, 2019
For: Tommy Swate, Esquire