IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DR. ORIEN L. TULP,<br>        Plaintiff,<br><br>v.<br><br>EDUCATIONAL COMMISSION FOR<br>FOREIGN MEDICAL GRADUATES AND<br>DR. WILLIAM W. PINSKY,<br>        Defendants. | CIVIL ACTION<br><br><br><br>NO. 18-5540 |

## OPINION

Plaintiff Dr. Orien Tulp brings this suit against Defendants Education Commission for Foreign Medical Graduates ("ECFMG") and Dr. William Pinsky (collectively "Defendants"), alleging Defendants committed various constitutional and common law torts in the course of investigating and then sanctioning Plaintiff for his role in administering an overseas medical school. Defendants now move to dismiss Plaintiff's Complaint for failing to state a claim upon which relief can be granted. For the reasons that follow, Defendants' motion will be granted in part and denied in part.

**I.    Background**[1]

Plaintiff is President of the University of Science, Arts, and Technology ("USAT"), a medical school located on the British Overseas Territory of Montserrat. ECFMG is a private, non-profit organization based in Philadelphia that certifies foreign medical school graduates so that those students can pursue post-graduate medical training in the United States. Without a certification from ECFMG, graduates of foreign medical schools, like USAT, cannot apply to

---

[1] The following facts come from the allegations in the Complaint and the exhibits attached thereto. *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010) ("In deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents."). To the degree that Plaintiff's exhibits "contradict [his] allegations in the complaint, the exhibits control." *Vorchheimer v. Philadelphian Owners Ass'n*, 903 F.3d 100, 112 (3d Cir 2018).

medical residency programs in the United States. Pinsky is the President of ECFMG.

Plaintiff's suit is, in effect, a response to disciplinary action taken by ECFMG against Plaintiff and USAT. In August of 2018,[2] ECFMG launched an investigation into whether USAT was operating unauthorized medical school campuses in the United States in violation of ECFMG's Policies and Procedures. ECFMG also inquired into whether Plaintiff had engaged in "irregular behavior" by providing false information to ECFMG about USAT's activities. As part of the investigation, ECFMG sent current and former USAT students affidavits forms, requesting information about their attendance at USAT. The affidavit form stated that students were required to provide such information and informed students that ECFMG reserved the right to bring allegations of irregular behavior, if students failed to do so.

On November 28, 2018, ECFMG held a hearing on Plaintiff's alleged misconduct in Philadelphia, Pennsylvania. ECFMG allotted twenty minutes for the hearing, but "[a]fter a few minutes," the hearing was cut short by ECFMG's counsel. Plaintiff was not permitted to present testimony or evidence concerning the alleged misconduct.

On December 14, 2018, ECFMG informed Plaintiff that it had completed its investigation. ECFMG concluded that USAT was operating unauthorized branch campuses within the United States, in violation of ECFMG's Policies and Procedures. In addition, ECFMG concluded that Plaintiff had provided false information to ECFMG regarding USAT's students' attendance at the Montserrat campus, also in violation of its Policies and Procedures. As a result, ECFMG informed Plaintiff that it was taking the following disciplinary action: (1) refusing, for a minimum of five years, to accept any documents signed and/or certified by Plaintiff for ECFMG on behalf of USAT; (2) adding to ECFMG's Sponsor Note for USAT in the

---

[2] The complaint alleges that ECFMG informed Plaintiff of the investigation on October 18, 2018. However, an exhibit attached to the complaint indicates that ECFMG informed Plaintiff of the investigation as early as August 21, 2018.

2

*World Directory of Medical Schools* a notice that USAT students and graduates would be subject to enhanced vetting procedures; and, (3) deciding that USAT students with a graduation year of 2019 and later would no longer be eligible to apply for ECFMG certification. Because students are no longer able to pursue ECFMG certification, the sanctions effectively closed USAT.

In his suit, Plaintiff alleges that Defendants' conduct constituted constitutional and common law torts. Although the Complaint is not entirely clear, read broadly it alleges: (1) common law tortious interference with contract against ECFMG; (2) a claim pursuant to 42 U.S.C. § 1983 against ECFMG for violating Plaintiff's procedural due process rights as protected by the Fourteenth Amendment; (3) violation of common law due process against ECFMG; (4) common law fraud against ECFMG; (5) common law abuse of process against ECFMG; (6) common law negligent misrepresentation against ECFMG; and, (7) a claim pursuant to 42 U.S.C. § 1983 against both Defendants for violating Plaintiff's procedural and substantive due process rights as protected by the Fourteenth Amendment.

**II.     Legal Standard**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Threadbare" recitations of the elements of a claim supported only by "conclusory statements" will not suffice. *Id.* at 683. Rather, a plaintiff must allege some facts to raise the allegation above the level of mere speculation. *Great W. Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 176 (3d Cir. 2010) (citing *Twombly*, 550 U.S. at 555). When analyzing a motion to dismiss, the

Court must "construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). Legal conclusions are disregarded, well-pleaded factual allegations are taken as true, and a determination is made as to whether those facts state a "plausible claim for relief." *Id.* at 211.

Where, as here, a federal court is interpreting Pennsylvania law, the federal court must follow the Pennsylvania Supreme Court. *In re Energy Future Holdings Corp.*, 842 F.3d 247, 253-54 (3d Cir. 2016). If the law is unclear and there is no controlling precedent issued by Pennsylvania's highest court, a federal court must "predict" how it would rule, giving "due regard, but not conclusive effect, to the decisional law of lower state courts." *Nationwide Mut. Ins. Co. v. Buffetta*, 230 F.3d 634, 637 (3d Cir. 2000).

### III. Discussion

#### A. Constitutional Claims

Plaintiff alleges that Defendants' investigation and disciplinary action violated both his substantive and procedural due process rights as protected by the Fourteenth Amendment to the United States Constitution.[3]

To maintain a Section 1983 claim, Plaintiff must allege a violation of a right secured by the Constitution or laws of the United States committed by a person acting under color of state law. *West v. Atkins,* 487 U.S. 42, 48 (1988). "The color of state law element is a threshold issue;

---

[3] In passing, Plaintiff avers that Defendants also violated the due process clause of the Pennsylvania Constitution. Pennsylvania law "generally treat[s] the Due Process Clause of the United States Constitution and Article I, Section 9 of the Pennsylvania Constitution as coextensive." *Com. v. Moto*, 23 A.3d 989, 1002 (Pa. 2011). Further, Pennsylvania law tracks federal law in holding that "the due process clause applies only to state action and not to private conduct." *Rosenberg v. Holy Redeemer Hosp.*, 506 A.2d 408, 410 (Pa. Super. 1986) (citing *Adler v. Montefiore Hosp. Ass'n of W. Pa.*, 311 A.2d 634, 639 (Pa. 1973)). Accordingly, to the degree that Plaintiff's claims are premised on Defendants' violation of due process rights protected by the Pennsylvania Constitution, those claims fail to state a claim upon which relief can be granted because, as discussed below, Defendants' conduct did not constitute state action.

there is no liability under Section 1983 for those not acting under color of law." *Groman v. Township of Manalapan*, 47 F.3d 628, 638 (3d Cir. 1995).[4] Plaintiff's constitutional claims fail because the Complaint does not contain sufficient factual allegations from which the Court can conclude that Defendants' conduct constituted state action

      Plaintiff's state action argument is two-fold. First, Plaintiff argues that ECFMG, despite its private character, is actually a governmental organization such that any action ECFMG takes constitutes state action. Second, Plaintiff argues that, even if ECFMG really is a private entity, ECFMG's investigation and disciplinary proceedings constituted state action that deprived Plaintiff of his constitutional rights.[5] Neither argument is availing.

      First, Plaintiff has failed to establish that, despite its private character, ECFMG is in actuality a state actor. "The nominally private character" of an entity may be "overborne by the pervasive entwinement of public institutions and public officials in its composition and workings" such that "there is no substantial reason to claim unfairness in applying constitutional standards to it." *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 298 (2001). Other courts to address the issue—including the Third Circuit, albeit in a non-precedential decision—have consistently held that ECFMG is not a state actor. *Opoku v. Educ. Comm'n for Foreign Med. Graduates*, 574 F. App'x 197, 201 (3d Cir. 2014) (per curiam) (finding that as a "private not-for-profit organization," ECFMG is a "private part[y] and not [a]

---

[4] "[I]f defendant's conduct satisfies the state-action requirement of the Fourteenth Amendment, that conduct is also action under color of state law and will support a suit under § 1983." *West*, 487 U.S. at 48 (internal quotation marks omitted). Accordingly, the "under color of state law" inquiry under Section 1983 and the "state action" requirement under the Fourteenth Amendment are "identical in most contexts" and "[f]or convenience [the Court] will use the terms interchangeably." *Groman*, 47 F.3d at 639 n.15.

[5] Whether ECFMG is a state actor or undertook state action dictates whether Pinsky, as President of ECFMG, is a state actor or undertook state action. *See Opoku v. Educ. Comm'n for Foreign Med. Graduates*, 574 F. App'x 197, 201 (3d Cir. 2014) (per curiam) (dismissing claim against employee of ECFMG on grounds that ECFMG was not a state actor); *see West*, 487 U.S. at 50 ("[S]tate employment is generally sufficient to render the defendant a state actor").

state actor[]"); *Thomas v. NBME-Nat'l Bd. of Med. Examiners*, 2015 WL 667077, at *4 (E.D. Pa. Feb. 13, 2015) ("Because . . . ECFMG is [not] a state actor, Plaintiff cannot prevail on this [constitutional claim]"); *Staudinger v. Educ. Comm'n for Foreign Med. Graduates*, 1993 WL 138954, at *2 (S.D.N.Y. Apr. 28, 1993) (concluding ECFMG is not a state actor).

While state medical boards rely on ECFMG's certification of foreign medical graduates in determining whether to permit such graduates to begin the medical certification process in the United States, it does not follow that these state entities are so entwined in the "composition and workings" of ECFMG to transform ECFMG into a state actor. *Brentwood Acad.*, 531 U.S. at 298. Plaintiff does not allege, for example, that ECFMG is managed by public institutions or officials; nor does he allege that ECFMG is publicly financed; nor does he allege that ECFMG's standards are set by public institutions or officials. *McKeesport Hosp. v. Accreditation Council for Graduate Med. Educ.*, 24 F.3d 519, 525 (3d Cir. 1994) (finding the Accreditation Council for Graduate Medical Education was not a state actor because the organization was "self-governed and financed, and its standards are independently set"). Thus, Plaintiff has failed to allege sufficient facts to warrant a conclusion that ECFMG, despite its private character, is a state actor.

Second, Plaintiff has failed to establish that the specific actions complained of—namely, ECFMG's investigation and disciplinary action—constituted state action. Where "the actors are not state or municipal officials, but are private individuals or associations . . . their activity can nevertheless be deemed to be under color of [state] law." *Groman*, 47 F.3d at 638. The Supreme Court has identified several "tests" for when private action constitutes state action. *P.R.B.A. Corp. v. HMS Host Toll Roads, Inc.*, 808 F.3d 221, 224 (3d Cir. 2015). Thus, private action may transform into state action when: "the private party has acted with the help of or in concert with state officials," "the private party has been delegated a power traditionally exclusively reserved

to the State," or "there is a sufficiently close nexus between the State and the challenged action of the private entity so that the action of the latter may fairly be treated as that of the State itself." *McKeesport*, 24 F.3d at 525 (internal citations and quotations omitted). The Complaint does not contain sufficient factual allegations to establish that ECFMG's conduct constituted state action under any of the applicable tests.

First, there are no allegations that Defendants acted with the help of or in concert with state actors during the investigation and disciplinary proceedings. "Private persons, jointly engaged with state officials in the challenged action," act under color of state law for purposes of Section 1983 claims. *Dennis v. Sparks*, 449 U.S. 24, 28 (1980). State officials must provide "overt, significant assistance," to transform private action into state action. *McKeesport*, 24 F.3d at 525; *Opoku*, 574 F. App'x at 201 (noting that Section 1983 "[l]iability would only attach if [ECFMG] conspired with a state actor"). The Complaint, however, contains no allegations that Defendants acted jointly with state officials; indeed, it does not allege that any state actor was involved in investigating the allegations of misconduct or participating in the November 28 hearing. Notably, no public officials were named as defendants in the action. *Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 157 (1978).

Second, ECFMG's investigation and sanctions are not functions "traditionally exclusively reserved to the State," *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 352 (1974). The public function test covers only a narrow band of private action because "[w]hile many functions have been traditionally performed by governments, very few have been 'exclusively reserved by the State.'" *Flagg Bros.*, 436 U.S. at 158; *see, e.g.*, *Terry v. Adams*, 345 U.S. 461, 470 (1953) (holding that running an election is a public function that has been traditionally the exclusive prerogative of the State). Because "[t]he evaluation and accreditation of medical education in

7

this country is neither a traditional nor an exclusive state function," investigating and sanctioning foreign medical schools are not public functions "traditionally exclusively reserved to the State." *McKeesport*, 24 F.3d at 525.

Finally, no nexus is alleged between ECFMG and a state actor such that ECFMG's action may fairly be treated as that of the State itself. "The connection between the state and a specific decision of a private entity"—such as ECFMG's decision to investigate and then discipline Plaintiff—"may render that decision chargeable to the state . . . only 'when the state has exercised coercive power or has provided such significant encouragement, either overt or covert, that the [private decision] must in law be deemed that of the State.'" *Id.* at 525 (quoting *Blum v. Yaretsky*, 457 U.S. 991, 1004 (1982)). "'[M]ere approval of or acquiescence' in the decision is not enough." *Id.* (quoting *Blum*, 457 U.S. at 1004). In *McKeesport*, for example, a hospital argued that a decision of the Accreditation Council for Graduate Medical Education ("ACGME") to withdraw the hospital's accreditation constituted state action because the Pennsylvania State Board of Medicine withdrew its accreditation based on ACGME's decision. *Id.* The Third Circuit held that ACGME's decision was not state action because no state actor "control[led] or regulate[d] the ACGME's standard-setting or decision-making process." *Id.* "That the [Board of Medicine] base[d] its approval of medical residency programs on ACGME accreditation d[id] not turn the ACGME's decisions into state action." *Id.* at 525-26.

The same reasoning applies with equal force to ECFMG's decision to investigate and sanction Plaintiff. There are no allegations that a state actor controlled or regulated ECFMG's standard-setting or decision-making process; indeed, Plaintiff's claim is that ECFMG sanctioned him for failing to comply with ECFMG's internal policies. Further, that state medical boards base their approval of foreign medical graduates on ECFMG's certification does not turn

8

ECFMG's decision into state action.  Thus, Defendant's motion to dismiss Plaintiff's Section 1983 claims will be granted.

### B. Common Law Claims

The Complaint contains sufficient factual allegations to support a claim that ECFMG violated a common law duty of due process owed to Plaintiff.[6] However, Plaintiff's claims for common law fraud, negligent misrepresentation, abuse of process, and tortious interference with contract will be dismissed.[7]

#### 1. Common Law Due Process Claim

Pennsylvania law recognizes that, in disciplinary proceedings, certain private organizations owe a limited common law duty of due process to those subject to disciplinary action. *Sch. Dist. of City of Harrisburg v. Pa. Interscholastic Athletic Ass'n*, 309 A.2d 353, 357 (Pa. 1973) ("[J]udicial interference in the affairs of private associations . . . is appropriate only under limited circumstances"). An example is *Psi Upsilon of Philadelphia v. University of Pennsylvania*, 591 A.2d 755 (Pa. Super. 1991), where a group of college students challenged the University of Pennsylvania's disciplinary action against them on the grounds that it violated due process. *Id.* at 758. The Pennsylvania Superior Court noted that, because the University was a private institution, "'students who [were] being disciplined [were] entitled only to those procedural safeguards which the school specifically provides.'" *Id.* (quoting *Boehm v. Univ. of Pa. School of Veterinary Med.*, 573 A.2d 575, 579 (Pa. Super. 1990)). Nevertheless, those "disciplinary procedures established by the institution must be fundamentally fair,"

---

[6] That ECFMG is not a state actor does not doom Plaintiff's common law due process claim because "unlike [a] constitutional due process cause of action, the common law due process cause of action has no state action requirement." *McKeesport*, 24 F.3d at 535 (Becker, J., concurring in judgment).

[7] Plaintiff suggests in passing that ECFMG violated the Federal Education Records Protection Act ("FERPA"), 20 U.S.C. § 1232g.  To the degree that Plaintiff seeks to recover for ECFMG's alleged breach of FERPA, that claim fails because FERPA does not provide a private cause of action. *Gonzaga Univ. v. Doe*, 536 U.S. 273, 287 (2002).

acknowledging that the University owed a general, common law duty of due process to the students subject to disciplinary action.  *Id.*

Beyond the private university context, "[m]any courts have [also] recognized a state or common law duty on the part of 'quasi-public' private professional organizations or accreditation associations to employ fair procedures when making decisions affecting their members." *McKeesport*, 24 F.3d at 534-35 (Becker, J., concurring in the judgment) (collecting cases).  The duty "operate[s] as 'check on organizations that exercise significant authority in areas of public concern such as accreditation and licensing.'" *Prof'l Massage Training Ctr., Inc. v. Accreditation All. of Career Sch. & Colleges*, 781 F.3d 161, 169 (4th Cir. 2015) (quoting *Thomas M. Cooley Law Sch. v. Am. Bar Ass'n*, 459 F.3d 705, 712 (6th Cir. 2006)).  Because such "quasi-public" organizations "like all other bureaucratic entities, can run off the rails," the common law duty of due process ensures that such entities are not "wholly free of judicial oversight." *Id*.  In line with those decisions, the Pennsylvania Supreme Court, in *School District of City of Harrisburg*, indicated that Pennsylvania law recognizes a common law duty owed by private organizations to prospective members, where the private organization serves a public function.  309 A.2d at 357 n.3 (citing approvingly a New Jersey Supreme Court case, *Falcone v. Middlesex Cnty. Med. Soc.*, 170 A.2d 791, 800 (N.J. 1961), which held that a private medical association owed a common law duty to a prospective member because the organization served a public function).

Reading the Complaint in the light most favorable to the Plaintiff it contains sufficient factual allegations to plausibly conclude that ECMFG serves a public function by certifying foreign medical school graduates so that those students can pursue post-graduate medical training in the United States and investigating the foreign medical schools that those students

attend. *Cf. Falcone*, 170 A.2d at 800. In furtherance of that public function, ECFMG disciplines individuals affiliated with foreign medical schools, like Plaintiff, that run afoul of ECFMG's Policies and Procedures. Thus, ECFMG—like professional membership organizations and accreditation associations—is a "quasi-public" private organization because it "exercises significant authority in areas of public concern." *Prof'l Massage Training Ctr*, 781 F.3d at 169. As such, it must "employ fair procedures when making decisions," *McKeesport*, 24 F.3d at 535 (Becker, J., concurring in the judgment), with regard to individuals—like Plaintiff—that are subject to ECFMG disciplinary action. Put differently, the Court predicts that the Pennsylvania Supreme Court would hold that ECFMG owes a common law duty of due process to Plaintiff.

The next question is what such a duty entails, and correspondingly whether ECFMG's conduct at the November 28, 2018 hearing breached that duty. Although Pennsylvania courts have not fully fleshed out the contours of the common law due process duty, in *Psi Upsilon*, the Pennsylvania Superior Court indicated that "basic principles of due process and fundamental fairness were adhered to where" the disciplined party was afforded "notice" and "an opportunity to be heard." *Psi Upsilon*, 591 A.2d at 759; *Boehm* 573 A.2d at 585 (finding due process satisfied where plaintiff "had notice and an opportunity to be heard"); *cf. School District of City of Harrisburg*, 309 A.2d at 358 (holding due process met where disciplined party "was afforded notice of the action taken against it and has availed itself of the opportunity to be heard"). Accordingly, the Court predicts that the Pennsylvania Supreme Court would hold that common law due process required ECMFG to afford Plaintiff notice of the disciplinary action and an opportunity to be heard.

The Complaint contains sufficient factual allegations to make out a viable claim that ECFMG did not provide Plaintiff an opportunity to be heard before taking disciplinary action

11

against him.  The Complaint alleges that ECFMG allotted twenty minutes to the disciplinary hearing, but that "[a]fter a few minutes," ECFMG's counsel unilaterally terminated the hearing before Plaintiff could present testimony or evidence.  When construed in the light most favorable to the Plaintiff, the Complaint plausibly alleges that ECMFG deviated from "basic principles of due process and fundamental fairness" by ending the hearing before allowing Plaintiff an opportunity to present his side of the story.  *Cf. Psi Upsilon*, 591 A.2d at 759 (finding disciplined parties afforded an opportunity to be heard where they "were afforded the opportunity to present evidence . . . cross-examine all witnesses[, and] gave closing arguments").  Accordingly, the Complaint adequately states a claim that ECFMG's conduct at the November 29, 2018 hearing breached a common law duty of due process owed to Plaintiff because ECFMG did not "employ fair procedures" before subjecting Plaintiff to disciplinary action.

### 2. Fraud

To maintain a common law fraud claim, Plaintiff must establish: (1) ECFMG made a representation; (2) which was material to the transaction at hand; (3) falsely, with knowledge of its falsity or recklessness as to whether it was true or false; (4) with the intent of misleading Plaintiff into relying on it; (5) Plaintiff justifiably relied on the misrepresentation; and, (6) the resulting injury was proximately caused by the reliance.  *Gibbs v. Ernst,* 647 A.2d 882, 889 (Pa. 1994).  Plaintiff alleges that ECFMG engaged in fraudulent conduct by (1) holding itself out as a government agency in the affidavit form it sent to USAT students, and (2) placing misleading information about USAT in ECFMG's Sponsor Note in the *World Directory of Medical Schools*.  Neither allegation plausibly supports a claim for fraud.

First, with respect to the affidavit form, Plaintiff does not specify where ECFMG holds itself out as a governmental agency, and the Court, on its own review, finds no such

representation.⁸ As for the Sponsor Note's statement that USAT students and graduates would be subject to enhanced vetting procedures, Plaintiff again fails to identify any falsity in that statement. While Plaintiff contests ECFMG's decision to subject USAT students to enhanced vetting procedures, there is no allegation that ECFMG's statement in the *World Directory of Medical Schools* is in any way untrue. Thus, Plaintiff fails to identify any false representation made by ECFMG that would support a fraud claim.

Plaintiff's fraud claim also fails on the reliance prong because the Complaint contains no allegations that Plaintiff relied on a representation from ECFMG to his detriment. Instead, Plaintiff alleges that non-parties relied on ECFMG's purportedly false statements, but Plaintiff can not maintain a claim for fraud based on others' reliance. *Klemow v. Time Inc.*, 352 A.2d 12, 16 n.17 (Pa. 1976) ("The successful maintenance of a cause of action for fraud includes, inter alia, a showing that *the plaintiff* acted in reliance on the defendant's misrepresentations.") (emphasis added); *Liss & Marion, P.C. v. Recordex Acquisition Corp.*, 983 A.2d 652, 665 (Pa. 2009) (same). Thus, Plaintiff's fraud claim will also be dismissed because Plaintiff fails to allege that he relied on ECFMG's purportedly false statements to his detriment.

### 3. Negligent Misrepresentation

Plaintiff's negligent misrepresentation claim suffers from the same faults as his fraud claim. To bring a claim for negligent representation, Plaintiff must establish: (1) ECFMG made a misrepresentation of a material fact; (2) that ECFMG knew or should have known that the misrepresentation was false; (3) ECFMG intended the representation to induce Plaintiff to act on it; and (4) Plaintiff was injured by acting in justifiable reliance on the misrepresentation. *Gibbs*, 647 A.2d at 890. As the Pennsylvania Supreme Court has explained, "negligent misrepresentation differs from intentional misrepresentation"—that is, fraud—"in that to commit

---
⁸ A copy of both the affidavit form and the Sponsor Note were attached to Plaintiff's compliant.

13

the former, the speaker need not know his or her words are untrue, but must have failed to make reasonable investigation of the truth of those words." *Id.*

Plaintiff's negligent misrepresentation claim, like his fraud claim, fails because the Complaint fails to identify any false representations made by ECFMG and does not allege that Plaintiff, as opposed to some other party, relied on those purportedly false representations.

### 4. Abuse of Process

To maintain his abuse of process claim, Plaintiff must allege facts that plausibly establish ECFMG: (1) used a legal process against him; (2) primarily to accomplish a purpose for which the process was not designed; and, (3) harm was caused to Plaintiff. *Shiner v. Moriarty*, 706 A.2d 1228, 1236 (Pa. Super. 1998). As the Pennsylvania Supreme Court has explained "[t]he gist of an action for abuse of process is the improper use of process after it has been issued, that is, a perversion of it." *McGee v. Feege*, 535 A.2d 1020, 1023 (Pa. 1987). Thus, "there is no liability where the defendant has done nothing more than carry out the process to its authorized conclusion, even though with bad intentions." *Hart v. O'Malley*, 647 A.2d 542, 171 (Pa. Super. 1994) (internal quotation marks omitted).

Plaintiff contends that ECFMG engaged in abusive process by sending affidavit forms to USAT students in order to gather information about Plaintiff's alleged irregular behavior, and that the forms intimidated students into not attending USAT. Those allegations, however, are not sufficient to support an abuse of process claim. For one, "[n]either correspondence nor an affidavit is legal process." *Rockman v. Aciukewicz*, 2014 WL 10937492, at*6 (Pa. Super. Apr. 1, 2014). Second, even if sending affidavit forms constituted use of legal process, Plaintiff fails to allege ECFMG abused that legal process because, according to Plaintiff, ECFMG used the forms to gather information about USAT students, which is the purpose for which the process was

14

designed. *See Affidavit*, Black's Law Dictionary (10th ed. 2014) ("A voluntary declaration of facts written down and sworn to by a declarant . . . before an officer authorized to administer oaths"). Even crediting Plaintiff's allegation that the affidavit forms were designed to intimidate USAT students, Plaintiff has failed to state a claim because liability cannot be premised on ECFMG's bad intentions. *Hart*, 647 A.2d at 171.

Defendants' motion to dismiss Plaintiff's abuse of process claim will be granted because Plaintiff has failed to allege facts sufficient to establish a plausible claim for relief.

### 5. Tortious Interference with Contract

Finally, Plaintiff seeks to recover on a claim of tortious interference with contract. To prevail on the claim, Plaintiff must establish: (1) the existence of a contractual or prospective contractual or economic relationship between Plaintiff and a third party; (2) purposeful action by ECFMG specifically intended to harm an existing relationship or intended to prevent a prospective relation from occurring; (3) the absence of privilege or justification on the part of ECFMG; and, (4) legal damage to Plaintiff as a result of ECFMG's conduct. *Acumed LLC v. Advanced Surgical Servs., Inc.*, 561 F.3d 199, 212 (3d Cir. 2009). Plaintiff alleges ECFMG's investigation and sanctions harmed his contractual relations with current and prospective USAT students.[9]

Plaintiff's tortious interreference claim fails because he has not adequately alleged that ECFMG lacked a justification for interfering with Plaintiff's existing and prospective contractual relations. Under Pennsylvania law, the absence of a privilege or justification "is not an affirmative defense, rather . . . an element of the cause of action which must be pleaded and proven by the plaintiff." *Bahleda v. Hankison Corp.*, 323 A.2d 121, 122-23 (Pa. Super. 1974).

---

[9] Plaintiff alleges that USAT students contracted with him directly, rather than with the school, an allegation that, at this point, the Court must take as true.

15

Because "in most cases, the defendant acts at least in part for the purpose of protecting some legitimate interest which conflicts with that of the plaintiff," in determining whether a privilege or justification exists "a line must be drawn and the interests evaluated." *Glenn v. Point Park College*, 272 A.2d 895, 899 (Pa. 1971). Although "not susceptible of precise definition," *id.*, Pennsylvania courts make the justification determination in accordance with the factors listed in Section 767 of the Restatement of Torts:

> (a) the nature of the actor's conduct; (b) the actor's motive; (c) the interests of the others with which the actor's conduct interferes; (d) the interests sought to be advanced by the actor; (e) the social interests in protecting the freedom of action of the actor and the contractual interests of the other; (f) the proximity or remoteness of the actor's conduct to the interference; and (g) the relations between the parties.

*Phillips v. Selig*, 959 A.2d 420, 429-30 (Pa. Super. 2008) (quoting Restatement (Second) of Torts § 767). The gravamen of the inquiry is whether "the defendant's actions were improper under the circumstances presented." *Id.*

Here, ECFMG's interest in investigating Plaintiff's purported failure to comply with the organization's Policies and Procedures outweighs Plaintiff's alleged contractual interest with current and prospective USAT students. "[A]ction is not improper when the interference in contractual relations fosters a social interest of greater public import than is the social interest invaded." *Brownsville Golden Age Nursing Home, Inc. v. Wells*, 839 F.2d 155, 159 (3d Cir. 1988) (internal quotation marks omitted). In *Brownsville*, the Third Circuit held that a nursing home operator could not bring a claim for tortious interference with contractual relations against defendants that caused the operator to lose its license, on the grounds that "there can be no impropriety in pursuing administrative actions which cause the loss of license or certification of a facility which has been adjudged to have been in serious violation of its statutory and regulatory obligations." *Id.*

16

The Third Circuit's reasoning in *Brownsville* dictates the same outcome here. ECFMG's interest in ensuring the proper certification of foreign medical graduates "fosters a social interest of greater public import than" Plaintiff's interest in freedom of contract. And while Plaintiff may challenge the grounds of ECFMG's decision to impose sanctions against him, "administrative actions which cause[d] [USAT's] loss of license or certification" cannot be the grounds for liability. *Id.* Indeed, Plaintiff cites no authority that holds a party may recover on a tortious interference with contract claim for failing to abide by the regulations of a professional organization or accrediting agency. *See Brownsville*, 839 F.2d at 159 ("[Defendant] cites absolutely no authority in Pennsylvania or elsewhere that holds that action designed to bring a facility's noncompliance with applicable regulations to the attention of the appropriate authorities and to stimulate public interest in the matter can be the basis for a damage action.").

Thus, ECFMG's interest in regulating foreign medical graduates justifies its interference in Plaintiff's contractual relations with USAT students. Crediting Plaintiff's factual allegations, ECFMG's conduct was not "improper under the circumstances presented." *Phillips*, 959 A.2d at 429. Accordingly, Plaintiff's tortious interference claim fails because it does not adequately plead an absence of privilege or justification on the part of ECFMG.

An appropriate order follows.

**May 26, 2019**                              **BY THE COURT:**

                                              **/s/ Wendy Beetlestone**
                                              _____
                                              **WENDY BEETLESTONE, J.**