**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| DR. ORIEN L. TULP, )<br><br>                    Plaintiff, )<br><br>v. )<br><br>EDUCATIONAL COMMISSION FOR )<br>FOREIGN MEDICAL GRADUATES and )<br>DR. WILLIAM W. PINSKY, )<br><br>                    Defendants. ) | Case No. 2:18-cv-05540-WB<br><br>Hon. Wendy Beetlestone |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT EDUCATIONAL
COMMISSION FOR FOREIGN MEDICAL GRADUATES'
<u>MOTION FOR SUMMARY JUDGMENT</u>**

Dated: May 3, 2019

Elisa P. McEnroe, PA Bar No. 206143
Matthew D. Klayman, PA Bar No. 319105
MORGAN, LEWIS & BOCKIUS, LLP
1701 Market Street
Philadelphia, PA  19103-2921
Telephone:     +1.215.963.5917
Facsimile:     +1.215.963.5001
elisa.mcenroe@morganlewis.com
matthew.klayman@morganlewis.com

*Attorneys for the Educational Commission for
Foreign Medical Graduates*

## TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ................................................................................................. 1

II.     BACKGROUND .................................................................................................. 2

        A.      The Educational Commission for Foreign Medical Graduates ............................. 2

        B.      ECFMG's Policies and Procedures Regarding Irregular Behavior ...................... 3

        C.      Dr. Tulp Provided False Information to ECFMG During Its Investigation
                of USAT's Unauthorized Operations in the United States. ................................... 5

        D.      ECFMG Gave Dr. Tulp Notice of Allegations of His Irregular Behavior ............. 7

        E.      Dr. Tulp Received an Opportunity to Be Heard Regarding Allegations of
                His Irregular Behavior. ....................................................................................... 7

        F.      ECFMG Determined Dr. Tulp Engaged in Irregular Behavior. ........................... 9

        G.      The USAT Sponsor Note in the World Directory of Medical Schools ................ 9

        H.      Procedural History .............................................................................................. 10

III.    LEGAL STANDARD ......................................................................................... 11

IV.     ARGUMENT ....................................................................................................... 12

        A.      Dr. Tulp Was Afforded Due Process, Including Notice and an Opportunity
                to Be Heard. ....................................................................................................... 12

                1.      This Court Already Ruled Dr. Tulp Was Afforded Notice and an
                        Opportunity to Be Heard ........................................................................ 13

                2.      Dr. Tulp Received Notice of the Irregular Behavior Allegations. ........... 14

                3.      Dr. Tulp Had Multiple Opportunities to be Heard. ................................ 15

                4.      ECFMG's Updates to the USAT Sponsor Note Cannot Establish A
                        Due Process Violation ........................................................................... 17

        B.      The Action Taken as to Dr. Tulp Is Not One Of The Limited
                Circumstances Where Judicial Interference Is Appropriate. ............................... 19

        C.      Dr. Tulp Is Not Entitled To Legal Or Equitable Relief. ...................................... 20

V.      CONCLUSION .................................................................................................... 23

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Adickes v. S.H. Kress & Co.*,
   398 U.S. 144 (1970)..................................................................................................11

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986)..................................................................................................11

*Biliski v. Red Clay Consol. Sch.Dist. Bd. of Educ.*,
   574 F.3d 214 (3d Cir. 2009)..........................................................................14, 16, 17

*Boehm v. Univ. of Pa. Sch. of Veterinary Med.*,
   573 A.2d 575 (Pa. Super. Ct. 1990).........................................................................13

*Brewer v. Quaker State Oil Ref. Corp.*,
   72 F.3d 326 (3d Cir. 1995).................................................................................. 11-12

*Cleveland Bd. of Educ. v. Loudermill*,
   470 U.S. 532 (1985)..................................................................................................13

*Celotex Corp. v. Caltrett*,
   477 U.S. 317 (1986)..................................................................................................11

*David v. Neumann Univ.*,
   177 F. Supp. 3d 920 (E.D. Pa. 2016) .......................................................................14

*EBay Inc. v. MercExchange, L.L.C.*,
   547 U.S. 388 (2006)........................................................................................... 20-21

*ECRI v. McGraw–Hill, Inc.*,
   809 F.2d 223 (3d Cir. 1987)......................................................................................21

*Fed. Deposit Ins. Corp. v. Mallen*,
   486 U.S. 230 (1988)..................................................................................................17

*Ferring Pharmaceuticals, Inc. v. Watson Pharmaceuticals, Inc.*,
   765 F.3d 205 (3d Cir. 2014)......................................................................................21

*Fireman's Ins. Co. of Newark v. Du Fresne*,
   676 F.2d 965 (3d Cir. 1982)......................................................................................12

*Fla. Coastal Sch. of Law, Inc. v. Am. Bar Ass'n*,
   No. 3:18-cv-00621-BJD-JBT, ECF No. 39 (M.D. Fla. July 9, 2018)......................22

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Guttenberg v. Emergy*,
    26 F. Supp. 3d 88 (D.D.C. 2014) .............................................................22

*Instant Air Freight Co. v. C.F. Air Freight, Inc.*,
    882 F.2d 797 (3d Cir. 1989) .....................................................................21

*J.F. Feeser, Inc. v. Serv-A-Portion, Inc.*,
    909 F.2d 1524 (3d Cir. 1990) ...................................................................11

*Kimberg v. Univ. of Scranton*,
    411 F. App'x 473 (3d Cir. 2010) ..............................................................14

*Marlboro Corp. v. Ass'n of Indep.Colleges and Schools*,
    556 F.2d 78 (1st Cir. 1977) ......................................................................16

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*,
    475 U.S. 574 (1986) ..................................................................................12

*Matthews v. Eldridge*,
    424 U.S. 319 (1976) ..................................................................................16

*McKeesport Hosp. v. Accreditation Council for Graduate Med. Educ.*,
    24 F.3d 519 (3d Cir. 1994) ...........................................................13, 15, 20

*Osei v. Temple Univ.*,
    518 F. App'x 86 (3d Cir. 2013) ................................................................15

*Pallante v. Those Certain Underwriters at Lloyd's, London*,
    311 F. Supp. 3d 692(E.D. Pa. 2018) ........................................................21

*Psi Upsilon of Phila. v. Univ. of Pa.*,
    591 A.2d 755 (Pa. Super. Ct. 1991) ................................................. *passim*

*Sch. Dist. of City of Harrisburg v. Pa. Interscholastic Athletic Ass'n*,
    309 A.2d 353 (Pa. 1973) .....................................................................19, 20

*Thomas M. Cooley Law Sch. v. Am. Bar Ass'n*,
    No. 17-13708, 2017 WL 6342629 (E.D. Mich. Dec. 12, 2017) .........22, 23

*Whitmore v. Liberty Mut. Fire Ins. Co.*,
    No. 07-5162, 2008 WL 4425227 (E.D. Pa. Sept. 30, 2008) .....................12

*Winter v. Nat. Res. Def. Counsel, Inc.*,
    555 U.S. 7 (2008) ......................................................................................22

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

**Rules**

Fed. R. Civ. P. 56(a) ...................................................................................................11

Fed. R. Civ. P. 56(c)(1)(A) ..........................................................................................11

## I.   __INTRODUCTION__

Defendant Educational Commission for Foreign Medical Graduates ("ECFMG") moves for summary judgment as to Plaintiff Dr. Orien L. Tulp's common law due process claim, the sole claim remaining in this action, because the undisputed material facts confirm that Dr. Tulp was afforded due process and he is not entitled to any relief.[1]

In his Complaint, Dr. Tulp alleges that ECFMG violated his due process rights by deciding not to accept documents signed by Dr. Tulp after finding that he made false representations to ECFMG in violation of ECFMG's policies and procedures.  But it is undisputed that ECFMG took action as to Dr. Tulp after giving Dr. Tulp (a) repeated notice of the allegations and evidence against him, and (b) multiple opportunities to present a substantive response—in writing and in person—to the allegations and evidence against him.  Indeed, following a lengthy hearing earlier in this case on Dr. Tulp's Motion for a Preliminary and/or Permanent Injunction (which was denied) and considering the facts here, this Court already concluded that "*[i]n this case, there was notice and an opportunity to be heard.*"   SOF ¶ 79.  Discovery confirms that the Court's conclusion cannot genuinely be disputed.  Moreover, discovery established that Dr. Tulp is entitled to neither legal nor equitable relief given the complete absence of proof of damages resulting from the alleged due process violation and Dr. Tulp's failure to satisfy the requirements for a permanent injunction.

Accordingly, there remain no genuine issues of material fact, and ECFMG is entitled to judgment as a matter of law on Dr. Tulp's sole remaining claim.  This Court should grant summary

---

[1]   On March 26, 2019, the Court dismissed all claims against Dr. William W. Pinsky.  *See* ECF No. 29.  As a result, the Motion for Summary Judgment is brought by and on behalf of ECFMG only, the sole remaining defendant.

judgment in favor of ECFMG on Dr. Tulp's common law due process claim, dismissing the remainder of Dr. Tulp's case in its entirety.

## II.    BACKGROUND

### A.    The Educational Commission for Foreign Medical Graduates

ECFMG is a private non-profit organization that promotes quality health care for the public by certifying physicians who receive their basic medical degree from an international medical school (known as international medical graduates or "IMGs") for entry into U.S. graduate medical education.  SOF ¶¶ 1-2.  ECFMG's responsibilities include (among other things): (i) certifying the readiness of IMGs for entry into graduate medical education and health care systems in the United States through an evaluation of their qualifications, (ii) providing complete, timely, and accessible information to IMGs regarding entry into graduate medical education in the United States, and (iii) verifying credentials and providing other services to health care professionals worldwide.  SOF ¶ 3.

To verify an applicant's credentials as part of ECFMG's certification process, ECFMG collects documentation, including records relating to an applicant's attendance at a recognized international medical school.  SOF ¶ 4.  An "international medical school" is "an education facility located in a country *outside of the United States and Canada* with its primary campuses and main operations *located in that country*."  SOF ¶ 5 (emphasis added).  If an international medical school has a branch campus outside the country where its primary campus is located, ECFMG "may require confirmation from the appropriate government authority" in the branch campus country that "the branch campus is authorized to operate as a medical school in the branch campus country" and that the international medical school "awards degrees that meet the medical education eligibility requirements for licensure to practice medicine in the branch campus country."  SOF ¶ 6.

2

Once an applicant's record is verified and complete and the applicant passes certain required substantive exams, ECFMG issues the applicant a certificate. SOF ¶ 7. This certificate signals that an IMG seeking admission to a U.S. graduate medical program has met certain minimum standards of eligibility, including graduation from a *bona fide* international medical school. SOF ¶ 8.

**B.      ECFMG's Policies and Procedures Regarding Irregular Behavior**

ECFMG's publicly available Policies and Procedures Regarding Irregular Behavior define irregular behavior as "all actions or attempted actions on the part of applicants . . . or any other person that would or could subvert the examination, certification or other processes, programs, or services of ECFMG." SOF ¶ 9. Examples of irregular behavior include, but are not limited to, failing to comply with an ECFMG policy, procedure and/or rule, or providing false information to ECFMG. SOF ¶ 10.

ECFMG's Policies and Procedures Regarding Irregular Behavior set forth the following steps for addressing suspected irregular behavior:

- Once ECFMG becomes aware of potential irregular behavior, ECFMG staff investigates the situation. SOF ¶ 13(a). Depending on the specific circumstances of the potential irregular behavior, that investigation can involve the gathering of additional information. SOF ¶ 13(a).

- "If ECFMG staff finds that there exists a reasonable basis to conclude that an individual may have engaged in irregular behavior, the matter will be referred to the Medical Education Credentials Committee[,]" a sub-committee of the ECFMG Board of Trustees. SOF ¶ 13(b).

- Individuals alleged to have engaged in irregular behavior are "advised in writing of the nature of the alleged irregular behavior and provided with a copy of the *Policies and*

*Procedures Regarding Irregular Behavior*."  SOF ¶ 13(c).  In practice, they are also provided with a copy of materials supporting the allegation of irregular behavior that are to be provided to the Medical Education Credentials Committee.  SOF ¶ 45.

- Individuals alleged to have engaged in irregular behavior are also given "an opportunity to provide written explanation and to present other relevant information" to ECFMG.  SOF ¶ 13(d).  They "may also request the opportunity to appear personally before the Medical Education Credentials Committee" to testify under oath (with representation by counsel, if desired) about the allegations of irregular behavior.  SOF ¶ 13(e).

- After the Medical Education Credentials Committee reviews the evidence—including any written explanation, testimony, or other relevant information provided by the individual alleged to have engaged in irregular behavior—the Medical Education Credentials Committee votes on whether the allegations of irregular behavior are founded.  SOF ¶ 13(h).

- If the Medical Education Credentials Committee determines that the allegations of irregular behavior are founded, "the Medical Education Credentials Committee will determine what action(s) will be taken as a result of the irregular behavior," and ECFMG notifies the individual as to the Medical Education Credentials Committee's decisions.  SOF ¶ 13(h)-(i).

- Individuals found to have engaged in irregular behavior may appeal the Medical Education Credentials Committee's finding to ECFMG's Review Committee for Appeals, another sub-committee of the ECFMG Board of Trustees made up of members independent of the Medical Education Credentials Committee.  SOF ¶ 13(j).

4

They also may petition the Medical Education Credentials Committee to reconsider its finding.  SOF ¶ 14.

### C.      Dr. Tulp Provided False Information to ECFMG During Its Investigation of USAT's Unauthorized Operations in the United States.

Plaintiff Dr. Tulp is the President of the University of Science, Arts, and Technology Montserrat ("USAT"), a medical school with its primary campus and main operations supposedly in Montserrat.  SOF ¶ 15.  Even though Dr. Tulp is affiliated with USAT, he testified in this case that he has never earned money from USAT.  SOF ¶¶ 18-19.  Rather, he has been retired for decades and his income is derived entirely from pensions.  SOF ¶ 20.

In mid-2018, ECFMG received information indicating that USAT was operating a campus and providing medical education in Miami, Florida.  SOF ¶ 21.  ECFMG had never received evidence demonstrating that USAT had authorization from the United States or Florida to operate a branch campus in Miami.  SOF ¶ 23.

Accordingly, on August 21, 2018, ECFMG sent a letter to Dr. Tulp requesting that Dr. Tulp "provide documentation from the United States Department of Education and/or the Florida Department of Education confirming that USAT's Miami branch campus is authorized to operate as a medical school in the United States."  SOF ¶ 22.  ECFMG requested information covering "the whole time period that the USAT Miami branch campus has been in operation."  SOF ¶ 23.

Later that day, Dr. Tulp responded to ECFMG via email:

This is incorrect information.  The Miami location is an information and testing site only, where a pre-usmle examination [an NBME] may be administered, and an Orientation for new students is conducted prior to their traveling to the Caribbean.. [sic] It is NOT a campus.  Our ONLY Campus is located in Olveston, Montserrat, British West Indies.

Actually, recall that Montserrat is a volcanic Island, and the license issued to USAT in September, 2003 DOES actually permit the establishment of off-campus lecture and administrative sites as needed.  USAT has students on island on a year round basis in its origination.

SOF ¶ 24.

In the weeks that followed, ECFMG received additional information suggesting that Dr. Tulp's statement to ECFMG regarding USAT purportedly not providing education in the United States was false and that USAT was actually operating multiple satellite campuses in cities across the United States.  SOF ¶ 25.  In light of the additional information confirming that Dr. Tulp's representations to ECFMG were false, ECFMG sent another letter to Dr. Tulp on September 14, 2018, advising him that ECFMG was continuing its review of the matter to "ensure that information regarding international medical schools and their students provided to ECFMG complies with ECFMG policies and requirements."  SOF ¶ 26.  As part of that ongoing review, ECFMG informed Dr. Tulp that it had "reached out to students and graduates of USAT in order to collect information from them regarding their attendance at USAT" and that "USAT students and graduates seeking services related to ECFMG Certification . . . must complete and submit an affidavit attesting to the accuracy of the medical school information provided to ECFMG."  SOF ¶ 26.  The affidavit asked USAT students and graduates to certify (1) their dates of attendance at USAT, and (2) the location where they took their basic science courses.  SOF ¶ 27.

More than 300 students submitted affidavits to ECFMG indicating that they took classes in the United States, and not a single student indicated that he or she took all of his or her basic science courses in Montserrat.  SOF ¶ 28.  There were also a "number of affidavits" from USAT students where "Dr. Tulp ha[d] provided information that conflicted with the affidavit information that ECFMG got from the students."  SOF ¶ 29.  As a result, ECFMG circulated a second affidavit to USAT students and graduates, in which ECFMG sought information about whether USAT students and graduates were given "advance standing" or exempted from taking required courses at USAT based on credits earned outside of USAT.  SOF ¶ 30.

**D.      ECFMG Gave Dr. Tulp Notice of Allegations of His Irregular Behavior.**

On October 18, 2018, ECFMG sent a letter to Dr. Tulp advising him of an allegation that he engaged in irregular behavior by providing false information to ECFMG.  SOF ¶¶ 31-36.  The letter summarized the allegations in the opening paragraph as follows:

> Specifically, you provided false information to ECFMG when you (1) notified ECFMG that USAT does not operate a branch campus in Miami, Florida and (2) certified to the attendance dates of several USAT students and graduates when ECFMG has information that these students were not attending USAT during some of the time periods to which you certified.  The details of ECFMG's allegation are set forth below.

SOF ¶ 32.  The letter went on to describe at length the allegations against Dr. Tulp.  SOF ¶¶ 33-35.

The letter informed Dr. Tulp that ECFMG's Medical Education Credentials Committee would be meeting on November 28, 2018 to address the allegations of irregular behavior against him.  SOF ¶ 35.  The letter also listed and included many of the documents that would be presented to the Medical Education Credentials Committee in connection with their review of the allegations concerning Dr. Tulp.  SOF ¶ 35.  All of the documents that would be presented to the Medical Education Credentials Committee were provided later to Dr. Tulp's attorneys before the November 28 meeting.  SOF ¶¶ 45-46.

**E.      Dr. Tulp Received an Opportunity to Be Heard Regarding Allegations of His Irregular Behavior.**

In its October 18, 2018 letter, ECFMG invited Dr. Tulp to submit to ECFMG a written response to the allegations of irregular behavior and any relevant information that he wanted ECFMG to consider in connection with the allegations of irregular behavior.  SOF ¶ 35.  It also invited Dr. Tulp to appear personally and with counsel before the Medical Education Credentials Committee on November 28, 2018, which Dr. Tulp elected to do.  SOF ¶ 35.

Before the meeting of the Medical Education Credentials Committee, Dr. Tulp's counsel communicated with ECFMG about the allegations of irregular behavior and the Medical Education Credentials Committee.  SOF ¶¶ 37-46.  ECFMG also provided Dr. Tulp's counsel with copies of materials that the Medical Education Credentials Committee would review in connection with the allegations of irregular behavior concerning Dr. Tulp.  SOF ¶¶ 45-46.

On November 28, 2018, Dr. Tulp appeared before the Medical Education Credentials Committee along with his two attorneys.  SOF ¶ 47.  ECFMG typically allows only one attorney to attend these meetings on behalf of an individual suspected of irregular behavior, but in this instance, it granted Dr. Tulp's request to bring both of his attorneys.  SOF ¶ 39.  One of his attorneys made an opening statement, in which he objected to the Medical Education Credentials Committee's authority and procedures; he did not present a substantive response to the allegations of irregular behavior.  SOF ¶¶ 51-54.  He concluded by stating, "That is our opening statement.  If you have any questions, you can address them to me.  **Dr. Tulp will not be answering any questions.**"  SOF ¶ 54 (emphasis added).  Counsel for ECFMG repeatedly invited Dr. Tulp's counsel (and Dr. Tulp himself) to present a substantive response to the allegations of irregular behavior or the materials provided to Dr. Tulp and his counsel before the meeting.  SOF ¶ 55.  After much back and forth, Dr. Tulp's counsel stated on the record, "**Dr. Tulp is not going to be talking today.  The next time you hear him talk is going to be in federal court.**"  SOF ¶ 56 (emphasis added).  After several more unsuccessful attempts by counsel for ECFMG to elicit a substantive response from Dr. Tulp and his counsel regarding the allegations of irregular behavior, counsel for ECFMG adjourned the meeting.  SOF ¶¶ 57-62.  A full read of the transcript gives a complete picture of Dr. Tulp's opportunity (and refusal) to be heard.  *See* JA0139-JA0171.

8

F.      ECFMG Determined Dr. Tulp Engaged in Irregular Behavior.

By letter dated December 14, 2018, ECFMG notified Dr. Tulp that the Medical Education Credentials Committee had completed its review and determined that Dr. Tulp had engaged in irregular behavior.  SOF ¶ 63.  As a result, ECFMG decided it would "not accept any documents signed/certified by [Dr. Tulp] for ECFMG on behalf of USAT, or any other medical school, for a minimum of five years from today; thereafter, the prohibition shall end only upon a petition to ECFMG conclusively demonstrating to the satisfaction of the ECFMG Committee a familiarity with, and willingness to adhere to, ECFMG policies."  SOF ¶ 63.  The action taken by ECFMG does not prevent Dr. Tulp from operating a medical school in Montserrat or otherwise serving as a professor or administrator at a medical school because any medical school affiliated with Dr. Tulp could authorize a different official to sign documents for ECFMG.  SOF ¶¶ 64-65.  Indeed, USAT may continue to submit documents to ECFMG because it has other "authorized signatories."  SOF ¶ 65.  Thus, the limited practical effect of the irregular behavior finding is that ECFMG will not accept representations or certifications *by Dr. Tulp* as valid in connection with the ECFMG's certification process (at least for a period of five years).

G.      The USAT Sponsor Note in the World Directory of Medical Schools

The World Directory of Medical Schools is a listing of the world's medical schools.  SOF ¶ 69.  ECFMG uses a "Sponsor Note" in the World Directory to inform the public generally and students or graduates of the school specifically whether students and graduates from particular schools in particular years are eligible to apply for ECFMG certification.  SOF ¶ 69.

On or around September 24, 2018, ECFMG updated its Sponsor Note for USAT to reflect the use of affidavits in the certification process as follows:

> Currently students and graduates of USAT are subject to enhanced procedures that must be met in order to be eligible for ECFMG Certification related services, including but not limited to:  ECFMG Certification, USMLE examinations that lead to ECFMG certification,

9

and Electronic Residency Application Service (ERAS) Support Services.  ECFMG will provide information and instructions to applicants upon receipt of application.

SOF ¶ 70.  USAT was given notice of the "enhanced procedures" described in the Sponsor Note via letter from Ms. Corrado.  SOF ¶ 71.

Then, as ECFMG's investigation continued into USAT's authorization (or lack thereof) to operate as it had, on or around October 18, 2018, ECFMG updated its Sponsor Note for USAT again, this time to reflect ECFMG's decision that beginning on January 1, 2019, future USAT students and graduates would not be eligible for ECFMG certification unless and until USAT provided satisfactory documentation from U.S.-based authorities allowing USAT to operate branch campuses in the United States.  SOF ¶ 72.  Accordingly, ECFMG updated its Sponsor Note to include the following language:

> Note: As of January 1, 2019, students and graduates of this medical school with a graduation year of 2019 and later are not eligible to apply to ECFMG for ECFMG Certification, which also renders them ineligible to apply to ECFMG for the United States Medical Licensing Examinations (USMLE) as a step towards ECFMG Certification.

SOF ¶ 72.  USAT was given notice of the change to ECFMG's Sponsor Note via letter from Ms. Corrado.  SOF ¶ 73.  In that same letter, Ms. Corrado again invited USAT to provide the requested documentation.  *See* JA0113-JA0114.  USAT did not then and has never since provided the requested documentation.  SOF ¶ 23.

ECFMG's Sponsor Note for USAT currently has both the language added in September 2018 and the language added in October 2018.  SOF ¶ 74.  ECFMG did not update its Sponsor Note for USAT to reflect the finding of irregular behavior against Dr. Tulp.  SOF ¶ 75.

### H.    Procedural History

On December 24, 2018, Dr. Tulp sued ECFMG and its President, Dr. William W. Pinsky, alleging that they committed various constitutional and common law torts in the course of investigating and then taking action against Dr. Tulp.  *See* ECF No. 1.  Dr. Tulp moved for

injunctive relief on January 2, 2019, and following a full hearing on the motion on January 24, 2019, this Court denied Dr. Tulp's motion.  *See* SOF ¶ 78.  In explaining that Dr. Tulp had not proven a likelihood of success on his constitutional due process claim, the Court specifically noted that "*[i]n this case, there was notice and an opportunity to be heard.*"  SOF ¶ 78.

On March 26, 2018, the Court granted in part Defendants' Motion to Dismiss and dismissed all of Dr. Tulp's claims against ECFMG and Dr. Pinsky, except for a single common law due process claim against ECFMG.  *See* ECF No. 29.  In its opinion allowing the common law due process claim to proceed, the Court focused on Dr. Tulp's allegations regarding his appearance before the Medical Education Credentials Committee, specifically his allegation in the Complaint that ECFMG ended the hearing "before allowing [Dr. Tulp] an opportunity to present his side of the story."  *See* ECF No. 28 at 12.  Presently, ECFMG moves for summary judgment on this sole remaining claim.

## III.   <u>LEGAL STANDARD</u>

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The moving party has the initial burden of demonstrating the absence of a genuine issue of material fact.  *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).  Then, the nonmoving party has the burden of showing there is a genuine issue for trial by "citing to particular parts of materials in the record." Fed. R. Civ. P. 56(c)(1)(A); *see J.F. Feeser, Inc. v. Serv-A-Portion, Inc.*, 909 F.2d 1524, 1531 (3d Cir. 1990) (holding that once the movant discharges its burden, the non-movant "must establish the existence of each element on which it bears the burden of proof") (citing *Celotex Corp. v. Caltrett*, 477 U.S. 317, 323 (1986)).  A genuine issue exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Brewer v. Quaker State Oil Ref. Corp.*, 72 F.3d 326, 330 (3d Cir.

1995) (recognizing that a genuine issue exists solely if the nonmoving party "provides sufficient evidence to allow a reasonable jury to find for him at trial").

The party opposing summary judgment must "do more than simply show that there is some metaphysical doubt as to the material facts." *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  He must present more than just "bare assertions, conclusory allegations or suspicions" to show the existence of a genuine dispute.  *Fireman's Ins. Co. of Newark v. Du Fresne*, 676 F.2d 965, 969 (3d Cir. 1982).  Rather, "[t]he party opposing summary judgment must support each essential element of that party's opposition with concrete evidence in the record.  If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted.  This requirement upholds the underlying purpose of summary judgment which is to avoid a pointless trial in cases where it is unnecessary and would only cause delay and expense."  *Whitmore v. Liberty Mut. Fire Ins. Co.*, No. 07-5162, 2008 WL 4425227, at *1 (E.D. Pa. Sept. 30, 2008) (citations and internal punctuation omitted).

## IV.   <u>ARGUMENT</u>

### A.    **Dr. Tulp Was Afforded Due Process, Including Notice and an Opportunity to Be Heard.**

Assuming for purposes of this Motion that ECFMG owes common law due process obligations to Dr. Tulp,[2] Dr. Tulp cannot succeed on his common-law due process claim because there is no genuine dispute that he was afforded due process.  In Pennsylvania, the common law

---

[2]      Indeed, it is not clear that Dr. Tulp in fact pleaded a due process claim under the common law as opposed to under the United States Constitution.  At the injunction hearing on January 24, 2019, this Court asked Dr. Tulp's counsel to confirm "exactly what causes of action are being asserted."  SOF ¶ 76.  When the Court twice described Dr. Tulp's due process claim as "a § 1983 claim alleging that ECFMG violated [Dr.] Tulp's procedural and substantive due process rights as protected by the 14th Amendment," Dr. Tulp's counsel twice responded, "Yes, Your Honor."  SOF ¶ 77.  Because Dr. Tulp failed to plead a common law due process claim in the Complaint, summary judgment in favor of ECFMG is also warranted on that basis.

duty of due process emerges from the private school and university context, in which "students who are being disciplined are entitled only to those procedural safeguards which the school specifically provides," provided that such procedures are "fundamentally fair." *Psi Upsilon of Phila. v. Univ. of Pa.*, 591 A.2d 755, 758 (Pa. Super. Ct. 1991) (quoting *Boehm v. Univ. of Pa. Sch. of Veterinary Med.*, 573 A.2d 575, 577 (Pa. Super. Ct. 1990)). Whether procedures are "fundamentally fair" is determined by whether a student being disciplined was given notice of the charges and an opportunity to be heard. *Id.* at 759–60.

"[T]he requirements of common law due process are quite similar to those for constitutional due process, and most courts treat them interchangeably." *McKeesport Hosp. v. Accreditation Council for Graduate Med. Educ.*, 24 F.3d 519, 535 (3d Cir. 1994) (concurring, J. Becker). Constitutional due process similarly focuses on whether there was notice and opportunity for hearing appropriate to the nature of the case. *See Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985).

### 1.   *This Court Already Ruled Dr. Tulp Was Afforded Notice and an Opportunity to Be Heard.*

In denying Dr. Tulp's request for injunctive relief in this case, this Court concluded that ECFMG's disciplinary hearing met the requirements of constitutional due process and that there was notice and opportunity to be heard. *See* SOF ¶ 78; JA0306 (Injunction Hr'g Tr. 131:5-11 (citing *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985))). Indeed, the Court specifically stated in its ruling that "*[i]n this case, there was notice and an opportunity to be heard.*" SOF ¶ 78 (emphasis added). This is confirmed by the facts discussed below, *see infra*, and Dr. Tulp can point to no evidence or disputes of material fact to disturb the Court's prior

conclusion.   Thus, Dr. Tulp's irregular behavior proceeding also satisfies the notice and opportunity to be heard requirements of the common law duty of due process.[3]

### 2.   Dr. Tulp Received Notice of the Irregular Behavior Allegations.

Dr. Tulp received notice of the allegations that he engaged in irregular behavior. Consistent with ECFMG's Policies and Procedures Regarding Irregular Behavior, on October 18, 2018, ECFMG sent a letter to Dr. Tulp summarizing and describing in detail the allegations of irregular behavior against him.  SOF ¶¶ 31-36.  Prior to the November 28, 2018 meeting of the Medical Education Credentials Committee, Dr. Tulp's counsel received copies of materials to be considered by the Medical Education Credentials Committee in reaching a decision regarding irregular behavior.  SOF ¶¶ 45-46.  Moreover, Dr. Tulp and his counsel received numerous letters explaining ECFMG's process for investigating and evaluating allegations of irregular behavior. SOF ¶¶ 37-46.  Indeed, ECFMG's Policies and Procedures Regarding Irregular Behavior are both publicly available on the internet and were sent to Dr. Tulp in connection with the allegations of irregular behavior.[4]  SOF ¶¶ 9, 35.

Courts routinely find that similar activities constitute sufficient notice of accusations and the procedures through which the accusations of misconduct may be resolved.  *See, e.g.*, *Biliski v. Red Clay Consol. Sch. Dist. Bd. of Educ.*, 574 F.3d 214, 221–22 (3d Cir. 2009) (holding that a discharged employee was given sufficient notice of the reasons for his dismissal when he was

---

[3]     ECFMG met these requirements despite the fact that "[p]rivate institutions need not endow their students with the constitutional due process protections that state [entities] are obliged to provide."  *David v. Neumann Univ.*, 177 F. Supp. 3d 920, 926 (E.D. Pa. 2016) (quoting *Kimberg v. Univ. of Scranton*, 411 F. App'x 473, 481 (3d Cir. 2010)).

[4]     ECFMG's actions complied with its Policies and Procedures Regarding Irregular Behavior. Because private entities bear "no obligation to afford [plaintiffs] protections in addition to those expressly embodied in" their written policies and procedures, *Kimberg v. Univ. of* Scranton, 411 F. App'x 473, 481 (3d Cir. 2010), ECFMG afforded Dr. Tulp due process.

14

provided with multiple disciplinary memos which described the alleged misconduct and what body would decide whether dismissal was appropriate); *McKeesport Hosp.*, 24 F.3d at 532 (defendant accrediting council's use of detailed letters to communicate areas in which plaintiff hospital needed to improve, coupled with allowance of opportunity for hospital to submit additional information to address these concerns, constituted adequate notice of deficiencies before withdrawal of accreditation) (Becker, J., concurring); *Psi Upsilon of Phila.*, 591 A.2d at 758–59 (holding that University's procedure of sending a statement explaining charges and violations to disciplined fraternity members before a disciplinary hearing was sufficient notice of pending charges); *Osei v. Temple Univ.*, 518 F. App'x 86, 89 (3d Cir. 2013) (holding that even a one-day notice of witness testifying against plaintiff at hearing was sufficient notice under the school disciplinary context and constituted due process).

It cannot be disputed that Dr. Tulp received a letter from ECFMG detailing the allegations of irregular behavior.  SOF ¶¶ 31-36.  It also cannot be disputed that Dr. Tulp received that letter more than a month before the meeting of the Medical Education Credentials Committee and nearly two months before a decision regarding the allegations of irregular behavior.  SOF ¶ 47.  This, along with the entire record of ECFMG's communications with Dr. Tulp and his counsel, confirms that Dr. Tulp received adequate notice of the allegations against him.

### 3.    *Dr. Tulp Had Multiple Opportunities to be Heard.*

Consistent with ECFMG's Policies and Procedures Regarding Irregular Behavior, Dr. Tulp had ample opportunity to be heard in connection with the allegations of his irregular behavior.

*First*, Dr. Tulp had an opportunity to present a written response to the allegations of irregular behavior and provide any relevant information that he wanted the Medical Education Credentials Committee to consider.  SOF ¶¶ 13(d), 35.  Because "[t]here is no inexorable requirement that oral testimony must be heard in every administrative proceeding in which it is

tendered," *Biliski*, 574 F.3d at 223 (quoting *Fed. Deposit Ins. Corp. v. Mallen*, 486 U.S. 230, 247–48 (1988)), Dr. Tulp's opportunity to provide a written submission and relevant information in response to the allegations of irregular behavior constitute an adequate opportunity to be heard. *See Matthews v. Eldridge*, 424 U.S. 319, 334, 344–46 (1976) (explaining that some form of hearing with safeguards such as the opportunity to submit documentation, access to the file under review, and ability to be represented are safeguards which speak to whether adequate procedures were in place).

**Second**, Dr. Tulp also had an opportunity to appear personally before the Credentials Committee with two attorneys of his choosing. SOF ¶ 13(e)-(f), 35, 47. *See, e.g.*, *Psi Upsilon*, 591 A.2d at 759 (presence of legal counsel at hearing speaks to adequacy of process given). Dr. Tulp's counsel made a full opening statement and had the opportunity to present whatever argument or substantive response he wished. SOF ¶¶ 51-62. Indeed, counsel for ECFMG repeatedly invited Dr. Tulp to give testimony and Dr. Tulp's counsel to address specific parts of the materials presented for the Committee's consideration. SOF ¶ 55-61. It was only after Dr. Tulp's counsel refused to allow Dr. Tulp to testify and refused to address specific documents that the meeting was adjourned.

That Dr. Tulp did not take full advantage of his personal appearance before the Medical Education Credentials Committee to provide evidence or argument in his favor, does not change the fact that he had an opportunity to be heard on the allegations of irregular behavior. If a plaintiff is "given ample opportunity to present its position by written submission and to argue it orally," and fails to "make the best use of those opportunities . . . the blame cannot be placed on the Commission." *Marlboro Corp. v. Ass'n of Indep.Colleges and Schools*, 556 F.2d 78, 82 (1st Cir. 1977). Here, Dr. Tulp failed to make the best use of his opportunities to present his case to the

16

Medical Education Credentials Committee in that he failed to provide any substantive response to the allegations of irregular behavior, let alone "make best use of those opportunities" to be heard. That failure does not mean he was denied due process.

Nor does the due process analysis change simply because no witnesses were called to testify. For starters, "[t]here is no inexorable requirement that oral testimony must be heard in every administrative proceeding in which it is tendered," *Biliski*, 574 F.3d at 223 (quoting *Fed. Deposit Ins. Corp. v. Mallen*, 486 U.S. 230, 247 – 48 (1988)). Moreover, counsel for ECFMG repeatedly invited Dr. Tulp to speak or offer evidence, but he refused to do so. *See* SOF ¶¶ 54-56. In *Psi Upsilon of Philadelphia*, members of a disciplined fraternity argued that they were denied a fair opportunity to be heard at a disciplinary hearing because they invoked their privilege against self-incrimination given pending criminal charges, and thus did not testify or present evidence. 591 A.2d at 760. The court there found this contention to be without merit. *Id.* Similarly, Dr. Tulp's failure to testify at his own hearing or present any evidence, even though he was given multiple opportunities to do so, does not mean that he was denied a fair opportunity to be heard.

Because Dr. Tulp had an opportunity to be heard by the Medical Education Credentials Committee, both in writing and in person, he was afforded an opportunity to be heard consistent with his common law due process rights.

### 4. *ECFMG's Updates to the USAT Sponsor Note Cannot Establish A Due Process Violation.*

It is expected that Dr. Tulp may argue that the timing of ECFMG's updates to its Sponsor Note for USAT in the World Directory of Medical Schools somehow demonstrates that Dr. Tulp was denied due process. Not so. At all times, ECFMG updated its Sponsor Note to accurately reflect steps taken by ECFMG to validate that USAT students and graduates attended a *bona fide*

17

international medical school and were thus eligible for ECFMG certification.  At no point was the Sponsor Note updated in violation of Dr. Tulp's common law due process rights.

In September 2018, ECFMG updated the USAT Sponsor Note so that USAT students and graduates would know to expect that additional procedures would be necessary to secure ECFMG certification.  In October 2018, after USAT failed to provide the documentation ECFMG repeatedly requested to prove that its operations in the United States complied with ECFMG policy, ECFMG updated the USAT Sponsor Note so that USAT students and graduates would know that starting on January 1, 2019, future USAT students and graduates would not be eligible for ECFMG certification unless and until USAT proved it was in compliance with ECFMG policy. Neither of these updates to the USAT Sponsor Note violated Dr. Tulp's common law right to any form of due process.

Indeed, to the extent ECFMG notified Dr. Tulp of its intent to update the USAT Sponsor Note to reflect that Dr. Tulp had been found to have engaged in irregular behavior, that intent was made clear only *after* the finding of irregular behavior had been made, and the language was not been incorporated into the USAT Sponsor Note.  SOF ¶¶ 63, 75.  Thus, updates to the USAT Sponsor Note do not create any genuine dispute of material fact as to whether Dr. Tulp was denied due process and any argument to the contrary would be unavailing.

*     *     *

As this Court previously concluded, Dr. Tulp was afforded notice of the allegations and evidence of irregular behavior, as well as an opportunity to be heard.  This satisfies his common law right to due process in proceedings before the ECFMG and warrants summary judgment in favor of ECFMG on the sole remaining claim in this case.

**B.    The Action Taken as to Dr. Tulp Is Not One Of The Limited Circumstances Where Judicial Intervention Is Appropriate.**

Pennsylvania recognizes that "judicial interference in the affairs of private associations . . . is appropriate only under limited circumstances, as where the private association has deprived a member or prospective member of substantial economic or professional advantages or fundamental constitutional rights." *Sch. Dist. of City of Harrisburg v. Pa. Interscholastic Athletic Ass'n*, 309 A.2d 353, 357 (Pa. 1973); *see also Psi Upsilon of Phila. v. Univ. of Pa.*, 591 A.2d 755, 760 (Pa. Super. Ct. 1991) ("[C]ourts should not interfere with internal procedure and discipline unless real prejudice, bias or denial of due process is present."). This is a case in which judicial interference in the affairs of ECFMG, a private association, would not be appropriate.

There is no dispute that ECFMG took action as to Dr. Tulp by deciding it would "not accept any documents signed/certified by [Dr. Tulp] for ECFMG on behalf of USAT, or any other medical school, for a minimum of five years . . .  thereafter, the prohibition shall end only upon a petition to ECFMG conclusively demonstrating to the satisfaction of the ECFMG Committee a familiarity with, and willingness to adhere to, ECFMG policies." SOF ¶ 63. This does not deprive Dr. Tulp of a substantial economic or professional advantage or a fundamental constitutional right. It does not prevent Dr. Tulp from operating a medical school in Montserrat or otherwise serving as a professor of medicine. Indeed, it is undisputed that USAT has other authorized signatories, and there is no evidence to suggest that Dr. Tulp needs to serve as an authorized signatory in order for him or USAT to succeed. SOF ¶¶ 64-65. Moreover, Dr. Tulp has never derived income from USAT, SOF ¶¶ 18-20, so any interference with Dr. Tulp's ability to fulfil his duties as President of USAT could not possibly result in substantial economic harm to Dr. Tulp. Accordingly, ECFMG's action does not deprive Dr. Tulp of "substantial economic or professional advantages" or a "fundamental constitutional right[]," and judicial intervention is thus not appropriate here.

*See Sch. Dist. of City of Harrisburg*, 309 A.2d at 357; *see also McKeesport Hosp. v. Accreditation Council for Graduate Med. Educ.*, 24 F. 3d 519, 534 (3d Cir. 1994) (Becker, J., concurring) ("Courts must pay special deference to a professional accreditation organization's substantive decisions in light of the special expertise required to determine professional competency.").

    **C.**    **Dr. Tulp Is Not Entitled To Legal Or Equitable Relief.**

Even if Dr. Tulp could establish a common law due process violation (and, as explained above, he cannot), ECFMG is also entitled to summary judgment because the undisputed material facts confirm that Dr. Tulp is not entitled to legal or equitable relief.

Dr. Tulp is not entitled to recover damages because there is no evidence in the record to support a damages award.  ECFMG requested that Dr. Tulp produce any and all documents he would use to support a damages award; no such documents were produced.  SOF ¶ 79.  To the contrary, Dr. Tulp testified that he never earned any money from USAT and that his income is derived entirely from pensions and has been for many years.  SOF ¶¶ 18-20.  Dr. Tulp has no evidence to substantiate a damages award, so summary judgment in favor of ECFMG is warranted on any claim for damages resulting from Dr. Tulp's common law due process claim.

Nor is Dr. Tulp entitled to equitable relief in the form of an injunction that would require ECFMG to grant an exception to its policies and procedures, which are in place to protect the health of the U.S. public.  In addition to demonstrating ***actual*** success on the merits (which Dr. Tulp cannot do), Dr. Tulp would only be entitled to permanent injunctive relief if he demonstrates that "(1) [he] has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction."  *EBay Inc. v. MercExchange,*

*L.L.C.*, 547 U.S. 388, 391 (2006).[5]  Here, ECFMG is entitled to summary judgment on Dr. Tulp's

claim for injunctive relief because the undisputed facts show that Dr. Tulp cannot satisfy any of

these requirements.

      ***First***, to make a showing of irreparable harm, the requisite feared injury or harm must not

be merely serious or substantial, but rather "must be of a peculiar nature so that compensation in

money cannot atone for it."  *ECRI v. McGraw-Hill, Inc.*, 809 F.2d 223, 226 (3d Cir. 1987).  In

denying Dr. Tulp's Motion for Preliminary and/or Permanent Injunction, this Court concluded that

Dr. Tulp had "not shown immediate irreparable injury resulting from ECFMG's action . . . ."

JA0309 (Injunction Hr'g Tr. 134:2-4).  The evidence gathered in discovery confirms that

conclusion.  Dr. Tulp can present no evidence whatsoever of irreparable injury, which alone is

grounds for denying injunctive relief.  *See Pallante v. Those Certain Underwriters at Lloyd's,*

*London*, 311 F. Supp. 3d 692, 695 n.3 (E.D. Pa. 2018) (denying injunction where movant "filed

no relevant affidavit or verified pleading showing immediate and irreparable injury, loss, or

damage"); *Instant Air Freight Co. v. C.F. Air Freight, Inc.*, 882 F.2d 797, 801 (3d Cir. 1989).

      The types of harm allegedly suffered by Dr. Tulp are not irreparable as a matter of law.  To

the extent Dr. Tulp suggests that he would be irreparably harmed absent injunctive relief by virtue

of his "removal . . . as a medical educator under the cloud of an indefinite sentence of 'irregular

behavior' for a duration of not less than 5 years," Compl. ¶ 29, this argument fails as a matter of

fact and law.  Contrary to his naked allegations, the evidence shows that ECFMG's limited action

did not cause the "removal of Dr. Tulp as a medical educator" for any period of time.  SOF ¶¶ 63-

---

[5]    "The standard for a preliminary injunction is essentially the same as for a permanent injunction with the expception that the plaintiff must show a likelihood of success on the merits rather than actual success."  *Ferring Pharmaceuticals, Inc. v. Watson Pharmaceuticals, Inc.*, 765 F.3d 205, 215 n.9 (3d Cir. 2014).

64.   Notwithstanding ECFMG's actions, Dr. Tulp remains free to teach medicine, and ECFMG has no say over whether Dr. Tulp continues to teach medicine at USAT in Montserrat or elsewhere. Indeed, Dr. Tulp testified that he is involved in opening a new medical school in the British Virgin Islands.   SOF ¶ 66.   Moreover, as a matter of law, any injury to Dr. Tulp's reputation is not irreparable and would not be avoided through injunctive relief.   ECFMG's finding of irregular behavior has already been made public, at the very least through Dr. Tulp having filed this lawsuit without filing under seal, and Dr. Tulp "is free to try to mitigate any reputational injury" as he sees fit, but it does not rise to the level of irreparable harm.   *Thomas M. Cooley Law Sch. v. Am. Bar Ass'n*, No. 17-13708, 2017 WL 6342629, at *4 (E.D. Mich. Dec. 12, 2017); *Fla. Coastal Sch. of Law, Inc. v. Am. Bar Ass'n*, No. 3:18-cv-00621-BJD-JBT, ECF No. 39, at 14 (M.D. Fla. July 9, 2018) (removal of information that "is already published and available to the public and has been for nearly two months . . . will not undo whatever harm [movant] claims has already occurred"); *Guttenberg v. Emergy*, 26 F. Supp. 3d 88, 103 (D.D.C. 2014) ("As for injury to reputation, that chicken has already flown the coop. . . . Any adverse effects on [movant's] professional life . . . can be redressed through monetary compensation—if he is entitled to any—and hence that harm is by definition not irreparable.").

**Second**, Dr. Tulp cannot point to evidence showing that an injunction would be in the public interest.   *See, e.g.*, *Winter v. Nat. Res. Def. Counsel*, 555 U.S. 7, 24 (2008) ("In exercising their sound discretion, courts of equity should pay particular regard for the public consequences in employing the extraordinary remedy of injunction.").   It would be contrary to the public interest for this Court to mandate that ECFMG continue to credit Dr. Tulp's signature when it has concluded, following a thorough investigation and hearing process, that Dr. Tulp made misrepresentations to ECFMG.   ECFMG has determined that Dr. Tulp made false statements to

ECFMG about USAT, and Dr. Tulp has failed to present any evidence to alleviate ECFMG's concerns. *See* SOF ¶ 62. ECFMG endeavors to protect the health of the public through application of its policies and procedures, *see* SOF ¶¶ 1-3, and an end-run around them would be adverse to the public interest.

*Third*, the balance of harms weighs against injunctive relief. As to Dr. Tulp, ECFMG only restricted his authority to sign documents to be relied upon by ECFMG in connection with ECFMG's certification process. SOF ¶¶ 63-64. This does not interfere with his ability to earn a living, teach medicine, or work at a medical school. By contrast, ECFMG would suffer *substantial* harm if it were forced to accept Dr. Tulp's signature on documents notwithstanding his record of falsehoods. Numerous courts have held that orders interfering with a certification process like that of ECFMG poses a serious risk of harm to the certifying body and weighs against injunctive relief. *See, e.g.*, *Thomas M. Cooley Law Sch.*, 2017 WL 6342629, at *4 (refusing to grant injunction interfering with the ABA's decision to sanction a law school because doing so would harm the ABA by preventing it from executing its duties).

## V.   <u>CONCLUSION</u>

There remains no genuine issue of material fact, and ECFMG is entitled to judgment as a matter of law on Dr. Tulp's sole remaining claim. Accordingly, ECFMG respectfully requests that the Court grant ECFMG's Motion for Summary Judgment and enter an Order in the form attached.

Dated: May 3, 2019

Respectfully submitted,

*/s/ Elisa P. McEnroe*
Elisa P. McEnroe, PA Bar No. 206143
Matthew D. Klayman, PA Bar No. 319105
MORGAN, LEWIS & BOCKIUS, LLP
1701 Market Street
Philadelphia, PA  19103-2921
Telephone:      +1.215.963.5917
Facsimile:      +1.215.963.5001
elisa.mcenroe@morganlewis.com
matthew.klayman@morganlewis.com

*Attorneys for the Educational Commission for Foreign Medical Graduates*