| | | |
|---|---|---|
| DR. ORIEN L. TULP | : | UNITED STATES DISTRICT |
| | : | COURT FOR THE EASTERN |
| vs. | : | DISTRICT OF PENNSYLVANIA |
| | : | |
| EDUCATION COMMISSION FOR | : | CASE NO: 2:18-cv-05540-WB |
| FOREIGN MEDICAL GRADUATES | : | |
| and DR. WILLIAM C. PINSKY | : | HONORABLE WENDY BEETLESTONE |

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Plaintiff, Dr. Orien L. Tulp, through his undersigned counsel, submits this memorandum of law in opposition to defendants' motion for summary judgment, and in support thereof, it is averred as follows:

**INTRODUCTION: NOMENCLATURE DIFFICULTIES**

There was no meeting or conference to develop a single joint appendix of exhibits as the Court directed in paragraph 2A of its Scheduling Order. (Document 21, filed 01/25/19 by Judge Beetlestone, PA0615). There is a serious disconnect between the parties with respect to defendants' alleged Joint Appendix and alleged Statement of Undisputed Facts. Neither of plaintiff's counsel ever agreed to any Statement of Undisputed Facts which is referenced as "SOF" in defendants' motion. It is undersigned counsel's recollection that he saw this Statement of Undisputed Facts for the first time on 05/03/19, the date on which the motion for summary judgment was filed. Plaintiff never agreed to defendants' Statement of Undisputed Facts or Joint Appendix.

There is no written indication, or otherwise, confirming that plaintiff agreed to these so-called undisputed facts of defendants, which would be tantamount to agreeing to defendants' motion for summary judgment. The same thing is true for the Joint Appendix. Plaintiff's counsel was sent a proposed Joint Appendix of over 500 pages only two days

1

before the 05/03/19 deadline. He indicated to defense counsel that he needed time to read

through these. For example, plaintiff would not agree to a joint appendix that omitted

both the complaint and the answer to the complaint, as in the instant case.

Plaintiff is attempting to keep the nomenclature for exhibits, etc., as specified by

the Court. Plaintiff's exhibits will start with Bates stamp PA0552 (Plaintiff's Appendix).

A true and correct copy of an email on defendants' "Undisputed Facts" between

plaintiff's co-counsel, Tommy Swate, Esquire, and defense co-counsel, Matthew D.

Klayman, Esquire, is attached and incorporated as a plaintiff's exhibit, as well as the

Reil-McEnroe letter. (PA0612-PA0614). The bottom line is that is is difficult to respond

to a so-called Joint Appendix, which is not joint, and alleged issues of undisputed facts,

which were never agreed to.

**CASE OVERVIEW**

An overview of the case can be found in paragraph 10 of the complaint, titled

"Summary". It reads as follows:

> 10. In an attempt to close down the USAT and sanction Dr. Tulp, defendant
> ECFMG has refused to allow students of USAT to take necessary medical
> examinations. Defendant ECFMG has effectively closed USAT, by refusing to
> release scores for students who paid for the examinations. Doctors who graduated
> from USAT have been unable to commence their residency due to the refusal of
> the Board to issue an appropriate certification. ECFMG has also sent misleading
> "affidavits" to many USAT students and threatened many students with "irregular
> behavior" in order to sanction Dr. Tulp and force closure of the University, which
> he founded. He is President, CEO, and an equal owner of the University. Thus,
> ECFMG tortiously interfered with the educational contract between the students
> of USAT, the University, and Dr. Tulp, denied due process to Dr. Tulp and the
> students of USAT, and improperly used an "affidavit" [See Exhibit D] to coerce
> information from students. [Pinsky letter, See Exhibit A.] In addition, the Board
> placed information in the World Directory of Medical Schools, prior to any
> hearing or legal process, advising that it would no longer recognize the test scores
> of USAT graduates after January 1, 2019. See Exhibit B.

Paragraphs 11 through 20 of the complaint give a factual background of the general allegations. They read as follows:

11. ECFMG sent to USAT a letter implying that the school would be closed on or about 01/01/19 because the Board would no longer recognize the scores of its students in taking the three-part United States Medical Licensing Examination. This action prohibits applicants from sitting for the USMLE, which is required for unrestricted medical licensure.

12. On 11/21/18, Kara Corrado, J.D., Vice President for Operations of the Board, sent a letter to counsel for USAT indicating two concerns: 1) that USAT's authority to conduct its medical education program amounted to "irregular behavior" because USAT had not been certified by a governmental entity in the United States, and 2) the allegation that USAT was operating medical school campuses in the United States. See Exhibit E. On October 18, 2018, Lisa Cover, a Senior Vice President with ECFMG, wrote a letter to Dr. Tulp advising him of the allegation that he engaged in "irregular behavior". See Exhibit F.

13. USAT has a certification from the government of Montserrat, allowing it to operate temporary venues due to an active volcano on the island. Such certification had been recognized by the Board without incident since 2003. USAT also operates online courses for the majority of its basic sciences course requirements via a specially developed SPOC [small platform online courses, developed by USAT]. A true and correct copy of the certification from Montserrat is attached and incorporated as Exhibit C.

14. Students from USAT have each paid well over $1,000 to the Board to take necessary medical exams, and the Board has refused to release their scores because of alleged misconduct by Dr. Tulp, and an assignment by the Board of "irregular behavior" arising out of an illegal affidavit issued to students of USAT. "Irregular behavior" may be a permanent admonition on a student or physician's official record, and make residency difficult, if not impossible.

15. The Board set up a hearing on 11/28/18 for Dr. Tulp, only, in Philadelphia, at the address in the caption to address so-called "irregular behavior". After a few minutes, with no witnesses called, Board counsel announced that the hearing was terminated. Prior to the hearing, the Board took the position that Dr. Tulp had the burden of proof on the issue of "irregular behavior" for which he had been charged by the Board. The Board set 20 minutes as the duration of the hearing. No testimony was taken or exhibits received in evidence, before Board counsel terminated the hearing. No Transcript of the proceedings has been received. The Board indicated that on 01/01/19 it will issue a finding of "irregular behavior" to Dr. Tulp effectively closing USAT.

16. There was no jurisdiction over, or relationship with, Dr. Tulp to compel him to attend the hearing by the Board, and he made a special appearance while not agreeing to jurisdiction. ECFMG has no jurisdiction over Dr. Tulp, or legal relationship with Dr. Tulp, or the power to enter any sanction against him. The Board has no contractual or statutory authority over Dr. Tulp.

17. The Board would not give Dr. Tulp sufficient discovery to conduct an adequate defense. Also, the Board has never requested any curricula, student records, or any documentation from USAT.

18. The term "irregular behavior" is void for vagueness, since "irregular behavior" is so broad that it essentially amounts to any behavior which the Board does not approve. There is no intelligible standard to ascertain "irregular behavior" with the exception of the fiat by the ECFMG. There is no due process mechanism to effectively challenge a finding of "irregular behavior" which can amount to an indefinite suspension of United States medical licenses by the Board without formal notification of such assignment to the individual concerned.

19. There is no reasonable way to ascertain the standards for "irregular behavior" in the instant case, prior to any adjudication.

20. The Board has effectively closed USAT by not allowing its students and graduates to complete the necessary medical examinations beyond January 1, 2019, and has tortiously interfered with the relationship of the students of USAT and Dr. Tulp, the President of the University.

Instructive is paragraph 58 which reads:

     The actions of the ECFMG on Dr. Tulp and the students of USAT amount to a violation of procedural and substantive due process, as follows:
     (a) banning Dr. Tulp without a proper hearing;
     (b) banning Dr. Tulp without an evidentiary basis;
     (c) forcing closure of USAT and causing its students to be dismissed in an arbitrary and capricious manner;
     (d) requiring, at a hearing on 11/28/18, that USAT assume the burden of proof and allotting 20 minutes for the hearing;
     (e) terminating the hearing on 11/28/18 without receiving any evidence from Dr. Tulp;
     (f) finding Dr. Tulp guilty of "irregular behavior" without jurisdiction and due process, and effectively forcing closure of USAT College of Medicine without legal process, and constructively dismissing the students of USAT in violation of the law.

Plaintiff references the phrase "due process" several times in the complaint (PA0559) and such due process is not restricted to constitutional due process under Section 1983. The Court, in its Opinion on the defendants' motion to dismiss, found that the only issue for summary judgment was whether there were material issues of fact concerning common law due process. Defendants mention, several times in their brief, that the Court has already found that there was due process and opportunity to be heard.

This is misleading. Where defendants get this notion is from the Court's directions after the injunction hearing in January. While there may have been, at the time, sufficient notice and opportunity to be heard as part of the reason for denying the injunction, this is not dispositive for the motion for summary judgment. Not only is there a heightened standard of proof for a preliminary injunction, but the elements for a preliminary injunction are different than those for a motion for summary judgment. The Court indicates that "common law due process is the only issue remaining" in the Opinion on the motion to dismiss. If the Court had already found that there was notice and opportunity to be heard, which is tantamount to common law due process, there would not be a motion for summary judgment.

It should also be mentioned that plaintiff pled jurisdiction both under federal question and under diversity of citizenship. The parties in this case reside in different states. (Complaint at paragraph 8, PA0560).

An administrative hearing was held by the ECFMG on 11/28/18 in Philadelphia. Only Dr. Tulp was present as a witness. (PA0670-PA0702). Procedurally, a complaint was filed on 12/24/18. Plaintiff then filed a motion for a preliminary and/or permanent injunction, which was answered by a memorandum of law by defendants. A hearing was

held before the Court on 01/24/19 at which plaintiff Tulp, defendant Pinsky, and Kara Corrado, an administrator and attorney for defendant, testified. The Court denied plaintiff's motion for injunction, and then conducted a scheduling conference in Court.

Defendants filed a motion to dismiss, which was timely answered by plaintiffs, and the Court ruled on the motion to dismiss on 03/26/19. In summary, the Court found that the only claim which survived was plaintiff's cause of action for common law due process against ECFMG, only. Dr. Pinsky was dismissed as a plaintiff. ECFMG then answered plaintiff's complaint.

Discovery was conducted by the parties, including a videotaped deposition of Dr. Tulp and a deposition of Dr. Pinsky. Plaintiff served two sets of discovery, including interrogatories, requests for production of documents and admissions. Defendants served written discovery in the form of interrogatories and requests for production of documents. Very little, if any, new light was shed on the hearing of Dr. Tulp before the ECFMG, which is preserved in the attached transcript. (PA0670-PA0702).

Defendants filed a motion for summary judgment of over 500 pages, most of which consisted of attachments or exhibits in the form of a Joint Appendix, as well as a Statement of Undisputed Material Facts. Plaintiff vigorously denies that the Appendix was joint or that the statements were undisputed, but rather these documents were sent by defendant to plaintiff shortly before their time for summary judgment was up.

**STANDARD FOR SUMMARY JUDGMENT**

In order to prevail on a motion for summary judgment, defendants must show, taking facts and inferences in the light most favorable to plaintiff, that no reasonable fact finder could find for the plaintiff on an issue which is case determinative. *Thomas v.*

*Transamerica Accidental Life Insurance Company*, 761 F. Supp. (D.Or. 1991). Summary judgment is inappropriate when credibility is at issue or different ultimate inferences can be reached. FRCP 56(c). In addition to the evidence cited in Rule 56(c), a court may take into account any material that would be admissible or usable at trial. *Wright and Miller, Federal Practice and Procedure*, Section 2721 at 40 (2d. Ed. 1983). In evaluating a summary judgment motion, the record will be viewed in the light most favorable to the opposing party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505 (1986). Summary judgment is appropriate only if there is no genuine issue of material fact such that a reasonable fact finder could find for the non-moving party, *Celotex Corp. v. Cartarett*, 477 U.S. 317, 106 S.Ct. 2548 (1986).

It is argued that there are several issues of material fact which would mitigate against summary judgment, and would require resolution by the trial court and or jury, depending upon whether the relief sought by plaintiff requires a Court Order. For example, it would be expected that the factual issues involving whether the ECFMG hearing comported with common law due process, would be decided by a jury.

Summary judgment is governed by Federal Rule of Civil Procedure 56. Summary judgment is appropriate when "there is no genuine dispute as to material fact and the movant is entitled to judgment as a matter of law". A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party". *See Anderson v. Liberty Lobby, supra.*

It should be mentioned that defendants have included in their so-called joint memorandum, letters from ECFMG, not in the record or exhibits. Such material should not be considered.

In 15 years, the ECFMG had found no violations by USAT or Dr. Tulp. There were no allegations that students at USAT were not passing the ECFMG gatekeeping test at an unacceptable level. There were no requests by ECFMG to visit the USAT campus in Montserrat. The allegations about the branch campuses in Florida are anonymous allegations and should be entitled no weight, as such. The term "campus", let alone "branch campus", is never defined in ECFMG's rules and regulations. This is particularly important when there are commonly online courses offered by colleges and universities. ECFMG states that it wrote to the Florida Department of Education about accreditation for USAT in Florida. There is no indication that the Florida Department of Education ever did anything or made any findings as a result of this inquiry.

It should be underscored that the alleged, "false statements" concerning backdating of students' time spent at USAT are based on the student affidavits sent to ECFMG. The affidavits that plaintiff received were redacted, and plaintiff never received all of them. The students filled these out and there is no indication that it was in variance with the records from USAT, because the ECFMG never got the complete, unredacted records from USAT.

**COMMON LAW DUE PROCESS**

It is difficult to exercise the common law due process rights that require notice and an opportunity to be heard, if no witnesses or evidence are allowed to be presented at the hearing. Notice of a hearing is not meaningful if the hearing is a sham. The opportunity to be heard rings hollow when it is limited to 20 minutes and then the hearing is prematurely adjourned. This is precisely what the hearing with the ECFMG consisted of. Instructive is the Court's inquiry in this area of Kara Corrado. Ms. Corrado testified at

the "Injunction Hearing" on 01/24/19 before the Court. She is an attorney and an administrator for the ECFMG, who was present at the hearing for Dr. Tulp on 11/28/18. She was also involved in the correspondence in the case. The testimony of Ms. Corrado, at the injunction hearing on 01/24/19, beginning at page 22, line 5, in response to the questions of clarification by the **Court,** speak for themselves:

> **Q     Did the ECFMG Board of Physicians present any witnesses at the hearing?**
>
> **A     No, that -- we don't normally present witnesses at our hearings.**
>
> **Q     I see, did the ECFMG board present any documents at the hearing?**
>
> **A     No, the documents are always produced before the hearing.**

**(emphasis supplied).**

(Corrado testimony, lines 5-12 inclusive, JA0197).

The unblemished record of Dr. Tulp and the USAT for the 15 years of its existence, in addition to the societal interests involving competent doctors indicates that there is an issue of material fact for a jury, as to whether the hearing afforded Dr. Tulp crosses the threshold for common law due process.

The Court in its Opinion on the Motion to Dismiss references several cases which are instructive on the parameters of the common law right of due process. Perhaps, the case most like the instant case, is *Thomas M. Cooley Law Sch. v. Am. Bar Ass'n*, 459 F.3D 705, 712 (6th Cir. 2006). This is a 6th circuit case which dealt with a law school which sued the ABA arising out of allegations, inter alia, that Cooley was denied due process for failing to accredit two proposed satellite campuses and imposing sanctions on Cooley for operating without ABA approval. Although Cooley lost the case, this was

9

largely because the ABA provided substantial due process in the form of cross-examination, presentation of witnesses and documents, and the ABA assumed the burden to prove that Cooley had violated written ABA procedures. The point here is that the law school was given full notice and opportunity to be heard, in stark contrast to the sham hearing provided by the ECFMG.

Another case cited by the Court, which plaintiff believes is useful, is *Psi Upsilon of Philadelphia v. University of Pennsylvania*, 591 A.2d 755 (Pa. Super. 1991). This is a case that deals with the common law right of due process for a college fraternity whose members were involved in assaulting a non-fraternity member. The *Psi Upsilon* Court noted that where there is a matter of public interest, even though we have a private entity such as the University of Pennsylvania, that the basic principles of due process and fundamental fairness were required. Again, a hearing, in this case by faculty, where the fraternity was allowed to call their own witnesses and cross-examine witnesses against them, was allowed. Not only is this in stark contrast to the hearing provided by the ECFMG, but in terms of the public interest component of common law due process, it is asserted that the public interest involving USAT and the gate-keeping function involving certification of future doctors, far outweighs the situation involving the continuation of a fraternity.

Another case cited by the Court is *Prof'l Massage Training Ctr., Inc. v. Accreditation All. Of Career Sch. & Colleges*, 781 F.3d 161, 169 (4th Cir 2015). This case comes out of the Fourth Circuit Court of Appeals is relevant as a recent case in which a private accrediting agency denies reaccreditation for a massage training center.

The case has some similarities to the instant case. While this case is persuasive only, excerpts from the case are particularly relevant:

"This is not to say however that accreditation agencies are wholly free of judicial oversight. They, like all bureaucratic entities, can run off the rails. We thus recognize, along with our sister circuits, that there exists a "common law duty on the part of 'quasi-public' private professional organizations or accreditation associations to employ fair procedures when making decisions affecting their members." *McKeesport Hosp. V. Accreditation Council for Graduate Medical Education*, 24 F.3d 519., 534-35 (3d Cir. 1994); *see also Cooley*, 459 F. 3d at 711-12; *Wilfred*, 957 F. 2d at 214; *Med. Inst. Of Minn.*, 817 F.2d at 1314 (finding that accreditation agencies "nevertheless must conform [their] actions to fundamental principles of fairness'); *Marjorie Webster Jr, Coll., Inc. V. Middle States Ass'n of Colls. & Secondary Schools., Inc.*, 432 F.2d 650, 655-58 (D.C.Cir.1970).

That the Courts will not uphold accreditation decisions if "arrived at arbitrarily and without sufficient evidence" The duty was meant to operate as a "check on organizations that exercise significant authority in areas of public concern such as accreditation and professional licensing." *Cooley*, 459 F. 3d at 712. In may ways, the ECFMG used its sweeping "irregular behavior" power and control of the World Directory of Medical Schools (WDMS) website to act like a monopolistic accrediting agency.

In the case of *Falcone v. Middlesex Cnty. Med. Soc.*, 170 A.2d 791, 800 (N.J. 1961), the Supreme Court of New Jersey in 1961, found in favor of plaintiff who was an osteopathic physician who sought to be admitted to a County Medical Society. The

County Medical Society denied plaintiff admission because he did not have a traditional M.D. degree. The Court found that plaintiff made out a case requiring that he be admitted, otherwise it would be difficult for him to practice medicine. The Court makes a point here that the Medical Society had monopolistic power to destroy a medical career and that there are substantial public interests involved here.

None of the above-cited cases involve a hearing like the instant case. It is undisputed that Dr. Tulp had a longstanding and significant interest at stake in the ECFMG administrative hearing; yet the ECFMG placed the burden of proof on Dr. Tulp, the non-charging party. (ECFMG transcript at page 6, PA0675). In all of the above cases, the burden was placed on the charging party.

**DAMAGES**

In terms of damages, paragraphs 29 and 30, together with the prayer of the complaint, set forth not only injunctive and equitable relief, but also the tangible and intangible effects of the ECFMG on Dr. Tulp. Plaintiff requests that the finding of "irregular behavior" be reversed. It is too late now to have another hearing, since USAT has basically been destroyed by the actions of the ECFMG. Dr. Tulp indicated in his deposition with regards to damages the following: when the ECFMG posted a warning on the WDOMS before the hearing with ECFMG. At that time, virtually all payments to USAT stopped and there was a mass exodus of students. Dr. Tulp indicated that ECFMG cost USAT over a thousand students and their medical careers. (Tulp deposition at JA0511). Dr. Tulp also indicated "The uncollectible tuitions as of October 1st up to, you know, from at that point over $41.2 million. These are students that are paying a little bit each month as they could, waiting to get their documents." (Tulp deposition at JA0513).

Plaintiff is requesting not only Court-ordered relief in the form of an injunction or equitable relief, but damages from a jury, as well. Dr. Tulp testified that he was a 50% owner of the ECFMG, based in Montserrat. As a result of the actions of the ECFMG, put on its website on two occasions before Dr. Tulp's hearing, and the subsequent finding of irregular behavior, plaintiff's interests in USAT has been vastly diminished. That plaintiff did not choose to draw a salary for his past tenure as president of USAT, does not abrogate the fact that he has lost the present and future right to draw a salary. In addition, it is argued that violation of due process rights particularly when intentional, give rise to nominal damages and attorney fees.

**ECFMG FUNCTION**

Ecfmg is an organization sponsored by state medical organizations, including the federation of state medical boards. Through its process, it gives students what is a license to apply for a residency program. A residency program is a certified program that trains students who have graduated from medical school and who have taken a series of tests known as the United States Medical Licensing Examination. The various state boards have given the power to test and certify international medical graduates as competent to undertake residency training. New Jersey requires a foreign

medical graduate to demonstrate to the New Jersey State Board of Medical Examiners that he or she holds a certificate issued by the ecfmg which was granted following the attainment of a passing score on an acceptable examination and verification of his or her credentials by the ecfmg.

ECfmg issues a de facto license (certification) which renders a foreign medical graduate eligible to apply for admission to a residence program in the United States.

Without this license, a foreign medical graduate can not apply for a residency program. Without training in a residency program, the foreign medical graduate can not obtain a state medical license.

**CONCLUSION**

Defendants have submitted a motion of over 500 pages with attachments, in an effort to obfuscate the main issue in this case, as set forth in the Court's Opinion on the motion to dismiss: Did defendant ECFMG deny plaintiff Dr. Orien Tulp his right of common law due process, in finding plaintiff culpable of "irregular behavior" and imposing sanctions on Dr. Tulp, USAT and its students? These sanctions essentially destroyed the 15-year career of plaintiff as a medical school administrator, as well as USAT as a viable institution. Dr. Pinsky, in his letter of 12/14/18 (PA0552) also imposed onerous sanctions on the students of USAT. Neither USAT the institution, nor its students, were allowed to testify at the hearing of Dr. Tulp on 11/28/18.

The transcript of the hearing for Dr. Tulp (PA0670-PA0702), before the ECFMG, indicates that it does not comport with fundamental fairness, including notice and opportunity to be heard. Nothing has changed, in terms of the summary judgment record on this issue, since the Court concluded in its Opinion that there was a plausible claim for deprivation of common law due process. Notice and opportunity to be heard are hollow if the committee members for the ECFMG received the defendants' evidence **before** the hearing.

1. The hearing before the ECFMG was a sham, without any evidence in the administrative record, or witnesses and cross-examination allowed.

2. The 20-minute hearing for Dr. Tulp was terminated prematurely by counsel for the ECFMG without plaintiff making any statement.

14

3. The ECFMG put notices on the WDOMS, an Internet site which appears to be controlled by the ECFMG, in each of the two months before the hearing for Dr. Tulp, which implied that plaintiff had already been found culpable.

4. Anonymous charges about a branch campus were leveled against USAT, but no site visit by the ECFMG was ever documented.

5. Allegations based on redacted affidavits, allegedly filled-out by USAT students under the threat of punishment by the ECFMG, were used against Dr. Tulp to suggest backdating of attendance by students, but the ECFMG never attempted to compare these records to the original records at USAT.

All of these allegations appear to be contested by the ECFMG and they constitute issues of material fact, which should be determined by a jury. The hearing by ECFMG for Dr. Tulp resembled not so much an adversary process, but a preordained result in which Dr. Tulp had basically a right of "allocution" only. The core purpose of the hearing appeared to be that Dr. Tulp would be given a maximum of 20 minutes to address the committee in an attempt to persuade them that he was innocent, in light of the investigation that the ECFMG had conducted before the hearing.

Respectfully submitted,

William C. Reil, Esquire
Attorney for Plaintiff
Attorney I.D. No. 26833
1515 Market Street, Suite 1200
Philadelphia, PA 19102
215-564-1635
06/03/19
For: Tommy Swate, Esquire