IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DR. ORIEN L. TULP,<br>        Plaintiff,<br><br>v.<br><br>EDUCATIONAL COMMISSION FOR<br>FOREIGN MEDICAL GRADUATES AND<br>DR. WILLIAM W. PINSKY,<br>        Defendants. | CIVIL ACTION<br><br><br><br>NO. 18-5540 |

## MEMORANDUM OPINION

This case is, in effect, Plaintiff Orien Tulp's challenge to the disciplinary action taken by Defendant Education Commission for Foreign Medical Graduates ("ECFMG") against Plaintiff for providing false information about the branch campuses of an overseas medical school. The Court previously dismissed Plaintiff's various constitutional and common law claims, with the sole exception of a common law due process claim. *See Tulp v. Educ. Comm'n for Foreign Med. Graduates*, 2019 WL 1382725, at *1 (E.D. Pa. Mar. 26, 2019). ECFMG now moves for summary judgment on this last remaining claim. For the reasons that follow, ECFMG's motion will be granted.

### I.     LEGAL STANDARD

Summary judgment must be granted to a moving party if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Alabama v. North Carolina*, 560 U.S. 330, 344 (2010). A genuine dispute "exists if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *U.S. ex rel. Greenfield v. Medco Health Solutions, Inc.*, 880 F.3d 89, 93 (3d Cir. 2018).

The party opposing the motion for summary judgment must "go beyond the pleadings," *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986), and demonstrate that "a fact . . . is genuinely

disputed" by "citing to particular parts of materials in the record," Fed. R. Civ. P. 56(c); *Doe v. Abington Friends Sch.*, 480 F.3d 252, 256 (3d Cir. 2007) ("The non-moving party may not merely deny the allegations in the moving party's pleadings; instead he must show where in the record there exists a genuine dispute over a material fact."). When the non-movant "fails to properly address [the movant's] assertion of fact . . . the court may . . . consider the fact undisputed for purposes of the motion," and "grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it." Fed. R. Civ. P. 56(e)(2); *see, e.g.*, *Payne v. City of Philadelphia*, 2016 WL 1298951, at *2 (E.D. Pa. Apr. 4, 2016).

In accordance with this Court's policies and procedures, ECFMG submitted a statement of material facts along with its summary judgment motion, supported by citations to the record. Plaintiff's response neither meaningfully addressed ECFMG's assertions of fact nor demonstrated that any of those assertions were genuinely disputed. Instead, Plaintiff recited the allegations contained in the Complaint or else produced conclusory assertions without citation to the record. Accordingly, the Court will consider ECFMG's account of the facts undisputed for purpose of resolving this motion.

Lastly, where, as here, a federal court is interpreting Pennsylvania law, the federal court must follow the Pennsylvania Supreme Court. *In re Energy Future Holdings Corp.*, 842 F.3d 247, 253-54 (3d Cir. 2016). If the law is unclear and there is no controlling precedent issued by Pennsylvania's highest court, a federal court must "predict" how it would rule, giving "due regard, but not conclusive effect, to the decisional law of lower state courts." *Nationwide Mut. Ins. Co. v. Buffetta*, 230 F.3d 634, 637 (3d Cir. 2000).

## II. FACTS & PROCEDURAL HISTORY

### A. ECFMG's Policies & Procedures

ECFMG is a private, non-profit organization based in Philadelphia that certifies international medical graduates ("IMGs") so that those students can pursue post-graduate medical training in the United States. Specifically, ECFMG: (1) certifies the readiness of IMGs through an evaluation of their qualifications, (2) verifies IMGs' education credentials, and (3) provides that information to graduate medical programs and other health care providers. As part of the verification process, ECFMG collects certain documentation from IMGs, including documentation confirming that graduates attended a recognized international medical school.

ECFMG defines an international medical school as "an education facility located in a country outside of the United States and Canada with its primary campuses and main operations located in that country." Where an international medical school operates branch campuses, ECFMG requires confirmation that "the branch campus is authorized to operate as a medical school in the branch campus country" and that the international medical school "awards degrees that meet the medical education eligibility requirements for licensure to practice medicine in the branch campus country." Only graduates from a bona fide international medical school can obtain ECFMG certification.

To ensure the integrity of its certification process, ECFMG maintains policies to detect and snuff out "irregular behavior." The policies are set forth in ECFMG's publicly available Policies and Procedures Regarding Irregular Behavior, which define "irregular behavior" as "all actions or attempted actions on the part of applicants, examinees, potential applicants, others when solicited by an applicant and/or examinee, or any other person that would or could subvert the examination, certification or other processes, programs or services of ECFMG[.]"

"Examples of irregular behavior include . . . submission of any falsified or altered document to ECFMG, whether submitted by the individual or by a third party, such as a medical school, on behalf of the individual," and "falsification of information on applications, submissions, or other materials to ECFMG." The Policies and Procures make clear that "such actions or attempted actions are considered irregular behavior, regardless of when the irregular behavior occurs, and regardless of whether the individual is certified by ECFMG."

The Policies and Procedures also set out a specific process by which ECFMG investigates suspected irregular behavior, determines whether an individual engaged in irregular behavior, and takes remedial action if a finding of irregular behavior is made:

- After receipt of a report or other information suggesting irregular behavior on the part of an individual, ECFMG staff will review the information and will assess whether there is sufficient evidence of irregular behavior. When indicated and feasible, staff will conduct a follow-up investigation to gather additional information.

- If ECFMG staff finds that there exists a reasonable basis to conclude that an individual may have engaged in irregular behavior, the matter will be referred to the Medical Education Credentials Committee [hereinafter "Credentials Committee].

- [T]he individual will be advised in writing of the nature of the alleged irregular behavior and will be provided with a copy of the Policies and Procedures Regarding Irregular Behavior.

- The individual will be given an opportunity to provide written explanation and to present other relevant information.

- The individual may also request the opportunity to appear personally before the [Credentials Committee], and may be represented by legal counsel, if the individual so wishes.

- All pertinent information regarding the irregular behavior, including any explanation or other information that the individual may provide, will be provided to the [Credentials Committee]. The [Credentials Committee], based on the information available to it, will determine whether the preponderance of the evidence indicates that the individual engaged in irregular behavior.

- If the [Credentials Committee] determines that the individual engaged in irregular behavior, the [Credentials Committee] will determine what action(s) will be taken as a result of the irregular behavior. ECFMG will notify the individual whether the [Credentials Committee] determined the individual engaged in irregular behavior and of any action(s) taken pursuant thereto.

- The [Credentials Committee]'s determination of irregular behavior and any action(s) taken pursuant thereto . . . may be appealed to the Review Committee for Appeals if the individual has a reasonable basis to believe the [Credentials Committee] did not act in compliance with the Medical Education Credentials Committee Policies and Procedures or that the [Credentials Committee]'s decision was clearly contrary to the weight of the evidence before it.

### B. ECFMG's Investigation of Plaintiff

Plaintiff is President of the University of Science, Arts, and Technology ("USAT"), a medical school headquartered on the British Overseas Territory of Montserrat. In July and August of 2018, ECFMG received information—including an email from the parent of a USAT student—indicating that USAT was offering classes in Miami, Florida. On August 21, 2018, ECFMG emailed Plaintiff, informing him that "[i]t ha[d] recently come to the attention of [ECFMG] that USAT in Montserrat is operating a satellite (or branch) campus in Miami, Florida," and requesting Plaintiff produce "documentation from the United States Department of Education and/or the Florida Department of Education confirming that USAT's Miami branch campus is authorized to operate as a medical school in the United States." ECFMG never received any such documentation.

Instead, on August 21, 2018, Plaintiff responded to ECFMG's email, as follows:

> This is incorrect information. The Miami location is an information and testing site only . . . and an Orientation for new students is conducted prior to their traveling to the Caribbean. It is NOT a campus. Our ONLY Campus is located in Olveston, Montserrat, British West Indies.
> Actually, recall that Montserrat is a volcanic Island, and the license issued to USAT in September, 2003 DOES actually permit the establishment of off-campus lecture and administrative sites as needed. USAT has students on island on a year round basis since its origination.
> I hope this will clarify your concern.

5

On September 14, 2018, ECFMG's Vice President of Operations, Kara Corrado, sent Plaintiff a follow-up email, stating that ECFMG "received information USAT is providing medical education lectures not only at its Miami site, but also at sites in Tampa, FL, and Dallas, TX." The email ECFMG would "continue[] its review of this matter," and that "as part of its review, ECFMG has reached out to students and graduates of USAT in order to collect information from them regarding their attendance at USAT." Corrado continued:

> Effective today, USAT students and graduates seeking services related to ECFMG Certification . . . must complete and submit an affidavit attesting to the accuracy of the medical school information provided to ECFMG. Services will not be provided to individuals who do not complete the affidavit. ECFMG has provided instructions about this process directly to the students and graduates.

Consistent with Corrado's email, ECFMG sent affidavits to USAT students and graduates, asking them to certify their dates of attendance at USAT as well as the location where they took their basic science courses. More than 300 students submitted affidavits indicating that they took classes in the United States; none indicated that they took courses in Montserrat.

On September 24, 2018, ECFMG also updated its Sponsor Note for USAT on the World Directory of Medical School—the directory maintained by ECFMG to inform the public of the eligibility of a school's graduates to start the process of ECFMG certification. The Sponsor Note stated that "students and graduates of USAT are subject to enhanced procedures that must be met in order to be eligible for ECFMG Certification related services[.]"

**C. ECFMG's Irregular Behavior Proceedings Against Plaintiff**

On October 18, 2018, ECFMG sent Plaintiff an email, advising him

> of the allegation that you, individually and in your capacity as an official of the University of Science, Arts & Technology (USAT) Faculty of Medicine, Montserrat, engaged in irregular behavior in connection with providing false information to ECFMG. Specifically, you provided false information to ECFMG when you (1) notified ECFMG that USAT does not operate a branch campus in

6

>   Miami, Florida and (2) certified to the attendance dates of several USAT students and graduates when ECFMG has information that these students were not attending USAT during some of the time periods to which you certified.

In addition, the letter summarized the procedure by which the Credential Committee would review the allegations. The letter: explained that matter was being referred to the Credential Committee for review at its November 28, 2018 meeting; advised Plaintiff to review the Credentials Committee's Policies and Procedures, which were attached to the email; informed Plaintiff that he had the opportunity to appear before the Credential Committee on November 28, accompanied by legal counsel; listed the documents the Credential Committee would be reviewing on that date, which were also attached to the email; and, requested Plaintiff provide a written response to the allegations by November 1, 2018. On October 18, ECFMG also updated USAT's Sponsor Note, as follows: "As of January 1, 2019, students and graduates of this medical school with a graduation year of 2019 and later are not eligible to apply to ECFMG for ECFMG Certification[.]"

Plaintiff, through counsel, responded to ECFMG's letter on October 23, 2018.[1] Plaintiff confirmed that he would attend the November 28 hearing, requested additional documentation about the allegations, and questioned ECFMG's decision to change USAT's Sponsor Note prior to the hearing. On October 26, 2018, Corrado clarified that the allegations of irregular behavior concerned only Plaintiff's actions, and not USAT more broadly. Then, on November 14, 2018, Corrado emailed Plaintiff's counsel, confirming that:

> [Plaintiff] is scheduled to appear before the ECFMG Committee with you and Mr. Reil (Dr. Tulp's attorneys) on Wednesday November 28, 2018 at 9:00 AM. . . . In accordance with ECFMG's standard practice, Dr. Tulp will be scheduled for 20 minutes, during which time he will have the opportunity to present his response to these allegations (either personally or through his counsel) and the ECFMG Committee members, ECFMG counsel, and staff will have the opportunity to ask questions. After that, Dr. Tulp may provide a brief, closing statement.

---

[1] The letter was incorrectly dated September 23, 2018.

7

Corrado also provided Plaintiff's counsel with the materials that the Credentials Committee would review at the meeting. On November 16, 2018, Corrado sent Plaintiff's counsel a follow-up email to "confirm that you have received the materials that the ECFMG Committee will review at its meeting on November 28, 2018 related to the allegations of irregular behavior for [Plaintiff]." The same day, Plaintiff's counsel responded, stating that he had received the documents.

On November 28, 2018, Plaintiff appeared before the Credential Committee, accompanied by counsel. At the outset of the hearing, ECFMG again provided Plaintiff with copies of the materials under consideration. After Corrado summarized the allegations of irregular behavior, Plaintiff's counsel made his opening remarks, stating:

> First, I would like to ask for the—I've asked and I've asked and I've asked for the packet that was presented to the committee members. I would like a copy of the packet, the information that was submitted to the committee members so that I will know what was considered by the committee before we came here today because you're considering information that I may or may not know about.

Counsel for ECFMG directed Plaintiff's counsel to the printed materials provided at the beginning of the hearing and reiterated that all materials under consideration by the Credential Committee had been provided to Plaintiff and his counsel on several occasions.

Plaintiff's counsel then made a series of legal arguments to the effect that ECFMG: (1) had "no jurisdiction over [Plaintiff]," (2) bore "the sole exclusive burden of proof," (3) had "a duty of presenting . . . evidence . . . before [Plaintiff] has to answer anything," but failed to do so, (4) "co-mingl[ed] . . . the prosecutorial and jury functions," (5) prejudged the matter by taking action against USAT, and (6) failed to provide Plaintiff with the "regulations and protocols for these meetings[.]" Plaintiff's counsel concluded: "That is our opening statement. If you have any questions, you can address them to me. [Plaintiff] will not be answering any questions."

8

Counsel for ECFMG and Plaintiff then engaged in a protracted back-and-forth, in which ECFMG's counsel invited Plaintiff to provide evidence or testimony addressing the allegations of irregular behavior and Plaintiff's counsel declined, arguing ECFMG carried the burden of production. After roughly nine minutes of this back-and-forth, counsel for ECFMG terminated the hearing, by stating: "You're not providing any evidence. So thank you for coming today[.]"

**D. Irregular Behavior Determination**

On December 14, 2018, ECFMG notified Plaintiff via email that the Credential Committee had completed its review and determined that Plaintiff had engaged in irregular behavior. Specifically, the Credential Committee found Plaintiff provided false information when he "notified ECFMG that USAT does not operate a branch campus in Miami, FL" and "certified to the attendance dates of several USAT students and graduates when ECFMG has information that these students were not attending USAT during some of the time periods to which you certified."

As a result, ECFMG informed Plaintiff that it was taking the following disciplinary action: (1) refusing, for a minimum of five years, to accept any documents signed and/or certified by Plaintiff; (2) adding to ECFMG's Sponsor Note for USAT that "a certain official of [USAT] engaged in irregular behavior in connection with providing false information to ECFMG;" and, (3) making a permanent annotation in Plaintiff's ECFMG record that he engaged in irregular behavior. ECFMG also informed Plaintiff that he had thirty days to appeal the decision. Plaintiff did not petition for reconsideration of the Credential Committee's determination.

**E. Procedural History**

On December 24, 2018, Plaintiff initiated this action against ECFMG and Dr. William

9

Pinsky, the President of ECFMG, and, on January 2, 2019, filed a motion for a preliminary injunction. On January 22, 2019, Defendants moved to dismiss the Complaint. Two days later, on January 24, 2019, the Court held a hearing on Plaintiff's preliminary injunction motion and denied the request for preliminary relief for the reasons stated on the record. On March 26, 2019, the Court granted Defendants' motion to dismiss as to all of Plaintiff's claims against Dr. Pinsky, and as to all of Plaintiff's claims against ECFMG, with the exception of the common law due process claim. *See Tulp*, 2019 WL 1382725 at *1. ECFMG now moves for summary judgment on this last claim.

### III. DISCUSSION

"The touchstone of due process is protection of the individual against arbitrary action[.]" *Wolf v. McDonnell*, 418 U.S. 539, 5588 (1974). Many jurisdictions, Pennsylvania included, recognize a limited common law due process cause of action in addition to the more familiar constitutional due process cause of action. *See McKeesport Hosp. v. Accreditation Council for Graduate Med. Educ.*, 24 F.3d 519, 534-35 (3d Cir. 1994) (Becker, J., concurring in the judgment) (collecting cases); *Sch. Dist. of City of Harrisburg v. Pa. Interscholastic Athletic Ass'n*, 309 A.2d 353, 357 (Pa. 1973) (recognizing the existence of a common law duty).

Under Pennsylvania law, "private associations" owe a common law duty of due process "only under limited circumstances." *Sch. Dist. of City of Harrisburg*, 309 A.2d at 357. One such instance is where a private organization that serves a public function subjects a party to disciplinary action. *See Psi Upsilon of Phila. v. Univ. of Pa.*, 591 A.2d 755, 758 (Pa. Super. 1991) (holding that the University of Pennsylvania, a private organization, owed a common law duty of due process to a group of college students that it subjected to disciplinary action); *Boehm v. Univ. of Pa. Sch. of Veterinary Med.*, 573 A.2d 575, 579 (Pa. Super. 1990) (holding that the

10

University of Pennsylvania owed a common law duty to graduate students disciplined for academic misconduct). The duty "operate[s] as a 'check on organizations that exercise significant authority in areas of public concern such as accreditation and licensing.'" *Prof'l Massage Training Ctr., Inc. v. Accreditation All. of Career Sch. & Colls.*, 781 F.3d 161, 169 (4th Cir. 2015) (quoting *Thomas M. Cooley Law Sch. v. Am. Bar Ass'n*, 459 F.3d 705, 712 (6th Cir. 2006)). Because such "quasi-public" organizations, "like all other bureaucratic entities, can run off the rails," the common law duty of due process ensures that such entities are not "wholly free of judicial oversight." *Id*.

"The requirements of common law due process are quite similar to those for constitutional due process[.]" *McKeesport Hosp.*, 24 F.3d at 535. Common law due process requires that the disciplining organization adhere "to those procedural safeguards which the [organization] specifically provides." *Psi Upsilon*, 591 A.2d at 759; *Boehm* 573 A.2d at 585 (finding due process satisfied where the University "followed its Code of Rights punctiliously"). In addition, those procedural safeguards must accord with "basic principles of . . . fundamental fairness," meaning "notice" and "an opportunity to be heard." *Psi Upsilon*, 591 A.2d at 759; *Boehm* 573 A.2d at 585 (holding due process met where plaintiff "had notice and an opportunity to be heard"); *Sch. Dist. of City of Harrisburg*, 309 A.2d at 358 (holding due process requirement where disciplined party "was afforded notice of the action taken against it and . . . availed itself

11

of the opportunity to be heard").[2]

The notice requirement is satisfied where the disciplinary body provides "notice of the charges against [the disciplined party] and also of the evidence against [the disciplined party]." *Boehm*, 573 A.2d at 582; *Psi Upsilon*, 591 A.2d at 759 (holding plaintiffs afforded notice where University provided statement laying out charges and reciting factual allegations underpinning charges). As for an opportunity to be heard, the disciplinary body must provide "an opportunity [for the disciplined party] to present his side of the story." *Biliski v. Red Clay Consol. Sch. Bd. of Educ.*, 574 F.3d 214, 220 (3d Cir. 2009) (quoting *Cleveland Bd. of Ed. v. Loudermill*, 470 U.S. 532, 542 (1985)). Thus, due process requires "the opportunity to present reasons, either in person or in writing, why proposed action should not be taken." *Id.* (quoting *Loudermill*, 470 U.S. at 542); *Boehm*, 573 A.2d at 508 (explaining that an individual must be provided with the opportunity to "produce either oral testimony or written affidavits of witnesses on his behalf") (quoting *Dixon v. Al. State Bd. of Ed.*, 294 F.2d 150, 158 (5th Cir. 1961)). Where in-person testimony is permitted, such hearings "need not be elaborate," *Biliski*, 574 F.3d at 220 (quoting *FDIC v. Mallen*, 486 U.S. 230, 247 (1988)), "subject to strict rules of judicial procedure," *Psi Upsilon*, 591 A.2d at 761, or have all the trappings of "a full-dress judicial hearing," *Boehm*, 573 A.2d at 508 (quoting *Dixon*, 294 F.2d at 158).

Here, as the Court previously explained, ECFMG is a "quasi-public" private organization because it "exercises significant authority in areas of public concern," *Prof'l Massage Training*

---

[2] When dealing with constitutional due process claims, Pennsylvania courts apply the familiar balancing test set out in *Matthews v. Eldridge*, 424 U.S. 319 (1976), to determine the amount of process due. *Id.* at 335; s*ee, e.g.*, *Bundy v. Wetzel*, 184 A.3d 551, 557 (Pa. 2018). But the few Pennsylvania cases to address common law due process claims have not employed the *Matthews v. Eldridge* framework. *See, e.g.*, *Psi Upsilon*, 591 A.2d at 759; *Boehm* 573 A.2d at 585. Instead, those cases have employed a case-by-case analysis into whether the disciplined party was "given a fair hearing." *Boehm* 573 A.2d at 584. Accordingly, this Court predicts that Pennsylvania law would not require the Court to apply *Matthews v. Eldridge* here, but rather, requires the Court to evaluate whether Plaintiff was "given a fair hearing" by reference to those Pennsylvania cases that have evaluated common law due process claims, and cases concerning due process more generally. *Cf. McKeesport Hosp.*, 24 F.3d at 535 ("The requirements of common law due process are quite similar to those for constitutional due process[.]").

*Ctr.*, 781 F.3d at 169—namely, by certifying IMGs so that those students can pursue post-graduate medical training in the United States and ensuring the integrity of that certification process, *Tulp*, 2019 WL 1382725 at *5-6. As such, it must "employ fair procedures when making decisions," with regard to individuals—like Plaintiff—that it subjects to disciplinary action. *McKeesport*, 24 F.3d at 535. Thus, ECFMG owed Plaintiff a common law duty of due process throughout the irregular behavior investigation.

The undisputed facts demonstrate that ECFMG complied with that duty. First, its investigation and irregular behavior determination adhered to the procedural safeguards set forth in its publicly-available Policies and Procedures—specifically,

- Whereas the Policies and Procedures provide that "[i]f ECFMG staff finds that there exists a reasonable basis to conclude that an individual may have engaged in irregular behavior, the matter will be referred to the [Credentials Committee];" here, after an investigation into USAT's Florida-based campuses revealed that Plaintiff provided false information regarding USAT's operations, ECFMG referred the issue to the Credentials Committee for a hearing;

- Whereas the Policies and Procedures provide that "the individual will be advised in writing of the nature of the alleged irregular behavior and will be provided with a copy of the Policies and Procedures Regarding Irregular Behavior;" here, on October 18, 2018, ECFMG emailed Plaintiff: a letter advising him of the irregular behavior allegations, a copy of the Policies and Procedures Regarding Irregular Behavior, and copies of the documents provided to the Credentials Committee upon which the allegations were based;

- Whereas the Policies and Procedures provide that "[t]he individual will be given an opportunity to provide written explanation and to present other relevant information;" here, in the October 18 email, ECFMG provided Plaintiff an opportunity to provide a written response to the charges of irregular behavior, and, on October 23, 2018, Plaintiff's counsel provided a written response to the allegations;

- Whereas the Policies and Procedures provide that "[t]he individual may also request the opportunity to appear personally before the [Credentials Committee], and may be represented by legal counsel, if the individual so wishes;" here, in the same October 18 email, ECFMG informed Plaintiff of that opportunity, and, on November 28, 2018, Plaintiff was afforded the opportunity to present evidence and testimony to the Credential Committee, accompanied by counsel;

13

- Whereas the Policies and Procedures provide that the "[Credentials Committee], based on the information available to it, will determine whether the preponderance of the evidence indicates that the individual engaged in irregular behavior;" here, after reviewing the documentary evidence and Plaintiff's November 28 presentation, the Credential Committee determined that Plaintiff had engaged in irregular behavior by providing false information about USAT's activities;

- Whereas the Policies and Procedures provide that "ECFMG will notify the individual whether the [Credentials Committee] determined the individual engaged in irregular behavior and of any action(s) taken pursuant thereto;" here, on December 14, 2018, ECFMG notified Plaintiff via email that the Credential Committee had determined that he engaged in irregular behavior, explained the grounds for that decision, and informed Plaintiff of the disciplinary action being taken against him;

- Whereas the Policies and Procedures provide that the "[Credentials Committee]'s determination of irregular behavior and any action(s) taken pursuant thereto . . . may be appealed;" here, in the December 14 email, ECFMG informed Plaintiff of his ability to appeal the decision.

Thus, ECFMG followed "the procedural safeguards which [it] specifically provide[d]." *Psi Upsilon*, 591 A.2d at 759.

Second, the procedural safeguards ECFMG provided comported with "basic principles of . . . fundamental fairness" because they afforded Plaintiff both notice and an opportunity to be heard. *Id*. As to notice, ECFMG's October 18 email advised Plaintiff of the irregular behavior allegations and provided copies of the documents upon which those allegations were based, satisfying the notice requirement. *Id*.; *Boehm*, 573 A.2d at 582. As for an opportunity to be heard, ECFMG afforded Plaintiff the opportunity to provide a written response to the allegations of irregular behavior and to present oral testimony at the November 28 hearing—opportunities that Plaintiff, through his counsel, took advantage of. Accordingly, Plaintiff was provided "the opportunity to present reasons, [both] in person [and] in writing, why [ECFMG's] proposed action should not be taken," satisfying the opportunity-to-be-heard requirement. *Biliski*, 574

F.3d at 221.

Plaintiff arguments to the contrary are scattershot and, at times, difficult to follow. The gist appears to be that the November 28 hearing was inadequate and therefore deprived Plaintiff of a meaningful opportunity to be heard.[3] There are several problems with Plaintiff's position. To start—and putting the November 28 hearing aside for now—Plaintiff was afforded an opportunity to be heard when ECFMG invited him to submit a written reply to the allegations of irregular behavior. All that due process required here was the "opportunity to present reasons, *either in person or in writing*, why proposed action should not be taken," *Biliski*, 574 F.3d at 220 (emphasis added). The fact that Plaintiff was invited to present written responses to the allegations of irregular behavior puts paid to the argument that ECFMG deprived him of an opportunity to be heard.

Turning to the November 28 hearing, Plaintiff complains that the hearing was procedurally inadequate—because ECFMG allotted only twenty minutes for it, because ECFMG relied on its documentary evidence and did not present live testimony, and because ECFMG did not allow him to cross-examine witnesses. But, as already noted, due process does not require the full panoply of procedural protections available in other proceedings. *See Boehm*, 573 A.2d at 508 (holding due process does not require "a full-dress judicial hearing, with the right to cross-examine witnesses") (internal quotation marks omitted); *Sch. Dist. of City of Harrisburg*, 309 A.2d at 358 (finding due process met where petitioner "offered testimony," at "a regularly scheduled meeting" of the disciplinary body). Here, all that ECFMG was required to provide was an opportunity for Plaintiff "to present his side of the story," *Biliski*, 574 F.3d at 220 (internal quotation marks omitted), and the November 28 hearing satisfied that requirement.

---

[3] Plaintiff neither appears to argue that ECFMG failed to adhere to the procedural safeguards set forth in the publicly-available Policies and Procedures, nor that ECFMG provided inadequate notice of the allegations against him.

Lastly, Plaintiff argues that the early termination of the hearing violated his due process rights. The record demonstrates, however, that after delivering his opening statement, Plaintiff declined to provide additional evidence or testimony, and that ECFMG then terminating the hearing. Plaintiff's choice to sit on his hands, however, does not render the November 28 hearing inadequate. *Cf. Psi Upsilon*, 591 A.2d at 760 (holding disciplinary hearing did not violate due process where plaintiffs invoked privilege against self-incrimination, given pending criminal charges, and thus did not testify or present evidence). Thus, Plaintiff was given ample opportunity "to present his side of the story," *Biliski*, 574 F.3d at 220; "if [he] did not make the best use of those opportunities . . . the blame cannot be placed on [ECFMG]," *Marlboro Corp. v. Ass'n of Indep. Colls. & Sch., Inc.,* 556 F.2d 78, 82 (1st Cir. 1977).

In sum, the record demonstrates that ECFMG provided Plaintiff all the process he was due. ECFMG's motion for summary judgment on Plaintiff's common law due process claim will be granted accordingly.

**June 25, 2019**             **BY THE COURT:**

/s/Wendy Beetlestone, J.

**WENDY BEETLESTONE, J.**